# SAVAD CHURGIN
### ATTORNEYS AT LAW

Paul Savad (1941-2020)  
<u>Joseph A. Churgin</u>

Susan Cooper  
Donna Sobel

<u>Of Counsel</u>:  
Mark F. Goodfriend

55 OLD TURNPIKE ROAD – SUITE 209  
(Rt. 59 & THRUWAY EXIT 14)  
NANUET, NEW YORK 10954

(845) 624-3820

mail@savadchurgin.com  
Fax: (845) 624-3821

December 31, 2020

Hon. Kenneth M. Karas, U.S.D.J.  
U.S. District Court for the Southern District of New York  
300 Quarropas Street  
White Plains, N.Y. 10601

Re: *Orthodox Jewish Coalition of Chestnut Ridge et al. v. Village of Chestnut Ridge, New York*  
    Case No. 7:19-cv-00443

Dear Judge Karas:

We represent the Plaintiffs in the above-referenced action. We write to provide the Court with a Notice of Supplemental Authority. Specifically, Plaintiffs provide the Court with notice of a U.S. Supreme Court case decided subsequent to the closing of the briefing on Defendant's Motion to Dismiss, which supports the assertion that Plaintiffs may recover compensatory damages under RLUIPA's remedial provision. Defendant filed its motion on April 17, 2020 (ECF Nos. 59-62). Plaintiffs filed their Memorandum in Opposition to the Motion on June 3, 2020 (ECF No. 65). Defendant filed a Reply on July 24, 2020 (ECF Nos. 76 and 77). No hearing has been set.

In *Tanzin v. Tanvir*, No. 19-71, 2020 WL 7250100 (U.S. Dec. 10, 2020) (attached), the Court held that the Religious Freedom Restoration Act's ("RFRA") express remedies provision permits litigants, when appropriate, to obtain monetary damages against federal officials in their individual capacities. *Id.* Although *Tanzin* was decided under RFRA, the damages provisions of RFRA and RLUIPA are functionally identical. *See* 42 U.S.C. § 2000bb-1 ("A person whose religious exercise

has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain <u>appropriate relief against a government</u>." (emphasis added)); *see* RLUIPA (42 U.S.C. § 2000cc-2) ("A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain <u>appropriate relief against a government</u>." (emphasis added)).

In *Tanzin*, the plaintiffs were practicing Muslims who claimed that federal agents had placed them on the "No Fly" list in retaliation for their refusal to act as informants against their religious communities. *Tanzin*, 2020 WL 7250100, at *2. Plaintiffs brought suit seeking both injunctive relief and monetary damages. *Id.* Subsequent to their filing suit, plaintiffs' claim for injunctive relief was mooted when they were removed from the "No Fly" list, and the district court dismissed their claim for monetary damages, ruling that RFRA's remedies provision does not allow for monetary damages in those circumstances. *Id.*

Plaintiffs appealed to the Second Circuit, and the Supreme Court affirmed the Second Circuit's decision reversing the district court's dismissal of the claim for monetary damages. *Id.* at *2. The Court used the general rules of statutory construction to interpret the plain meaning of the term "appropriate relief" at the time of RFRA's enactment. In so doing, the Court concluded that monetary damages are "suitable" and "proper" under RFRA's remedies provision and that the "open-ended phrase . . . appropriate relief" allows for the recovery of money damages. *Id.* at *4.

The analysis set forth in *Tanzin* supports Plaintiff's contention that Plaintiff can recover monetary damages for its facial challenge under RLUIPA because the remedies provisions for both RFRA and RLUIPA are identical. As a result, the Supreme Court's holding that monetary damages are "appropriate relief" under RFRA fully supports Plaintiff's claim that monetary damages are an appropriate remedy in this case as well. And, as discussed in Plaintiff's prior briefing, courts have

consistently held that compensatory damages are available for facial challenges, particularly in cases involving the challenge to a land use regulation under RLUIPA. Thus, like the plaintiffs in *Tanzin*, Plaintiff here may seek compensatory damages as a form of "appropriate relief" and Defendant's Motion should, therefore, be denied.

Respectfully submitted,

*Joseph Churgin*

Joseph A. Churgin, Esq.

cc: All Counsel via ECF

2020 WL 7250100
Supreme Court of the United States.

FNU TANZIN, et al., Petitioners

v.

Muhammad TANVIR, et al.

No. 19-71
|
Argued October 6, 2020
|
Decided December 10, 2020

**Synopsis**
**Background:** Individuals who are practicing Muslims brought action under the Religious Freedom Restoration Act (RFRA) against Federal Bureau of Investigation agents in their official and individual capacities, alleging that the agents placed them on the "No Fly List" in retaliation for their refusal to act as informants against their religious communities and seeking removal from the "No Fly List" and money damages. The United States District Court for the Southern District of New York, Ronnie Abrams, J., 128 F.Supp.3d 756, dismissed the individual-capacity claims for money damages. Individuals appealed. The United States Court of Appeals for the Second Circuit, Pooler, Circuit Judge, 894 F.3d 449, reversed. Certiorari was granted.

**[Holding:]** The Supreme Court, Justice Thomas, held that RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities.

Affirmed.

Justice Barrett took no part in the consideration or decision of the case.

**Procedural Posture(s):** Petition for Writ of Certiorari; On Appeal; Motion to Dismiss.

West Headnotes (9)

[1]  **Civil Rights** ⮞ Liability of Public Employees and Officials

Injured parties can sue government officials in their personal capacities under the RFRA. Religious Freedom Restoration Act of 1993 §§ 3, 5, 42 U.S.C.A. §§ 2000bb-1(c), 2000bb-2(1).

[2]  **Statutes** ⮞ Defined terms; definitional provisions

When a statute includes an explicit definition, the Supreme Court must follow that definition, even if it varies from a term's ordinary meaning.

[3]  **Civil Rights** ⮞ Persons Liable in General
    **Civil Rights** ⮞ Liability of Public Employees and Officials

A "government," under provision of the RFRA allowing persons to sue and obtain relief against a government, includes both individuals who are officials acting under color of law and other, additional individuals who are nonofficials acting under color of law. Religious Freedom Restoration Act of 1993 §§ 3, 5, 42 U.S.C.A. §§ 2000bb-1(c), 2000bb-2(1).

[4]  **Civil Rights** ⮞ Liability of Public Employees and Officials

A suit against an official in his personal capacity is a suit against a person acting under color of law, and a suit against a person acting under color of law is a suit against a "government," as defined under RFRA. Religious Freedom Restoration Act of 1993 §§ 3, 5, 42 U.S.C.A. §§ 2000bb-1(c), 2000bb-2(1).

© 2020 Thomson Reuters. No claim to original U.S. Government Works.        1

[5] **Civil Rights** Liability of Public Employees and Officials

**Civil Rights** Availability in general

"Appropriate relief" under RFRA's express remedies provision includes claims for money damages against Government officials in their individual capacities. Religious Freedom Restoration Act of 1993 §§ 3, 5, 42 U.S.C.A. §§ 2000bb-1(c), 2000bb-2(1).

1 Cases that cite this headnote

[6] **Statutes** Undefined terms

Without a statutory definition for a statutory phrase, the Supreme Court turns to the phrase's plain meaning at the time of enactment.

[7] **Civil Rights** Liability of Public Employees and Officials

**Civil Rights** Availability in general

The RFRA provides, as one avenue for relief, a right to seek damages against Government employees. Religious Freedom Restoration Act of 1993 §§ 3, 5, 42 U.S.C.A. §§ 2000bb-1(c), 2000bb-2(1).

1 Cases that cite this headnote

[8] **Statutes** Prior or existing law in general

Although background presumptions can inform the understanding of a statutory word or phrase, those presumptions must exist at the time of enactment.

[9] **Civil Rights** Liability of Public Employees and Officials

**Civil Rights** Availability in general

RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities. Religious Freedom Restoration Act of 1993 §§ 3, 5, 42 U.S.C.A. §§ 2000bb-1(c), 2000bb-2(1).

1 Cases that cite this headnote

**West Codenotes**

**Prior Version Recognized as Invalid**

Religious Freedom Restoration Act of 1993 § 5, 42 U.S.C.A. § 2000bb-2(1)

*Syllabus* [*]

**\*1** The Religious Freedom Restoration Act of 1993 (RFRA) was enacted in the wake of *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876, to provide a remedy to redress Federal Government violations of the right to free exercise under the First Amendment. Respondents are practicing Muslims who sued under RFRA, claiming that federal agents placed them on the No Fly List for refusing to act as informants against their religious communities. They sought injunctive relief against the agents in their official capacities and monetary damages against the agents in their individual capacities. As relevant here, the District Court found that RFRA does not permit monetary relief and dismissed their individual-capacity claims. The Second Circuit reversed, holding that RFRA's remedies provision encompasses money damages against Government officials.

*Held*: RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities. Pp. ––––– – –––––.

(a) RFRA's text provides that persons may sue and "obtain appropriate relief against a government," 42 U.S.C. § 2000bb–1(c), including an "official (or other person acting under color of law) of the United States," § 2000bb–2(1). RFRA supplants the ordinary meaning of "government" with a different, express definition that includes "official[s]." It then underscores that "official[s]" are "person[s]." Under RFRA's definition, relief that can be executed against an "official ... of the Unites States" *is* "relief against a government." This reading is confirmed by RFRA's use of the phrase "persons acting under color of law," which has long

been interpreted by this Court in the 42 U.S.C. § 1983 context to permit suits against officials in their individual capacities. See, *e.g.*, *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 305–306, 106 S.Ct. 2537, 91 L.Ed.2d 249. Pp. ––– – –––.

(b) RFRA's term "appropriate relief" is "open-ended" on its face; thus, what relief is " 'appropriate' " is "inherently context dependent." *Sossamon v. Texas*, 563 U.S. 277, 286, 131 S.Ct. 1651, 179 L.Ed.2d 700. In the context of suits against Government officials, damages have long been awarded as appropriate relief, and though more limited today, they remain an appropriate form of relief. The availability of damages under § 1983 is particularly salient here. When Congress first enacted RFRA, the definition of "government" included state and local officials. In order to reinstate the pre-*Smith* substantive protections of the First Amendment *and* the right to vindicate those protections by a claim, § 2000bb(b), the remedies provision must have encompassed at least the same forms of relief authorized by § 1983. Because damages claims have always been available under § 1983 for clearly established violations of the First Amendment, that means RFRA provides, as one avenue for relief, a right to seek damages against Government employees. The presumption in *Sossamon*, 563 U.S. 277, 131 S.Ct. 1651, 179 L.Ed.2d 700, is inapplicable because this case does not involve sovereign immunity. Pp. ––– – –––.

**\*2** 894 F.3d 449, affirmed.

THOMAS, J., delivered the opinion of the Court, in which all other Members joined, except BARRETT, J., who took no part in the consideration or decision of the case.

**Attorneys and Law Firms**

Noel J. Francisco, Solicitor General, Joseph H. Hunt, Assistant Attorney General, Jeffrey B. Wall, Edwin S. Kneedler, Deputy Solicitors General, Hashim M. Mooppan, Deputy Assistant Attorney, General, Austin L. Raynor, Assistant to the Solicitor, General, Benjamin H. Torrance, Sarah S. Normand, Ellen Blain, Mary Hampton Mason, Reginald M. Skinner, Attorneys, Department of Justice, Washington, D.C., for petitioners.

Shayana Kadidal, Diala Shamas, Baher Azmy, Center for Constitutional Rights, New York, NY, Jennifer R. Cowan, Erol Gulay, Christopher S. Ford, Sandy Tomasik, William C. Mattessich, Ryan C. Mullally, Omar Debs, Debevoise & Plimpton LLP, New York, NY, Ramzi Kassem, Naz Ahmad, CLEAR Project, Main Street Legal Services, Inc., City University of New, York School of Law, Long Island City, NY, for respondents.

**Opinion**

Justice THOMAS delivered the opinion of the Court.

The Religious Freedom Restoration Act of 1993 (RFRA) prohibits the Federal Government from imposing substantial burdens on religious exercise, absent a compelling interest pursued through the least restrictive means. 107 Stat. 1488, 42 U.S.C. § 2000bb *et seq.* It also gives a person whose religious exercise has been unlawfully burdened the right to seek "appropriate relief." The question here is whether "appropriate relief " includes claims for money damages against Government officials in their individual capacities. We hold that it does.

I

A

RFRA secures Congress' view of the right to free exercise under the First Amendment, and it provides a remedy to redress violations of that right. Congress passed the Act in the wake of this Court's decision in *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 885–890, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), which held that the First Amendment tolerates neutral, generally applicable laws that burden or prohibit religious acts even when the laws are unsupported by a narrowly tailored, compelling governmental interest. See § 2000bb(a). RFRA sought to counter the effect of that holding and restore the pre-*Smith* "compelling interest test" by "provid[ing] a claim ... to persons whose religious exercise is substantially burdened by government." §§ 2000bb(b)(1)–(2). That right of action enables a person to "obtain appropriate relief against a government." § 2000bb–1(c). A " 'government' " is defined to include "a branch, department, agency,

instrumentality, and official (or other person acting under color of law) of the United States." § 2000bb–2(1).

B

Respondents Muhammad Tanvir, Jameel Algibhah, and Naveed Shinwari are practicing Muslims who claim that Federal Bureau of Investigation agents placed them on the No Fly List in retaliation for their refusal to act as informants against their religious communities. Respondents sued various agents in their official capacities, seeking removal from the No Fly List. They also sued the agents in their individual capacities for money damages. According to respondents, the retaliation cost them substantial sums of money: airline tickets wasted and income from job opportunities lost.

More than a year after respondents sued, the Department of Homeland Security informed them that they could now fly, thus mooting the claims for injunctive relief. The District Court then dismissed the individual-capacity claims for money damages, ruling that RFRA does not permit monetary relief.

The Second Circuit reversed. [894 F.3d 449 (2018)](). It determined that RFRA's express remedies provision, combined with the statutory definition of "Government," authorizes claims against federal officials in their individual capacities. Relying on our precedent and RFRA's broad protections for religious liberty, the court concluded that the open-ended phrase "appropriate relief" encompasses money damages against officials. We granted certiorari, [589 U. S. ––––, 140 S.Ct. 550, 205 L.Ed.2d 353 (2019)](), and now affirm.

II

 **\*3** As usual, we start with the statutory text. *E.g., [Mission Product Holdings, Inc.](https://)* v. *Tempnology, LLC*, 587 U. S. ––––, ––––, 139 S.Ct. 1652, 1661, 203 L.Ed.2d 876 (2019). A person whose exercise of religion has been unlawfully burdened may "obtain appropriate relief against a government." [42 U.S.C. § 2000bb–1(c)]().

A

**[1]** We first have to determine if injured parties can sue Government officials in their personal capacities. RFRA's text provides a clear answer: They can. Persons may sue and obtain relief "against a government," [§ 2000bb–1(c)](), which is defined to include "a branch, department, agency, instrumentality, and *official* (*or other person acting under color of law*) of the United States." § 2000bb–2(1) (emphasis added).

The Government urges us to limit lawsuits against officials to suits against them in their official, not personal, capacities. A lawsuit seeking damages from employees in their individual capacities, the Government argues, is not really "against a government" because relief "can be executed only against the official's personal assets." [*Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)]().

**[2]** The problem with this otherwise plausible argument is that Congress supplanted the ordinary meaning of "government" with a different, express definition. " 'When a statute includes an explicit definition, we must follow that definition,' even if it varies from a term's ordinary meaning." [*Digital Realty Trust, Inc.* v. *Somers*, 583 U. S. ––––, ––––, 138 S.Ct. 767, 776, 200 L.Ed.2d 15 (2018)]() (quoting [*Burgess v. United States*, 553 U.S. 124, 130, 128 S.Ct. 1572, 170 L.Ed.2d 478 (2008)]()). For example, if a statute defines a "State" to include territories and districts, that addition to the plain meaning controls. See, *e.g.,* [15 U.S.C. § 267](). So too here. A "government," under RFRA, extends beyond the term's plain meaning to include officials. And the term "official" does not refer solely to an office, but rather to the actual person "who is invested with an office." 10 Oxford English Dictionary 733 (2d ed. 1989). Under RFRA's definition, relief that can be executed against an "official ... of the United States" *is* "relief against a government." [42 U.S.C. §§ 2000bb–1(c)](), [2000bb–2(1)]().

**[3]** Not only does the term "government" encompass officials, it also authorizes suits against "other person[s] acting under color of law." [§ 2000bb–2(1)](). The right to obtain relief against "a person" cannot be squared with the Government's reading that relief must always run against the United States. Moreover, the use of the phrase "official (*or other* person ...)" underscores that "official[s]" are treated like "person[s]." *Ibid.* (emphasis added). In other words, the parenthetical clarifies that "a government" includes both

individuals who are officials acting under color of law *and* other, additional individuals who are nonofficials acting under color of law. Here, respondents sued the former.

[4] The legal "backdrop against which Congress enacted" RFRA confirms the propriety of individual-capacity suits. *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 487, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005). The phrase "persons acting under color of law" draws on one of the most well-known civil rights statutes: 42 U.S.C. § 1983. That statute applies to "person[s] ... under color of any statute," and this Court has long interpreted it to permit suits against officials in their individual capacities. See, *e.g., Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 305–306, and n. 8, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). Because RFRA uses the same terminology as § 1983 in the very same field of civil rights law, "it is reasonable to believe that the terminology bears a consistent meaning." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 323 (2012). A suit against an official in his personal capacity is a suit against a person acting under color of law. And a suit against a person acting under color of law is a suit against "a government," as defined under RFRA. § 2000bb–1(c).

B

*4 [5] [6] The question then becomes what "appropriate relief" entails. Without a statutory definition, we turn to the phrase's plain meaning at the time of enactment. See *FCC v. AT&T Inc.*, 562 U.S. 397, 403, 131 S.Ct. 1177, 179 L.Ed.2d 132 (2011). "Appropriate" means "[s]pecially fitted or suitable, proper." 1 Oxford English Dictionary, at 586; see also Merriam-Webster's Collegiate Dictionary 57 (10th ed. 1996) ("especially suitable or compatible"). Because this language is "open-ended" on its face, what relief is " 'appropriate' " is "inherently context dependent." *Sossamon v. Texas*, 563 U.S. 277, 286, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011) (interpreting identical language).

In the context of suits against Government officials, damages have long been awarded as appropriate relief. In the early Republic, "an array of writs ... allowed individuals to test the legality of government conduct by filing suit against government officials" for money damages "payable by the officer." Pfander & Hunt, Public Wrongs and Private Bills: Indemnification and Govt Accountability in the Early Republic, 85 N. Y. U. L. Rev. 1862, 1871–1875 (2010); see *id.*, at 1875, n. 52 (collecting cases). These common-law causes of action remained available through the 19th century and into the 20th. See, *e.g., Little v. Barreme*, 2 Cranch 170, 2 L.Ed. 243 (1804); *Elliott v. Swartwout*, 10 Pet. 137, 9 L.Ed. 373 (1836); *Mitchell v. Harmony*, 13 How. 115, 14 L.Ed. 75 (1852); *Buck v. Colbath*, 3 Wall. 334, 18 L.Ed. 257 (1866); *Belknap v. Schild*, 161 U.S. 10, 16 S.Ct. 443, 40 L.Ed. 599 (1896); *Philadelphia Co. v. Stimson*, 223 U.S. 605, 619–620, 32 S.Ct. 340, 56 L.Ed. 570 (1912) ("The exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded").

Though more limited, damages against federal officials remain an appropriate form of relief today. In 1988 the Westfall Act foreclosed common-law claims for damages against federal officials, 28 U.S.C. § 2679, but it left open claims for constitutional violations and certain statutory violations. §§ 2679(b)(2)(A)–(B). Indeed, the Act expressly contemplates that a statute could authorize an action for damages against Government employees. § 2679(b)(2)(B) (explaining that the displacement of remedies "does not extend or apply to a civil action against an employee of the Government ... which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized").

Damages are also commonly available against state and local government officials. In 1871, for example, Congress passed the precursor to § 1983, imposing liability on any person who, under color of state law, deprived another of a constitutional right. 17 Stat. 13; see also *Myers v. Anderson*, 238 U.S. 368, 379, 383, 35 S.Ct. 932, 59 L.Ed. 1349 (1915) (affirming award of damages against state election officials). By the time Congress enacted RFRA, this Court had interpreted the modern version of § 1983 to permit monetary recovery against officials who violated "clearly established" federal law. *E.g., Procunier v. Navarette*, 434 U.S. 555, 561–562, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

[7] This availability of damages under § 1983 is particularly salient in light of RFRA's origins. When first

enacted, RFRA defined " 'government' " to include an "official (or other person acting under color of law) of the United States, *a State, or a subdivision of a State.*" 107 Stat. 1489 (emphasis added). It made no distinction between state and federal officials. After this Court held that RFRA could not be enforced against the States, see *City of Boerne v. Flores*[, 521 U.S. 507, 511, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)](), Congress narrowly amended the definition "by striking 'a State, or a subdivision of a State.' " 114 Stat. 806. That context is important because RFRA made clear that it was reinstating both the pre- *Smith* substantive protections of the First Amendment *and* the right to vindicate those protections by a claim. [§ 2000bb(b)](). There is no doubt that damages claims have always been available under [§ 1983]() for clearly established violations of the First Amendment. See, *e.g., Sause* v. *Bauer*, 585 U. S. ––––, 138 S.Ct. 2561, 201 L.Ed.2d 982 (2018) (*per curiam*) (reversing grant of qualified immunity in a case seeking damages under [§ 1983]() based on alleged violations of free exercise rights and Fourth Amendment rights); *Murphy v. Missouri Dept. of Corrections*[, 814 F.2d 1252, 1259 (CA8 1987)]() (remanding to enter judgment for plaintiffs on a [§ 1983]() free speech and free exercise claims and to determine and order "appropriate relief, which ... may, if appropriate, include an award" of damages). Given that RFRA reinstated pre- *Smith* protections and rights, parties suing under RFRA must have at least the same avenues for relief against officials that they would have had before *Smith*. That means RFRA provides, as one avenue for relief, a right to seek damages against Government employees.

**\*5** A damages remedy is not just "appropriate" relief as viewed through the lens of suits against Government employees. It is also the *only* form of relief that can remedy some RFRA violations. For certain injuries, such as respondents' wasted plane tickets, effective relief consists of damages, not an injunction. See, *e.g.*, *DeMarco v. Davis*[, 914 F.3d 383, 390 (CA5 2019)]() (destruction of religious property); *Yang v. Sturner*[, 728 F.Supp. 845 (DRI 1990)](), opinion withdrawn [750 F.Supp. 558 (DRI 1990)]() (autopsy of son that violated Hmong beliefs). Given the textual cues just noted, it would be odd to construe RFRA in a manner that prevents courts from awarding such relief. Had Congress wished to limit the remedy to that degree, it knew how to do so. See, *e.g.*, [29 U.S.C. § 1132(a)(3)]() (providing for "appropriate equitable relief "); [42 U.S.C. § 2000e–5(g)(1)]() (providing for "equitable relief as the court deems appropriate"); [15 U.S.C. § 78u(d)(5)]() (providing for "any equitable relief that may be appropriate or necessary"). [*]

Our opinion in *Sossamon* does not change this analysis. *Sossamon* held that a State's acceptance of federal funding did not waive sovereign immunity to suits for damages under a related statute—the Religious Land Use and Institutionalized Persons Act of 2000—which also permits " 'appropriate relief.' " [563 U.S. at 280, 282, 131 S.Ct. 1651](). The obvious difference is that this case features a suit against individuals, who do not enjoy sovereign immunity.

The Government also posits that we should be wary of damages against government officials because these awards could raise separation-of-powers concerns. But this exact remedy has coexisted with our constitutional system since the dawn of the Republic. To be sure, there may be policy reasons why Congress may wish to shield Government employees from personal liability, and Congress is free to do so. But there are no constitutional reasons why we must do so in its stead.

**[8]** To the extent the Government asks us to create a new policy-based presumption against damages against individual officials, we are not at liberty to do so. Congress is best suited to create such a policy. Our task is simply to interpret the law as an ordinary person would. Although background presumptions can inform the understanding of a word or phrase, those presumptions must exist at the time of enactment. We cannot manufacture a new presumption now and retroactively impose it on a Congress that acted 27 years ago.

\* \* \*

**[9]** We conclude that RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities. The judgment of the United States Court of Appeals for the Second Circuit is affirmed.

*It is so ordered.*

Justice BARRETT took no part in the consideration or decision of this case.

**All Citations**

--- S.Ct. ----, 2020 WL 7250100, 20 Cal. Daily Op. Serv. 12,499

# Footnotes

\*      The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

\*      Both the Government and respondents agree that government officials are entitled to assert a qualified immunity defense when sued in their individual capacities for money damages under RFRA. Indeed, respondents emphasize that the "qualified immunity defense was created for precisely these circumstances," Brief for Respondents 22, and is a "powerful shield" that "protects all but the plainly incompetent or those who flout clearly established law," Tr. of Oral Arg. 42; see *District of Columbia* v. *Wesby*, 583 U. S. ——, —— – ——, 138 S.Ct. 577, 589–591, 199 L.Ed.2d 453 (2018).

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.