UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ORTHODOX JEWISH COALITION OF
CHESTNUT RIDGE, *et al.*,

                              Plaintiffs,

        v.

VILLAGE OF CHESTNUT RIDGE, NEW YORK,

                              Defendant.

No. 19-CV-443 (KMK)

OPINION & ORDER

---

Appearances:

Donna Corby Sobel, Esq.
Joseph Allan Churgin, Esq.
Savad Churgin, Attorneys at Law
Nanuet, NY
*Counsel for Plaintiffs*

Robert Leo Greene, Esq.
Law Office of Robert L. Greene
New York, NY
*Counsel for Plaintiffs*

Donald J. Feerick, Jr. , Esq.
Mary Elizabeth Brady Marzolla, Esq.
Patrick Andrew Knowles, Esq.
Feerick Nugent MacCartney PLLC
South Nyack, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        The Orthodox Jewish Coalition of Chestnut Ridge ("OJCCR"), Congregation Birchas

Yitzchok ("CBY"), Congregation Dexter Park ("CDP"), Congregation Torah U'tfilla ("CTU";

together with CBY and CDP, the "Congregations"), Abraham Willner ("Willner"), and Tzvi

Miller ("Miller"; together with Willner, "Individual Plaintiffs"; collectively "Plaintiffs") bring

this Action against the Village of Chestnut Ridge, New York ("Defendant" or the "Village"). (*See* First Am. Compl. ("FAC") (Dkt. No. 29).)  Plaintiffs allege that Defendant violated their rights under the First and Fourteenth Amendment to the United States Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq*., and Article 3 of the New York Constitution through zoning requirements that effectively prevented Plaintiffs from operating and attending shuls in the Village.  (*Id*.)  Before the Court is Defendant's Motion To Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion").  (Not. of Mot. to Dismiss ("Not. of Mot.") (Dkt. No. 59.)  For the reasons that follow, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiffs' FAC and materials of which the Court may take judicial notice.  They are assumed true for purposes of adjudicating the instant Motion.

Plaintiffs are Orthodox Jews.  (FAC ¶ 27.)  Many Orthodox Jews have moved to the Village in the past decade.  (*Id*. ¶ 28.)  Plaintiffs' religious beliefs require them to attend shul for prayer during the week, for services on their Sabbath and other holy days, and for other religious activities.  (*Id*. ¶ 31.)  These beliefs require Plaintiffs to attend four prayer services on their Sabbath, including one after sundown on Friday and three more on Saturday morning, afternoon, and evening, respectively.  (*Id*. ¶ 34.)  Plaintiffs' religious beliefs require a ritual meal in the hour or so between Saturday afternoon and evening services.  (*Id*. ¶¶ 35, 54.)  Other religious community gatherings also involve shared meals.  (*Id*. ¶ 52.)  Plaintiffs often must walk to shul to fulfill these obligations, because they are religiously prohibited from driving or riding in motor vehicles during their Sabbath and on most holy days.  (*Id*. ¶¶ 39–40.)  Further, Plaintiffs

may not carry anything on their Sabbath, including children, unless there is a religious boundary. (*Id.* ¶ 49.)  Finally, Plaintiffs' religious beliefs require that women worship in separate areas.  (*Id.* ¶ 55.)

Plaintiffs lack adequate physical facilities to satisfy their religious obligations.  (*Id.* ¶¶ 36–37.)  They do not have a location with adequate space for a room for shared meals.  (*Id.* ¶ 53.)  Further, it is contrary to Jewish law and impractical for Plaintiffs to walk long distances to shul.  (*Id.* ¶¶ 41–45.)  It is also dangerous, particularly in rain and snow, because two of the required trips often occur in the dark, and the Village has few sidewalks and few street lights.  (*Id.* ¶¶ 46–48.)  Given the lack of a large religious boundary, Plaintiffs and their members are unable to carry young children or bring elderly or disabled persons to services.  (*Id.* ¶¶ 50–51.)  And many women are prevented from attending services because Plaintiffs' locations of worship lack adequate separate areas.  (*Id.* ¶ 55.)

The Village has only one legally permitted shul.  (*Id.* ¶ 56.)  None of the Congregations has a permanent location.  Despite its efforts, CTU has been unable to find an adequate location that meets its members' needs.  (*Id.* ¶¶ 57–58.)  CTU currently meets for religious observance in a rented commercial space.  (*Id.* ¶ 59.)  This facility is expensive.  (*Id.* ¶ 60.)  CBY purchased property to build a shul, but has not yet submitted plans for development.  (*Id.* ¶ 73.)  As a result, CBY meets in the basement of a private home.  (*Id.* ¶ 74.)  CDP has likewise been unable to find a property to allow its members to fulfill their religious obligations, and currently worships in a great room in a home.  (*Id.* ¶¶ 85–86.)  The Congregations' facilities all lack adequate bathrooms.  (*Id.* ¶¶ 63, 77, 87.)  They have inadequate space for the Congregations' male and female members and their children to attend.  (*Id.* ¶¶ 64–65, 78–79, 88–89.)  Some members of each Congregation cannot walk to their current location.  (*Id.* ¶¶ 66, 80, 90.)  No Congregation

has adequate space for ritual meals, forcing each to rent social halls. (*Id*. ¶¶ 70–71, 81, 83, 91, 95.) These restrictions have caused each Congregation to lose members and membership dues. (*Id*. ¶¶ 67, 82, 92.) They have also caused each Congregation to lose donations from individuals wary of a temporary shul who would have supported one with a permanent location. (*Id*. ¶¶ 72, 84, 96.) CTU currently meets under a certificate of use for a lecture hall, because it has been unable to obtain a certificate of use for a place of worship. (*Id*. ¶ 59.) CTU and CDP have incurred fines from the Village and have had to defend themselves itself against violations regarding their temporary synagogue locations. (*Id*. ¶¶ 68, 93.) Because it has been financially prohibitive to cure these violations, CTU and CBY have incurred substantial legal and other professional fees. (*Id*. ¶¶ 69, 94.) Willner is affiliated with CBY. (*Id*. ¶ 97.) Miller is affiliated with CDP. (*Id*. ¶ 98.) OJCCR is composed of member congregations that similarly lack a location where they can legally exercise their religion. (*Id*. ¶ 16.)

Plaintiffs' difficulty identifying an adequate location is due to the Village's former land use regulations (the "Old Law"). The Old Law subjected places of worship to various regulations. (*See id*. ¶ 121.) The most onerous of these required that places of worship be located on properties that are five acres or bigger. (*Id*. ¶ 103; *see id*. ¶ 121.) Only 1.8% of parcels in the Village meet this requirement. (*Id*. ¶ 104.) As of January 7, 2019, only one such parcel was for sale. (*Id*.) This left "virtually no properties in the Village" where "Plaintiffs could have located a place of worship." (*Id*. ¶ 107.) This is in part because a single, large shul would be inaccessible to Orthodox Jews residing in the Village's different neighborhoods. (*Id*. ¶ 105.) Even if Plaintiffs could identify suitable property, the cost to acquire a five-acre lot would be roughly $2,000,000 to $3,500,000, "prohibitively expensive" for congregations of fifty to one hundred families. (*Id*. ¶¶ 109–10, 112.) A Village Full Environmental Assessment Form

("FEAF") is consistent with these claims.  (*Id.* ¶¶ 104, 106, 109, 111.)  The Old Law prohibited places of worship in non-residential zoning districts.  (*Id.* ¶ 120.)  It also required places of worship to secure a Special Permit from the Village Board.  (*Id.* ¶ 118.)  These Special Permits were provided only subject to the "boundless" and "unbridled" discretion of the Village Board.  (*Id.* ¶¶ 132–34, 137.)  The Village's FEAF concluded that "there are no specific criteria or standards required" to issue a Special Permit.  (*Id.* ¶ 135; *see also id.* ¶ 136 (alleging that the Old Law had "no objective criteria" for issuing Special Permits).)

The Old Law treated non-religious uses less restrictively in at least three regards.  (*Id.* ¶ 123.)  First, non-religious uses had less onerous lot size requirements.  Libraries, museums, art galleries, nursery schools, hotels, and motels required at most only two acres.  (*Id.* ¶¶ 124, 126, 128.)  Funeral chapels, medical and dental clinics, health service complexes, commercial recreation facilities, and outdoor recreation facilities could have even smaller lots.  (*Id.* ¶¶ 125, 127.)  Second, they were permitted in non-residential zones.  Libraries, museums, art galleries, funeral chapels, medical and dental clinics, health service complexes, hotels, and motels were permitted by right in certain non-residential zones.  (*Id.* ¶¶ 125, 127, 128.)  Third, where a non-religious use was not permitted by right, it was a Conditional Use and did not require a Special Permit.  This was the case for libraries, museums, art galleries, nursery schools, commercial recreation facilities, outdoor recreation facilities, hotels, and motels in certain zoning districts.  (*Id.* ¶¶ 124, 126–28.)  Conditional Uses do not require review by the Village Board.  (*Id.* ¶ 141.)  The Village's Zoning Law contains standards to determine whether a Conditional Use is appropriate.  (*Id.* ¶¶ 142–43.)  This reduces the Board's discretion.  (*Id.* ¶ 144.)

On February 21, 2019, the Village Board approved a new House of Worship Law (the "New Law"), which "substantially eased its provisions regulating places of worship."  (*Id.*

¶ 146.)  The New Law was adopted after Plaintiffs filed their Complaint on January 15, 2019, (*see* Dkt. No. 1), but before Defendant waived service of process on April 11, 2019, (*see* Dkt. No. 8).  The New Law adopts the overall structure and various portions of a law proposed by OJCCR.  (*Compare* Decl. of Mary E. Marzolla ("Marzolla Decl.") Ex. E ("OJCCR Letter") (Dkt. No. 60-5) *with* Marzolla Decl. Ex. G ("New Law") (Dkt. No. 60-7).)[1]  In their brief, Plaintiffs allow that the New Law "removed the violative provisions" of the Old Law.  (Pls.' Mem. in Opp'n to Def.'s Mot. ("Pls.' Mem.") 3 (Dkt. No. 65).)  In court filings, Individual Plaintiffs and agents of CTU and OJCCR conceded that "the 2019 Houses of Worship Law will permit us to legally exercise our religion communally within the Village."  (Reply Decl. of Mary E. Marzolla ("Marzolla Reply Decl.") Ex. F ("Willner CUPON Decl.") ¶ 7 (Dkt. No. 76-6) (concerning belief of CBY); *id.* Ex. G ("Miller CUPON Decl.") ¶ 7 (Dkt. No. 76-7) (concerning belief of CDP); *id.* Ex. H ("Fromovitz CUPON Decl.") ¶ 10 (Dkt. No. 76-8) (concerning belief of OJCCR and CTU).)[2]  The New Law is being challenged in two separate courts by petitions seeking to prevent it from being applied.  (FAC ¶¶ 147–48.)

---

[1] The Court may take judicial notice of these documents.  The New Law is a matter of public record.  (*See* New Law.)  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes.").  The OJCCR letter is also a public record, as it is available as an exhibit to Village Board Resolution No. 2019-12.  (See Marzolla Decl. Ex. H 25-32 (Dkt. No. 60-8).)  *See Wang v. Pataki*, 396 F. Supp. 2d 446, 453 n.1 (S.D.N.Y. 2005) ("The Court may . . . take judicial notice of public documents, such as legislative histories.").

[2] The Court may take judicial notice of Plaintiffs' statements in court filings.  *See Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

B.  Procedural Background

Plaintiffs filed their Complaint on January 15, 2019.  (Dkt. No. 1.)  Defendant waived

service of process roughly three months later, on April 11, 2019.  (Dkt. No. 8.)  On April 19,

2019, Defendant requested a pre-motion conference regarding a proposed motion to dismiss,

(Dkt. No. 11), and the Court scheduled a conference for June 18, 2019, (Dkt. No. 13).  While the

Parties awaited this conference, Defendant informed the Court of a separate lawsuit claiming that

the New Law violated the Establishment Clause (the "CUPON Case").  (Dkt. No. 14.)  The

Parties requested that the CUPON Case be deemed related pursuant to Local Rule 13.  (*See* Dkt.

Nos. 14, 16.)  The plaintiff in the CUPON Case opposed this request.  (*See* Dkt. No. 15, 17.)

The Court denied the Parties' applications.  (Dkt. No. 18.)

On June 18, 2019, the Court held a pre-motion conference, (*see* Dkt. (minute entry for

June 18, 2019)), and ordered a briefing schedule, (*see* Dkt. No. 23).  Defendant filed its motion

on July 16, 2019.  (*See* Dkt. No. 25.)  On the same date, Plaintiffs requested permission to file an

amended complaint, which would clarify their compensatory damages claims.  (Dkt. No. 24.)

The next day, the Court approved Plaintiffs' request, (*see* Dkt. No. 28), and Plaintiffs filed their

FAC, (FAC).

On August 13, 2019, Defendant wrote a letter requesting permission to file a new motion

to dismiss, which would relate to Plaintiffs' claims for both damages and prospective relief.  (*See*

Dkt. No. 35.)  After an ultimately unsuccessful series of settlement conversations, (*see, e.g.*, Dkt.

(minute entry for Feb. 11, 2020)), the Court on February 25, 2020 ordered a briefing schedule on

Defendant's putative motion, (*see* Dkt. No. 51).  Defendant filed the instant Motion on April 17,

2020.  (*See* Not. of Mot.; Marzolla Decl. (Dkt. No. 60); Decl. of Florence Mandel ("Mandel

Decl.") (Dkt. No. 61); Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 62).)  Plaintiffs

opposed the Motion on June 3, 2020.  (*See* Pls.' Mem.; Decl. of Joseph A. Churgin ("Churgin Decl.") (Dkt. No. 66); Decl. of Tzvi Miller ("Miller Decl.") (Dkt. No. 67); Decl. of Abraham Willner ("Willner Decl.") (Dkt. No. 68); Decl. of Avrohom Fromovitz ("Fromovitz Decl.") (Dkt. No. 69).)  Defendant submitted its Reply on July 24, 2020.  (*See* Reply Mem. of Law in Supp. of Mot. ("Def.'s Reply") (Dkt. No. 77); Marzolla Reply Decl. (Dkt. No. 76).)  Plaintiffs submitted a letter noting supplemental authority on December 31, 2020.  (*See* Dkt. No. 78.)  Defendants replied on January 7, 2021.  (*See* Dkt. No. 79.)

## II.  Analysis

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)).

#### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citation and quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue."  *Id.* (alterations omitted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor.  *Id.* at 57.  However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial.  *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017).  If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing.  *See Carter*, 822 F.3d at 57.  Here, Defendant raises a facial challenge to jurisdiction.

### 2.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

    B.  Application

Defendant argues that Plaintiffs' claims for declarative and injunctive relief are moot, (Def.'s Mem. 18–24), and that Plaintiffs lack standing to assert these claims, (*id*. at 16–18).  It further argues that Plaintiffs' claims are not ripe because there has been no final decision, (*id*. at 18), that Plaintiffs may not collect damages on their facial claims, (*id*. at 24–25), that Plaintiffs have not suffered an injury traceable to the Old Law, (*id*. at 12–15), and that OJCCR lacks standing, (*id*. at 15–16).  Defendant also argues that CBY, CTU, OJCCR, and Willner are estopped from bringing claims due to prior tax and state court filings.  (*Id*. at 25–27.)  Finally, Defendant argues that it is shielded from liability under RLUIPA by the statute's safe harbor provision, (*id*. at 27–30), and that Plaintiffs do not allege a discriminatory purpose, (*id*. at 3–4). The Court first considers Defendant's jurisdictional arguments pursuant to Rule 12(b)(1), and then Defendant's arguments pursuant to Rule 12(b)(6) that Plaintiffs fail to state a claim.  *See Baldessarre v. Monroe-Woodbury Cent. Sch. Dist*., 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir.1990)), *aff'd*, 496 F. App'x 131 (2d Cir. 2012).

    1.  Mootness (Prospective Relief)

Defendant argues that, because of the New Law, Plaintiffs' requests for declaratory and injunctive relief are moot.  (Def.'s Mem. 18–24.)  The Court agrees.

 "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack,* 395 U.S. 486, 496 (1969). The burden on Defendant "to demonstrate mootness is a heavy one."  *Sugarman v. Village of*

*Chester*, 192 F. Supp. 2d 282, 290 (S.D.N.Y. 2002) (citation and quotation marks omitted); *see also Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126–27 (2d Cir. 2020) (noting a "formidable burden" to demonstrate mootness).  However, "[t]he voluntary cessation of allegedly illegal conduct usually will render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004) (citation and quotation marks omitted); *see also Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221–22 (2000) (noting that a case is moot where it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" (citation and italics omitted)); *N.Y. Pub. Interest Research Grp. v. Whitman*, 321 F.3d 316, 327 (2d Cir. 2003) (same).[3]  If a case is moot, the Court lacks jurisdiction.  *See Dean v. Blumenthal*, 577 F.3d 60, 64 (2d Cir. 2009) ("We lack jurisdiction if we conclude that a case is moot.").

The Second Circuit has adopted a specialized test of mootness where a governmental defendant changes an allegedly illegal law.  The "voluntary repeal of a constitutionally repugnant law does not necessarily moot challenges to it, because without a judicial determination of constitutionality the particular governing body remains free to reinstitute the law at a later date."  *Lamar*, 356 F.3d at 376 (citation omitted); *see also Nat'l Advert. Co. v. Town of Babylon*, 900 F.2d 551, 554 n.2 (2d Cir. 1990) (same).  However, the Second Circuit has noted a "hesitan[cy] to hold that a significant amendment or repeal of a challenged provision that obviates the

---

[3] Courts have identified a third requirement: that "[Defendant's] conduct must have in fact, ceased."  *Bryant v. City of New York*, No. 14-CV-8672, 2016 WL 3766390, at *3 (S.D.N.Y. July 8, 2016) (citation and quotation marks omitted).  As discussed, Plaintiffs admit that that the New Law "removed the violative provisions" of the Old Law.  (Pls.' Mem. 3.)  Thus, this requirement is satisfied.

plaintiff's claims does not moot a litigation, absent evidence that the defendant intends to reinstate the challenged statute after the litigation is dismissed, or that the municipality itself does not believe that the amendment renders the case moot." *Lamar*, 356 F.3d at 377; *see also McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) ("[R]epeal of a contested ordinance moots a plaintiff's injunction request, absent evidence that the [Village] plans to or already has reenacted the challenged law or one substantially similar."); *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930–31 (7th Cir. 2003) (same); *Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451–52 (2d Cir. 2002) (affirming the district court's finding that amendments to a sign ordinance mooted the plaintiff's claim for injunctive relief because "there [was] no reason to think that, having completely revised its regulations through proper procedures, the [defendant] [t]own [had] any intention of returning to the prior regulatory regime").[4]  The Second Circuit treats a government that changes its laws differently from a private party that changes its conduct because, where "the defendant is a government entity, some deference must be accorded to a legislative body's representations that certain conduct has been discontinued."  *Lamar*, 356 F.3d at 376 (citation, alteration, and quotation marks omitted); *see also Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) ("[W]e should assume that a legislative body is acting in good faith in repealing or amending a challenged legislative provision.").

Here, the FAC provides no reason to think that the Village intends to reinstitute the Old Law.  "[T]he [Village's] motivations for ceasing the allegedly illegal behavior could not have originated from a desire to terminate [Plaintiffs'] action."  *Native Village of Noatak v.*

---

[4] The FAC also provides no reason to think that the Village believes that the case is not moot.  Indeed, Defendant requests dismissal on mootness grounds, clearly indicating that it believes that Plaintiffs' claims for prospective relief are moot.  (*See* Def.'s Mem. 18–24.)

*Blatchford*, 38 F.3d 1505, 1511 (9th Cir. 1994), *overruled on different grounds by Chambers*, 941 F.3d 1195.  As discussed, the New Law was adopted shortly after Plaintiffs filed their complaint, but before Defendant waived service.  (*See* Dkt. No. 1; Dkt. No. 8; FAC ¶ 146.)  Even if Defendant knew of the lawsuit before passing the New Law, public records from its legislative history suggest that the New Law was seriously contemplated years before Plaintiffs filed their complaint.  (*See* Marzolla Decl. Ex. H (Dkt. No. 60-8), at 37 (noting in a Feb. 9, 2017 memo a directive from the Board of Trustees to "revise the Village's code with the purpose of reconciling it with Federal and State law regarding the zoning of religious uses"), 47 (noting on May 29, 2018 "that the Village Board feels the Zoning Code has to be amended to provide reasonable accommodation for the needs of religious uses"), 64 (noting in a June 28, 2018 Village Board of Trustees meeting a "zoning amendment draft local law" under which "three tiers of . . . worship uses would be allowed in residential zoning").)[5]  These records further state that the Village approved a completed environmental assessment of the New Law on the same date that Plaintiffs filed the Complaint.  (*See* Marzolla Decl. Ex. H (Dkt. No. 60-10), at 82–84.)  Thus, it is not the case that "suspicious timing and circumstances pervade the [Village's] decision . . . ." *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 604 (2d Cir. 2016).  Nor has Defendant "expressed an intent to reenact the offending provisions were the litigation to be dismissed for lack of jurisdiction." *Lamar*, 356 F.3d at 376.  Finally, Plaintiffs do not allege that the Village is not following its "formal written policy."  *See Dodge v. County of Orange*, 208 F.R.D. 79, 85 (S.D.N.Y. 2002).

---

[5] As discussed, the Court may take judicial notice of this legislative history.  *See Wang*, 396 F. Supp. 2d at 453.

Plaintiffs argue that the Old Law can reasonably be expected to recur because of pending legal challenges to the New Law.  (Pls.' Mem. 15–16.)  To the Court's knowledge, every court considering this issue has disagreed with the view that "the mere filing of a lawsuit is sufficient to resurrect Article III jurisdiction over the repealed statutes."  *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1184 (10th Cir. 2000); *see also Miller v. Benson*, 68 F.3d 163, 164–65 (7th Cir. 1995); *Jackson v. Abercrombie*, 585 F. App'x 413, 414 (9th Cir. 2014).  Indeed, the Fourth Circuit has held that failing to dismiss a claim for prospective relief as moot under these circumstances would allow Plaintiffs "a form of collateral attack on the state decision," allowing them to "play off one court system against another."  *Miller*, 68 F.3d 163, 165.[6,7]

Plaintiffs argue that their "reasonable uncertainty about a return to the prior land use regulation scheme has caused them to self-censor their religious land use."  (Pls.' Mem. 18; *see also id*. at 16–19.)[8]  The FAC does not allege this.  (*See generally* FAC.)  Even if it had, this "alleged injury is . . . too speculative for Article III purposes."  *Clapper v. Amnesty Int'l USA*,

---

[6] The Court thus does not consider Plaintiffs' argument about the timing of their vested rights to develop land, (Pls.' Mem. 17), as it assumes that such collateral review of other courts' decisions is appropriate.

[7] Because Plaintiffs do not allege that Defendant intends to reenact the Old Law, the exception to mootness for harms that are capable of repetition but evading review does not apply. *See Utah Animal Rights Coal. v. Salt Lake City Corp*., 371 F.3d 1248, 1257 (10th Cir. 2004) (rejecting this exception "where the [o]rdinance has been amended to cure the alleged constitutional problem," and the controversy "will not recur"); *see also Alvarez v. Smith*, 558 U.S. 87, 93–94 (2009) (rejecting this exception where "nothing suggests that the individual plaintiffs will likely again prove subject to" the offending law).

[8] Plaintiffs cite cases on this point that relate to standing, not mootness.  *See Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451–52 (6th Cir. 2014); *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011).  The Court assumes without deciding that these cases apply to Defendant's mootness argument.

568 U.S. 398, 409 (2013).  The Court is not aware of any courts that have found a cognizable

injury due to a risk that the law might change.  Most of Plaintiffs' cases concern challenges to

existing laws that might be applied, not to laws that might someday exist.  *See Platt*, 769 F.3d at

450 (challenging existing canon on campaign contributions); *Benham*, 635 F.3d at 134

(challenging existing ordinance on public assembly and picketing); *Montclair Police Officers'*

*Ass'n v. City of Montclair*, No. 12-CV-6444, 2012 WL 12888427, at *2 (C.D. Cal. Oct. 24,

2012) (challenging existing Police Department policy on speech and expression).  The rest

concern a probabilistic injury, not a probability that the law will change.  *Nat. Res. Def. Council,*

*Inc. v. FDA*., 710 F.3d 71, 81 (2d Cir. 2013), *as amended* (Mar. 21, 2013) (finding that the

plaintiffs alleged injury based on exposure to a potentially harmful substance); *Whitman*, 321

F.3d at 325–26 (finding that the plaintiffs alleged an injury where they alleged uncertainty about

exposure to excess air pollution).

Plaintiffs argue that the New Law failed to eradicate the harm caused by the Old Law.

(Pls.' Mem. 19–21.)  Plaintiffs identify two such harms: enforcement actions against CTU and

CDP, (Pls.' Mem. 19–20), and a continued lack of adequate places to worship, (Pls.' Mem. 20–

21).  The Court rejects both arguments.

The alleged enforcement actions do not change the mootness analysis.  Plaintiffs do not

allege that harm related to the enforcement actions could be remedied by prospective relief

related to the Old Law.  The FAC alleges only that CTU and CDP have "incurred fines from the

Village and ha[ve] to defend [them]selves against violations regarding [their] temporary

synagogue locations."  (FAC ¶¶ 68, 93.)  Thus, on this record, the Court must conclude that the

dispute is moot because it would be "impossible for [the] [C]ourt to grant any effectual

[prospective] relief to the prevailing party."  *See Knox v. Service Emps. Int'l Union, Local 1000*,

567 U.S. 298, 307 (2012) (citation and quotation marks omitted).  And Plaintiffs' damages

claims satisfy any "public interest in having the legality of the practices settled," which in

different circumstances may "militate[] against a mootness conclusion."  *Desiderio v. Nat'l Ass'n*

*of Sec. Dealers, Inc*., 191 F.3d 198, 202 (2d Cir. 1999) (citation and quotation marks omitted).

(*Contra* Pls.' Mem. 20.)

      The continued lack of adequate places to worship likewise does not affect the mootness

analysis.  (*See* FAC ¶¶ 76, 85.)  *Campbell v. Greisberger* presented a similar situation.  80 F.3d

703 (2d Cir. 1996), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus.*

*Corp.*, 544 U.S. 280 (2005).  There, the plaintiff alleged that a question about mental health on

the New York State Bar application was illegal under the Americans with Disabilities Act.  *Id*. at

705.  The offending question was subsequently removed from the bar application.  *Id*. at 706.

Despite this change, the plaintiff argued that his case was not moot because he was "still

suffering from the effects of the allegedly illegal question."  *Id*.  Specifically, his application to

the New York Bar was still conditioned on submitting additional medical information.  *Id*.  The

Second Circuit held that the plaintiff's request for injunctive and declaratory relief was moot

because "the request for medical information was an inevitable consequence of [the plaintiff's]

attempt to use his mental illness to excuse his [separately reported] arrests and default, and not a

result of his answer to the challenged question."  *Id*.  Here, while Plaintiffs allege ongoing harms,

they do not allege that these harms exist because the New Law failed to fully remedy the

illegality of the Old Law.  (*See generally* FAC.)  A finding that Plaintiffs' harms could be

remedied by further changes to the Old Law would be both inconsistent with the FAC and

inappropriate for a governmental defendant, which is entitled to "deference" regarding its

"representations that certain conduct has been discontinued."  *Lamar*, 356 F.3d at 376 (citation

omitted); *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 945

F.3d 83, 124 (2d Cir. 2019) (finding that injunctive relief broader than striking down laws that

discriminate on the basis of religion is inappropriately "speculative" because "the Village has not

taken any action suggesting it would fail to follow the law in processing [the plaintiff's]

application"); *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 111 (2d Cir. 2010)

("[T]he [Village] is entitled to deference with respect to its assurances that it has undertaken a

good-faith enforcement effort.").

      The cases cited by Plaintiffs are not controlling, and they are also distinguishable.  (*See*

Pls.' Mem. 19, 20–21.)  In *Gropper v. Fine Arts Housing, Inc*., the dispute was not moot because

the defendant agreed to provide relief that was subject to various contingencies, and thus "may

not [have] resolve[d] its alleged ADA violation for years."  12 F. Supp. 3d 664, 670 (S.D.N.Y.

2014); *see also Summit Lake Paiute Tribe of Nevada v. U.S. Bureau of Land Mgmt*., 496 F.

App'x 712, 714 (9th Cir. 2012) (finding the case was not moot where an allegedly illegal

pipeline continued to impose costs on the plaintiff); *Storms v. United States*, No. 13-CV-811,

2015 WL 1196592, at *22 (E.D.N.Y. Mar. 16, 2015) (finding the case was not moot where an

allegedly unlawful debarment was vacated, but continued to directly cause adverse employment

effects).  Here, by contrast, Defendant has fully adopted the New Law, and Plaintiffs do not

allege that any remnant of the Old Law remains, or that the Old Law remains a continued

obstacle to constructing a place to worship.  (*See* Pls.' Mem. 3.)  In *EEOC v. State of Illinois*, the

court found that the dispute was not moot because "the repeal of the statute did nothing to

compensate teachers for damages they suffered from being denied tenure on account of their

age."  No. 88-2261, 1990 WL 56147, at *2 (C.D. Ill. Jan. 25, 1990); *see also Babcock v. Frank*,

729 F. Supp. 279, 286–87 (S.D.N.Y. 1990) (finding the case was not moot because declaratory

judgment related to prior discriminatory treatment could issue).  Here, the Court considers only Defendant's argument that Plaintiffs' requests for prospective relief are moot, (*see* Def.'s Mem. 18–24); Plaintiffs' requests for damages are considered *infra*.[9]

Thus, Plaintiffs' requests for prospective relief are dismissed as moot.  Their claims for damages are not.  In general, "so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608–09 (2001); *see also Van Wie v. Pataki*, 267 F.3d 109, 115 n.4 (2d Cir. 2001) (noting that a claim for damages, even nominal in nature, prevents mootness); *Stokes v. Village of Wurtsboro*, 818 F.2d 4, 6 (2d Cir. 1987) ("Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable." (citation omitted)); *Keepers, Inc. v. City of Milford*, 944 F. Supp. 2d 129, 141 (D. Conn. 2013) (finding that the plaintiff's facial and as-applied challenges were not moot where the plaintiff made a claim for nominal damages because "[c]laims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable" (citation omitted)), *vacated in part on other grounds*, 807 F.3d 24 (2d Cir. 2015).

---

[9] Because the Court finds that Plaintiffs' claims for prospective relief are moot, it does not consider Defendant's argument that Plaintiffs' lack standing to seek prospective relief.  (*See* Defs.' Mem. 16–18.)  The Court notes, however, that Defendant's standing argument is not "a restatement of its mootness argument."  (*See* Pls.' Mem. 11.)  Indeed, in at least some respects Plaintiffs face a higher bar to show standing than they do in opposing Defendant's position that their requests are moot.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000) ("[T]here are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness.").

### 2.  Ripeness (Counts 1, 2, 4, and 7)

Defendant argues that Plaintiffs' damages claims are not ripe because "Plaintiffs do not allege having sought or obtained a final decision under the [Old] Law."  (Def.'s Mem. 18.) Relatedly, Defendants argue that Plaintiffs may not seek damages based upon a facial challenge. (*Id*. at 24–25.)  The Court agrees in part, finding that only Plaintiffs' damages claims related to alleged discrimination are ripe.

"Ripeness is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority."  *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005).  The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977); *see also Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) ("Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." (citation and quotation marks omitted)); *Authors Guild, Inc. v. HathiTrust*, 902 F. Supp. 2d 445, 455 (S.D.N.Y. 2012) ("Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies of sufficient immediacy and reality and not hypothetical or abstract disputes." (citation and quotation marks omitted)), *vacated in part on other grounds*, 755 F.3d 87 (2d Cir. 2014).

"Building on the foregoing, the Supreme Court has developed specific ripeness requirements applicable to land use disputes."  *Murphy*, 402 F.3d at 347.  In *Williamson County*

20

*Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), the Supreme Court required the land developer to obtain a final, definitive position as to the application of the relevant zoning laws to the property from the municipal entity responsible for those laws.  *Id.* at 186.  Under *Williamson County*, the plaintiff cannot seek federal court review of a zoning ordinance or provision until it has submitted at least one meaningful application for a variance. *Id.* at 190; *see also Murphy*, 402 F.3d at 348 (same).[10]

Although this ripeness paradigm was originally developed by the Supreme Court in the context of a regulatory takings challenge, *see Williamson County*, 473 U.S. at 186, the Second Circuit has extended the finality requirement to land use disputes involving more than just takings claims, s*ee Murphy*, 402 F.3d at 349–50.  Indeed, the Second Circuit has applied this test to as-applied challenges to land use laws under RLUIPA, the First Amendment, and the Equal Protection Clause.  *See id.* at 348–51 (applying final decision test for ripeness to as-applied RLUIPA claims and as-applied First Amendment free exercise claims); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88–89 (2d Cir. 2002) (noting that *Williamson County*'s finality test had been extended to Equal Protection claims); *accord Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 979 (9th Cir. 2011) ("All of the circuits to address this issue have applied the final decision requirement to RLUIPA claims, as well as to related First Amendment-based § 1983 claims . . . ."); *Miles Christi Religious Order v. Township*

---

[10] *Williamson County* separately required that a land developer "seek compensation through the procedures the State has provided for doing so."  473 U.S. at 194.  The Supreme Court overturned this state law remedies requirement in *Knick v. Township of Scott*, 139 S.Ct. 2162 (2019).  However, *Knick* did not disturb *Williamson County*'s final decision requirement. *See id*. at 2169 ("*Knick* does not question the validity of this finality requirement, which is not at issue here."); *see also Sagaponack Realty, LLC v. Village of Sagaponack*, 778 F. App'x 63, 64 (2d Cir. 2019) (summary order) ("*Knick* leaves undisturbed the [requirement] that a state regulatory agency must render a final decision on a matter before a taking claim can proceed.").

*of Northville*, 629 F.3d 533, 537 (6th Cir. 2010) (noting that the Sixth Circuit has applied the finality requirement to Equal Protection and First Amendment challenges to land use requirements); *Taylor Inv., Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1291–92 (3d Cir. 1993) (applying *Williamson County*'s final decision rule to substantive Due Process, procedural Due Process, and Equal Protection as-applied challenges to zoning determination); *Unity Ventures v. County of Lake*, 841 F.2d 770, 774–76 (7th Cir. 1988) (applying final decision rule to Equal Protection claims); *Roman Catholic Diocese of Rockville Ctr. v. Inc. Village of Old Westbury*, No. 09-CV-5195, 2012 WL 1392365, at *6 (E.D.N.Y. Apr. 23, 2012) (noting that in the Second Circuit the final decision rule applies to First Amendment and RLUIPA challenges to land use laws).

"A final decision exists when a development plan has been submitted, considered and rejected by the governmental entity with the power to implement zoning regulations."  *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008); *see also Ecogen, LLC v. Town of Italy*, 438 F. Supp. 2d 149, 155 (W.D.N.Y. 2006) (holding that the final decision rule generally requires "that the plaintiff . . . have submitted at least one application for, and been denied, permission for the proposed structure or use of the subject property"); *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 159 (S.D.N.Y. 2000) ("In order to have a final decision, a 'development plan must be submitted, considered, and rejected by the governmental entity.'" (quoting *Unity Ventures*, 841 F.2d at 774)); *Church of St. Paul & St. Andrew v. Barwick*, 496 N.E.2d 183, 190 (N.Y. 1986) (holding that decision was not final "until plaintiff has sought and the Commission has granted or denied a certificate of appropriateness or other approval . . . ." (citation omitted)); *Waterways Dev. Corp. v. Lavalle*, 813 N.Y.S.2d 485, 486 (App. Div. 2006) (holding that case was not ripe, because "[t]he plaintiff ha[d] not applied for a building permit for the residential

units involving the variance at issue" and "[t]herefore, there [had] been no final determination as to the validity thereof"). Furthermore, generally, even if a plan has been submitted and rejected, a claim is not ripe until the "property owner submit[s] at least one meaningful application for a variance." *Murphy*, 402 F.3d at 348; *see also id.* at 353 ("[F]ailure to pursue a variance prevents a federal challenge to a local land use decision from becoming ripe." (citing *Williamson County*, 473 U.S. at 190)); *Bikur Cholim, Inc. v. Village of Suffern*, 664 F. Supp. 2d 267, 275 (S.D.N.Y. 2009) ("In general, . . . failure to seek a variance prevents a zoning decision from becoming ripe."); *S&R Dev. Estates*, 588 F. Supp. 2d at 461–64 (dismissing claims on ripeness grounds, where the plaintiff had not applied for a variance); *Goldfine*, 80 F. Supp. 2d at 159 (same); *Korcz v. Elhage*, 767 N.Y.S.2d 737, 738–39 (App. Div. 2003) (same); *Dick's Quarry, Inc. v. Town of Warwick*, 739 N.Y.S.2d 464, 464–65 (App. Div. 2002) (same). In the end, "[a] case is ripe when the court 'can look to a final, definitive position from a local authority to assess precisely how [a property owner] can use [his or her] property.'" *Bikur Cholim*, 664 F. Supp. 2d at 275 (quoting *Murphy*, 402 F.3d at 347). And because "[r]ipeness is a jurisdictional inquiry," it is Plaintiffs' burden to establish that a final decision has been rendered. *Murphy*, 402 F.3d at 347. Thus, the Court "presume[s] that [it] cannot entertain [Plaintiffs'] claims 'unless the contrary appears affirmatively from the record.'" *Id*. (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)).

The Second Circuit has held that the final decision rule: (1) "aids in the development of a full record"; (2) ensures that a court "will . . . know precisely how a regulation will be applied to a particular parcel"; (3) recognizes the possibility that, by granting a variance, the administrative body "might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes"; and (4) "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Murphy*, 402 F.3d

at 348; *accord Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir. 1989) ("We stress that federal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions."); *Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989) (noting that in *Williamson County* and other decisions, the Supreme Court "has erected imposing barriers . . . to guard against the federal courts becoming the Grand Mufti of local zoning boards.").

Here, Plaintiffs do not allege that they submitted a development plan for approval or sought a variance. (*See generally* FAC.) Thus, "[a] federal lawsuit at this stage would inhibit the kind of give-and-take negotiation that often resolves land use problems, and would in that way impair or truncate a process that must be allowed to run its course." *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 124 (2d Cir. 2014). Indeed, this "give-and-take negotiation" appears to have resulted in the New Laws. (*See* FAC ¶ 146.)

This remains true with respect to the alleged enforcement actions against CTU and CDP. (*See* FAC ¶¶ 68–69, 93–94.) In *Murphy*, the Second Circuit held that a cease and desist order was not a final decision because the plaintiffs did not seek a variance or appeal the order to the Zoning Board of Appeals. 402 F.3d at 353; *see also Calverton Hills Homeowners Ass'n, Inc. v. Nugent Bldg. Corp.*, No. 17-CV-3916, 2017 WL 6598520, at *9 (E.D.N.Y. Dec. 26, 2017) (finding no final decision where the plaintiffs filed their complaint "one month before the . . . hearing pertaining to . . . regulatory charges"), *aff'd sub nom. Calverton Hills Homeowners Ass'n, Inc. v. County of Suffolk*, 739 F. App'x 69 (2d Cir. 2018). Here, Plaintiffs have not alleged that they sought a variance or appealed. (*See generally* FAC.) Nor do Plaintiffs allege that such an appeal or application was unavailable or would have been futile. *Cf. Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 915 F. Supp. 2d 574, 601 (S.D.N.Y.

2013) (noting a "consensus among courts" in the Second Circuit regarding a futility exception to the final decision requirement), *aff'd in part and rev'd in part on different grounds*, 945 F.3d 83 (2d Cir. 2019).  (*See generally* FAC.)[11,12]

Thus, barring an exception to this requirement, Plaintiffs' damages claims are not ripe. *See Liberty Sackets Harbor, LLC v. Village of Sackets Harbor*, No. 18-CV-242, 2018 WL 4609129, at *13 (N.D.N.Y. Sept. 25, 2018) (dismissing a complaint where "[the] [p]laintiffs [did] not allege that [the defendant] lack[ed] the discretion to grant variances, nor [did] they allege that they submitted an application for a variance from the newly-enacted zoning regulation before filing"), *aff'd*, 776 F. App'x 1 (2d Cir. 2019); *Liu v. N.Y.C. Campaign Fin. Bd.*, No. 14-CV-1687, 2016 WL 5719773, at *6 (S.D.N.Y. Sept. 29, 2016) (holding, where the challenged law "was never applied to [the] [p]laintiffs," that "the only arguable harm that they have been subjected to is the mere existence of an allegedly unconstitutional law" (citation and quotation marks omitted)); *Cashman v. Lane*, No. 14-CV-1539, 2016 WL 1305106, at *3 (D. Conn. Mar. 31, 2016) (finding no subject matter jurisdiction where the plaintiffs "neither pleaded nor presented any evidence that a final decision has been entered or that they sought a variance or exception" and "neither pleaded nor presented evidence that such an appeal or variance request would be futile").

---

[11] At least one case cited by Plaintiffs in arguing that their damages claim is ripe is based upon a finding of futility.  *See Redemption Cmty. Church v. City of Laurel*, 333 F. Supp. 3d 521, 531 (D. Md. 2018).

[12] Indeed, it appears that it was within Defendant's power to grant Plaintiffs an area variance.  *See Real Holding Corp. v. Lehigh*, 810 N.E.2d 890, 892–93 (N.Y. 2004) (holding that New York law allows application for an area variance where a proposed special use permit does not comply with zoning regulations); *Sunrise Plaza Assocs., L.P. v. Town Bd. of Town of Babylon*, 673 N.Y.S.2d 165, 168–69 (App. Div. 1998) (same).

Generally speaking, that Plaintiffs bring facial claims does not exempt them from the finality requirement.  Defendant argues that plaintiffs generally cannot seek damages based upon a facial challenge alone.  (Def.'s Mem. 24–25.)  The Court does not adopt such a categorical rule, but finds that Plaintiffs cannot circumvent the final decision requirement by seeking damages pursuant to a facial challenge.  A facial challenge is one that "address[es] not the application of [an ordinance] to a particular set of plaintiffs . . . , but the [legality] of the [ordinance]" itself.  *Washington v. Glucksberg*, 521 U.S. 702, 740 (1997) (Stevens, J., concurring); *see also Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 228 (2d Cir. 2006) ("Facial and as-applied challenges differ in *the extent to which* the invalidity of a statute need be demonstrated (facial, in all applications; as-applied, in a personal application)." (emphasis in original)), *overruled on other grounds*, *Bond v. United States*, 131 S. Ct. 2355 (2011).  The Court finds for two reasons that facial claims for damages are generally subject to the *Williamson County* and *Murphy* final decision requirement.

First, the principles motivating the final decision rule apply with equal force to facial claims for damages.  Indeed, courts disfavor facial claims for nearly the same reasons that they require finality.  Facial challenges are "generally disfavored," because facial invalidation is "strong medicine" that "has been employed by the [Supreme] Court sparingly and only as a last resort."  *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (quotation marks omitted).  The Supreme Court has explained that "[f]acial challenges are disfavored for several reasons."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  First, "[c]laims of facial invalidity often rest on speculation.  As a consequence, they raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'"  *Id.* (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)).  Similarly, the finality rule "aids in the

development of a full record." *Murphy*, 402 F.3d at 348.  Second, "[f]acial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Wash. State Grange*, 552 U.S. at 450 (citation and quotation marks omitted).  Similarly, the finality rule recognizes that the administrative body "might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes."  *Murphy*, 402 F.3d at 348.  Finally, courts must be mindful that "a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Wash. State Grange*, 552 U.S. at 451 (brackets omitted) (quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329 (2006)). Similarly, the finality rule "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution."  *Murphy*, 402 F.3d at 348.

Second, while the Court is not aware of other courts articulating this rule specifically, it is consistent with how they have acted in practice.  In nearly every case cited by Plaintiffs regarding their ability to seek damages based on a facial challenge, (*see* Pls.' Mem. 22, 25), "the plaintiff had actually applied for and was denied a permit [or a waiver] under the [challenged] ordinance," *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 625 n.8 (3d Cir. 2013); *see also Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 672 (7th Cir. 2019) (noting that the plaintiff applied for and was denied a conditional use permit); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 283 (5th Cir. 2012) (noting that the plaintiff "applied for a renovation permit"); *Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1237 (11th Cir. 2011) (noting that the plaintiff "sought a development permit from

the [defendant]); *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163,

1168 (9th Cir. 2011) (seeking damages as a result of a "permit denial"); *Lighthouse Inst. for*

*Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 273 (3d Cir. 2007) (noting the plaintiff's

"application for a waiver"); *Christian Assembly Rios De Agua Viva v. City of Burbank*, 237 F.

Supp. 3d 781, 785 (N.D. Ill. 2017) (noting that the plaintiff applied for a special use permit);

*Riverside Church v. City of St. Michael*, 205 F. Supp. 3d 1014, 1025 (D. Minn. 2016) (noting

that the defendant denied the plaintiff's planning application); *see also Chabad of Nova, Inc. v.*

*City of Cooper City*, No. 07-CV-60738, 2007 WL 9700874, at *2–3 (S.D. Fla. Oct. 15, 2007)

(noting that the defendant reversed its decision to permit the plaintiff to operate an outreach

center).  Defendant's briefing refers to only two exceptions.  *See Marin v. Town of Southeast*,

136 F. Supp. 3d 548, 563 n.4 (S.D.N.Y. 2015) (awarding the plaintiffs damages on facial claims

without discussing ripeness); *Sidepockets, Inc. v. City of Milford*, 528 F. Supp. 2d 34, 36 (D.

Conn. 2007) (finding without discussing ripeness that the plaintiff may maintain a damages

claim against a subsequently-repealed ordinance).  However, it appears that ripeness was not

briefed in either of these two cases.  *See* Mem. in Supp. of Def.'s Mot. to Dismiss for Mootness,

*Sidepockets*, 528 F. Supp. 2d 34 (No. 03-CV-2134), 2007 WL 4364134 (arguing only mootness).

(*See* Mem. of Law in Supp. of Def.'s Cross-Mot. and in Opp'n to Pl.'s Mot. (Dkt. No. 48, 14-

CV-2094 Dkt. (S.D.N.Y.)) (raising procedural objections based only on res judicata, standing,

and mootness).)

This finding is not contrary to the Supreme Court's guidance that facial challenges "are

generally ripe the moment the challenged . . . ordinance is passed."  *Suitum v. Tahoe Reg'l*

*Planning Agency*, 520 U.S. 725, 736 n.10 (1997); *see also Lamar*, 356 F.3d at 374 (holding that

a party "need not have first sought and been denied *any* permit prior to filing a facial challenge"

(emphasis in original)). This is because facial challenges generally seek injunctive relief. Indeed, Plaintiff cites a number of cases advancing this theory, (*see* Pls.' Mem. 12–13), and most of them involve a facial challenge seeking injunctive relief, *see, e.g., City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755 (1988) (reviewing a court that "held the entire ordinance unconstitutional"); *Opulent Life Church*, 697 F.3d at 282 (reviewing denial of a preliminary injunction); *Christian Fellowship Centers of N.Y., Inc. v. Village of Canton*, 377 F. Supp. 3d 146, 151–52 (N.D.N.Y. 2019) (adjudicating motion for preliminary injunction), *appeal withdrawn*, No. 19-1142, 2019 WL 3384889 (2d Cir. May 14, 2019); *Sisters of St. Francis Health Servs., Inc. v. Morgan County*, 397 F. Supp. 2d 1032, 1058 (S.D. Ind. 2005) (enjoining enforcement of an ordinance). In the one case where a plaintiff was permitted to seek damages, the court found it had satisfied the finality requirement. *City of Markham*, 913 F.3d at 676 n.5, 678, 680 (holding that "[t]he [plaintiff's] alleged injuries are more than 'speculative'" where "[t]he record demonstrates the city has made a final decision"). Here, the facial nature of Plaintiffs' challenge does not change the fact that they "never submitted a formal proposal . . . , applied for a permit, or engaged in any other conduct that would implicate or invoke the operation of the [Old Laws]," and, thus, can allege "merely conjectural" harm, which does not establish standing. *Tartikov*, 945 F.3d at 110 (reversing in part judgment for the plaintiffs on their facial challenge on standing grounds).

Even if plaintiffs generally must satisfy the finality requirement to seek damages based on a facial challenge, Plaintiffs here argue that the "nature of [their] challenges" creates an exception to the finality requirement. (Pls.' Mem. 12.) The Court agrees in part. The Second Circuit's decision in *Tartikov* is instructive. 945 F.3d 83. There, the Circuit in analogous circumstances distinguished two types of claims. The first type ("Category One") included

"equal protection claims under the federal and New York constitutions and . . . nondiscrimination and equal terms claims under RLUIPA." *Id*. at 109. These claims were "based on the alleged invasion of [the plaintiff's] right to be free from state discrimination or unequal treatment under the law on the basis of religion." *Id*. The second type ("Category Two") included "free exercise, free speech, and free association claims under the federal and New York constitutions, [and] RLUIPA substantial burden and exclusion and limits claims." *Id*. These claims rested on "infringement of the free exercise of its religion by regulation of the use of its property." *Id*. at 110.[13] The Circuit held that, even without "submit[ing] a formal proposal . . . , appl[ying] for a permit, or engag[ing] in any other conduct that would implicate or invoke the operation of the challenged zoning laws," the plaintiffs with respect to Category One alleged "discrimination[, which] is an actual and concrete injury sufficient to confer standing." *Id*. By contrast, with regard to Category Two, the Circuit held that the plaintiffs' alleged harm was "merely conjectural." *Id*.

In the ripeness context, Second Circuit law suggests a similar approach to Plaintiffs' Category One claims. The Second Circuit has rejected "a categorical rule excepting from the final-decision requirement any case in which a landowner alleges intentional discrimination." *Sunrise Detox*, 769 F.3d at 122. Instead, a plaintiff that alleges discrimination may sue without receiving a final decision if "he can show that he suffered some injury independent of the challenged land-use decision." *Id*. at 123. The Circuit provided as examples "a zoning policy that is discriminatory on its face" and "manipulation of a zoning process out of discriminatory

---

[13] The Court finds notable that the Second Circuit includes exclusion and limits claims in Category Two, when such claims appear in RLUIPA under the heading "[d]iscrimination and exclusion." 42 U.S.C. § 2000cc(b).

animus to avoid a final decision." *Id*.[14]  Here, Plaintiffs allege that the Old Laws were discriminatory on their face.  (*See* FAC ¶¶ 158–60, 163–66.)  And, as discussed, *Tartikov* clarified that such a challenge may proceed even where the plaintiff has not received a final decision, because "discrimination . . . is an actual and concrete injury sufficient to confer standing."  *Tartikov*, 945 F.3d at 110.  Thus, Plaintiffs' Equal Protection claim under the federal constitution and nondiscrimination and equal terms claims under RLUIPA are not subject to the finality requirement.

The Court reaches the opposite conclusion for Plaintiffs' Category Two claims, (*see* FAC ¶¶ 153–57, 161–62, 167–68), for two reasons.  First, *Tartikov* held that such injuries were "merely conjectural" where the plaintiffs had not "submitted a formal proposal . . . , applied for a permit, or engaged in any other conduct that would implicate or invoke the operation of the challenged zoning laws."  945 F.3d at 110.  Because this dispute concerns only "abstract disagreement[]" and no "administrative decision has been formalized and its effects felt in a concrete way by the challenging parties," Plaintiffs' Category Two claims are not ripe.  *See Nat'l Park Hospitality Ass'n*, 538 U.S. at 807–08.[15]  Second, the cases cited by Plaintiffs to establish injury based on a prior restraint are consistent with this finding, because each involved a rejected

---

[14] *Sunrise Detox* is consistent with *Murphy*, an earlier Second Circuit case, which suggested that the finality requirement may be waived based on "a preliminary inquiry," including as one of two factors "whether [the plaintiffs] experienced an immediate injury as a result of [the defendant's] actions."  402 F.3d at 351.  One court found an immediate injury where the defendants "were motivated by a religious animus to deprive Plaintiffs of their right to free exercise of religion by imposing land use regulations."  *See Congregation Kollel, Inc. v. Township of Howell*, No. 16-CV-2457, 2017 WL 637689, at *10 (D.N.J. Feb. 16, 2017).

[15] The Second Circuit in *Tartikov* did not explicitly discuss ripeness, nor did it cite *Williamson County* or *Murphy*.  Nonetheless, *Tartikov*'s logic paralleled the ripeness principles contained in these two cases and, according to the Second Circuit, "the best way to think of constitutional ripeness is [often] as a specific application of the actual injury aspect of Article III standing."  *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013).

proposal or application.  (*See* Pls.' Mem. 23.)  *See 754 Orange Ave., Inc. v. City of West Haven*, 761 F.2d 105, 108 (2d Cir. 1985) (noting that the plaintiff "applied to the [c]ity for a building permit"); *Islamic Soc'y of Basking Ridge v. Township of Bernards*, 226 F. Supp. 3d 320, 329 (D.N.J. 2016) (noting "denial of [the plaintiff's] application"); *Adhi Parasakthi Charitable, Med., Educ., & Cultural Soc'y of N. Am. v. Township of West Pikeland*, 721 F. Supp. 2d 361, 370 (E.D. Pa. 2010) (noting that the plaintiff "ha[d] filed several applications with [the] [d]efendant's [z]oning [b]oard"); *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood*, 430 F. Supp. 2d 1296, 1301 (S.D. Fla. 2006) (noting that the defendant granted the plaintiff a variance, then reversed its decision).

The Court finds that Plaintiffs' Category One claims are not barred by Defendant's argument that damages are not available on facial challenges.  (*See* Def.'s Mem. 24–25.)  As discussed, the primary distinction between a facial and as-applied challenge is "the extent to which the invalidity of a statute need be demonstrated."  *Brooklyn Legal Servs.*, 462 F.3d at 228 (emphasis omitted).  The Court is not aware of any reason why this difference in the required proof would bar particular types of relief.  Nor does out-of-circuit precedent suggest one.  In *Ezell v. City of Chicago*, the Seventh Circuit, in reversing the denial of a preliminary injunction, stated that, for a facial challenge, "[t]he remedy is necessarily directed at the statute itself and *must* be injunctive and declaratory."  651 F.3d 684, 698 (7th Cir. 2011) (emphasis original). Since *Ezell* rejected a damages remedy in the context of this preliminary injunction motion, it found not that damages were unavailable—though it suggested as much in dicta, *see id.* at 699 n.10—but that damages were inadequate to prevent irreparable harm, *see id.* at 694 (criticizing the district court's conclusion that the plaintiffs' "harm can be adequately compensated by money damages").  Defendant cites an Eleventh Circuit case from prior to *Ezell* that likewise

contained Defendant's claimed standard only in dicta.  *See Eide v. Sarasota County*, 908 F.2d 716, 722 (11th Cir. 1990) (articulating this standard while elaborating on the four types of challenges that a landowning plaintiff could bring).  The Third Circuit's opinion in *CMR* is the most recent Court of Appeals decision on this issue.  *See* 703 F.3d at 624.  The Third Circuit found that the plaintiff had not alleged a facial challenge.  *Id*. at 623 ("[The plaintiff's] claims do not in any way . . . resemble a facial challenge.").  As a result, its holding—"that damages [were] not available to [the plaintiff] under that [facial] theory of the case," *id*. at 624—was dicta.  And *CMR*, like *Ezell* and *Eide*, did not link the rule it articulated to Article III's case or controversy requirement.  *Id*.[16]  Thus, the Court concludes that there is no support for Defendant's "sweeping assertion that damages are never available when a statute is struck down as facially unconstitutional."  *Bunim v. City of New York*, No. 04-CV-7922, 2009 WL 10740966, at *1 n.1 (S.D.N.Y. Oct. 19, 2009); *see also Marin*, 136 F. Supp. 3d at 563 & n.4 (awarding the plaintiffs damages on both facial and as-applied claims); *Sidepockets*, 528 F. Supp. 2d at 36 (finding that the plaintiff may maintain a damages claim against a subsequently-repealed ordinance restricting adult-oriented establishments, due to alleged business losses, foregone renovations, and license fees).  In many cases, the rule Defendant proposes would be a mere restatement of the finality requirement.  Here, however, Plaintiffs have satisfied the Second Circuit test for when a plaintiff may sue without meeting the finality requirement.  *See Sunrise Detox*, 769 F.3d at 123.  At this stage, they need go no further.

---

[16] The Third Circuit even acknowledged an exception to this rule for some types of claims.  *See CMR*, 703 F.3d at 625 (holding that the Third Circuit would "permit damages for facial challenges in the First Amendment context").

Thus, the Court dismisses Plaintiffs' claims for damages under federal law as unripe, except for their Equal Protection claim under the federal constitution and their nondiscrimination and equal terms claims under RLUIPA.  (FAC ¶¶ 158–60, 163–66.)

### 3.  Standing

#### a.  Injury in Fact

Defendant argues that Plaintiffs lack standing because they have not suffered an injury in fact that can be traced to the Old Law.  (Def.'s Mem. 12–15.)  Defendant makes two arguments. First, it argues that Plaintiffs have been able to practice their religion, (*id*. at 14–15), and, relatedly, that Plaintiffs' filings for tax exempt status and representations in state court preclude Plaintiffs from seeking relief, (*id*. at 25–27).  Second, Defendant argues that Plaintiffs have suffered no injury because "[t]he [Old] Law was enacted at a time when no Plaintiff owned property in the Village."  (*Id*. at 13.)  The Court disagrees with both arguments.

"The jurisdiction of federal courts is defined and limited by Article III of the Constitution . . . [, and] the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'"  *Flast v. Cohen*, 392 U.S. 83, 94 (1968).  "[A]t [the] uncontroverted core [of the 'case or controversy' requirement] lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural."  *Russman v. Bd. of Educ*., 260 F.3d 114, 118 (2d Cir. 2001).  "In order to meet that requirement, plaintiffs must, among other things, establish that they have standing to sue."  *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015).  To meet that minimum constitutional threshold of standing, a plaintiff must establish three things, one of which is "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)

(citations and quotation marks omitted).  The injury-in-fact requirement is meant to "ensure that the plaintiff has a 'personal stake in the outcome of the controversy,'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)), and is "the proper party to bring this suit," *Carter*, 822 F.3d at 55.  "For an injury to be 'actual or imminent,' Plaintiffs must show that they have sustained . . . some direct injury, that is not conjectural or hypothetical." *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F.Supp.2d 568, 582 (S.D.N.Y. 2010) (quotation marks, citations, and alterations omitted).

Defendant's first argument assumes that, because Plaintiffs engaged in at least some religious practice—including as reflected in their tax and court filings—they have alleged no injury.  This is incorrect.  Plaintiffs allege that the Old Law made it "prohibitively expensive" for the Congregations to acquire a suitable property, (FAC ¶ 112), and barred shuls in residential districts, (*id*. ¶ 120).  These restrictions prevented Plaintiffs from having adequate physical space for men, women, and children to attend services, (*id.* ¶¶ 64–65, 78–79, 88–89), or for ritual meals, (*id.* ¶¶ 70, 81, 91), and prevented Plaintiffs and their members from walking to shul, (*id.* ¶¶ 66, 80, 90).  These limitations have cost the Congregations members and membership dues, (*id*. ¶¶ 67, 82, 92), as well as donations, (*id*. ¶¶ 72, 84, 96), and have forced them to rent social halls for communal gatherings, (*id*. ¶¶ 71, 83, 95).  These economic costs create standing.  *See Dhinsa v. Krueger*, 917 F.3d 70, 78 (2d Cir. 2019) (noting that "monetary loss is a quintessential injury in fact, and even a small financial loss suffices to establish standing" (citation and quotation marks omitted)).  In addition, as discussed, Plaintiffs' claimed "discrimination . . . is an actual and concrete injury sufficient to confer standing." *Tartikov*, 945 F.3d at 110.  The Court rejects Defendant's preclusion arguments for the same reason; Plaintiffs' tax and court filings are not "inconsistent" with the injury alleged in the FAC.  (*See* Def.'s Mem. 25–27.)

Defendant's second argument emerges from the Second Circuit's statement in *Tartikov* that "buying into an injury in fact does not suffice for Article III standing."  945 F.3d at 125 n.289.  This statement is dicta, and is not binding.  *See Jimenez v. Walker*, 458 F.3d 130, 142 (2d Cir. 2006) ("[D]icta are not and cannot be binding. Holdings—what is necessary to a decision— are binding.  Dicta—no matter how strong or how characterized—are not." (alterations and quotation marks omitted)).  *Tartikov* cites no authority to support its statement, and the Court is not aware of any.  Two circuits have made a holding similar to that in *Tartikov*, but only regarding RLUIPA substantial burden claims.  *See Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 557 n.4 (4th Cir. 2013) ("[A] religious organization has not pled a substantial burden claim merely by alleging that it moved to an area in which generally applicable zoning provisions bar construction of churches and then was denied exemption from the zoning provisions to build its church."); *Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007) (holding that there may be a substantial burden "once the [religious] organization has bought property reasonably expecting to obtain a permit").  While the Second Circuit has not adopted this reasoning, it has cited these cases favorably.  *See Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 195 (2d Cir. 2014).  However, the circuits considering these substantial burden claims have reviewed only as-applied challenges, and appear to have either assumed or concluded that the ordinance was facially valid—i.e. that the plaintiff could find suitable land elsewhere.  *See, e.g.*, *Petra*, 489 F.3d at 851 ("When there is plenty of land on which religious organizations can build churches . . . , the fact that they are not permitted to build everywhere does not create a substantial burden.").  The Court is not aware of any court extending this holding to facial challenges.  Nor is it aware of a court that has extended this reasoning to claims

involving discrimination.  Indeed, one district court in the Seventh Circuit—where *Petra* controls—has held that damages are available on an RLUIPA equal terms claim where the plaintiff purchased property while the challenged law was in place.  *See City of Burbank*, 237 F. Supp. 3d at 796.  This conclusion is consistent with the Supreme Court's guidance that Takings Clause claims pass to post-enactment transferees.  *See Palazzolo v. Rhode Island*, 533 U.S. 606, 627–28 (2001).  And this approach is sensible.  A municipality insulated from challenges brought by prospective purchasers of land could bar all religious land uses (exempting current religious uses) and avoid liability, contravening RLUIPA's requirement that it be "construed in favor of a broad protection of religious exercise."  42 U.S.C. § 2000cc-3(g).

Thus, the Court finds that Plaintiffs have alleged an injury in fact.

### b.  Organizational Standing

Defendant argues that OJCCR lacks standing.  (Def.'s Mem. 15–16.)  Plaintiffs argue that OJCCR has standing on two bases: (1) by suing on behalf of its members, and (2) based on harms it has suffered.  (Pls.' Mem. 8–11.)  The Court agrees with Defendant.

OJCCR lacks standing to sue for damages on behalf of its members.  "[The Supreme] Court has recognized that an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity."  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977).  The Supreme Court, however, has held that "an organization seeking to recover damages on behalf of its members lacked standing because 'whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof.'"  *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714–15 (2d Cir. 2004) (quoting *Warth*, 422 U.S. at 515–16).  The Second Circuit "has restricted organizational standing under § 1983 by interpreting the rights it secures

to be personal to those purportedly injured," and noted that "[n]either the language nor the history of § 1983 suggests that an organization may sue under the Civil Rights Act for the violations of rights of members." *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984) (alterations and citations omitted). Here, because Plaintiffs only surviving claims are for damages, OJCCR may not sue to claim them on behalf of its members, who must make an individualized showing. Indeed, Plaintiffs' briefing appears to acknowledge this requirement. (*See* Pls.' Mem. 10–11 ("To the extent that certain Plaintiffs also seek damages, those entities seeking damages are already parties to this suit.").)

OJCCR, "as an organization, is fully able to bring suit on its own behalf 'for injuries it has sustained,'" *Int'l Action Ctr. v. City of New York*, 522 F. Supp. 2d 679, 693 (S.D.N.Y. 2007) (quoting *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174 (2d Cir. 2005)), "so long as those injuries—or threats of injury—are 'both "real and immediate," [and] not "conjectural or hypothetical,"'" *id.* (alteration in original) (quoting *Bordell v. Gen. Electric Co.*, 922 F.2d 1057, 1060 (2d Cir.1991)). The FAC alleges only that "OJCCR has a particular interest in this litigation based on its own interests." (FAC ¶ 17.) This alleged injury is not "concrete and particularized," and does not support standing. *Lujan*, 504 U.S. at 560. Plaintiffs submit a declaration explaining that OJCCR has incurred legal and other expenses, including related to this Action, and that these funds could not be used for other purposes. (*See* Fromovitz Decl. ¶¶ 43–47.) However, the Court on this facial challenge to jurisdiction under Rule 12(b)(1) may not consider submissions beyond the FAC, materials attached to the FAC, and materials of which judicial notice may be taken. *See Leonard F.*, 199 F.3d at 107; *see also Wachtel v. Nat'l R.R. Passenger Corp.*, No. 11-CV-613, 2012 WL 292352, at *2 (S.D.N.Y. Jan. 30, 2012) ("While [the p]laintiff attached an affidavit to his opposition brief

in an attempt to support his argument, the [c]ourt cannot consider affidavits in ruling on a motion to dismiss.").

Thus, claims advanced by OJCCR are dismissed.

### 4.  RLUIPA Safe Harbor (Counts 5 and 6)

Defendants argue that Plaintiff's RLUIPA claims are barred by the statute's safe harbor provision, 42 U.S.C. § 2000cc-3(e).  (*See* Def.'s Mem. 27–30.)  The Court agrees.

RLUIPA's safe harbor provision states that "[a] government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise," among other corrective actions that alleviate a substantial burden.  42 U.S.C. § 2000cc-3(e).  The Parties appear to agree that this provision may moot RLUIPA substantial burden claims for prospective relief.  *See, e.g.*, *Booker v. Engelke*, No. 16-CV-84, 2019 WL 1372165, at *5 (W.D. Va. Mar. 26, 2019), *aff'd*, 830 F. App'x 415 (4th Cir. 2020); *Phillips v. S.C. Dep't of Corr.*, No. 14-CV-2269, 2015 WL 4727028, at *5 (D.S.C. Aug. 10, 2015); *Pogue v. Woodford*, No. 05-CV-1873, 2009 WL 2777768, at *9 (E.D. Cal. Aug. 26, 2009), *report and recommendation adopted*, 2009 WL 3211406 (E.D. Cal. Sept. 30, 2009).  The Parties disagree on two issues: (1) whether the safe harbor provision extends to nondiscrimination and equal terms claims, and (2) whether it extends to retrospective damages claims.  (*See* Pls.' Mem. 28–29.)  The Court considers each in turn.

The Court finds that RLUIPA's safe harbor provision extends to nondiscrimination and equal terms claims.  The Seventh Circuit reached this conclusion in *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir. 2003).  The Seventh Circuit reasoned that RLUIPA's "substantial burden and nondiscrimination provisions are operatively independent of one another."  *Id.*  However, it continued to note that this is not true for the safe

harbor provision, which allows a government to avoid "the preemptive force of *any provision* of RLUIPA by changing the policy or practice *that results in a substantial burden* on religious exercise." *Id*. (emphasis in original) (alteration omitted).  Thus, the Seventh Circuit concluded that RLUIPA "afford[s] a government the discretion to take corrective action to eliminate a nondiscrimination provision violation, whether or not it was the result of a substantial burden on religious exercise." *Id*.  The Court is aware of just one district court outside of the Seventh Circuit that has considered this issue, and it reached the same conclusion.  *See Riverside Church*, 205 F. Supp. 3d at 1032 (noting that "the amendment and the conditional use permit eliminated . . . any alleged discriminatory treatment imposed by the former . . . [o]rdinance").  While the safe harbor provision could be read to apply only to substantial burden claims, the Court disagrees with Plaintiffs' argument that the Seventh Circuit's reading is contrary to the statute's plain meaning.  (*See* Pls.' Mem. 29–30.)  The Court also disagrees that this view of the safe harbor violates RLUIPA's broad construction provision, (*id.*), which is limited by "the terms of [RLUIPA]."  42 U.S.C. § 2000cc-3(g).

The Court finds that RLUIPA's safe harbor provision insulates municipalities that correct their laws from claims for damages.  Courts are divided on this question.  *Compare Petra Presbyterian Church v. Village of Northbrook*, 409 F. Supp. 2d 1001, 1005, 1008 (N.D. Ill. 2006) (holding that the defendant "avoided liability by eliminating its discriminatory zoning provision," even where the plaintiff sought "damages suffered during the time the code was enforced in violation of the constitution"), *aff'd*, 489 F.3d 846 (7th Cir. 2007); *Riverside Church*, 205 F. Supp. 3d at 1032 (finding that the plaintiff's "RLUIPA claims are barred" by the safe harbor provision, after concluding that the plaintiff's "claims for damages . . . still present a live controversy"), *with Family Life Church v. City of Elgin*, No. 07-CV-217, 2007 WL 2790763, at

*5 (N.D. Ill. Sept. 24, 2007) (holding that the court "d[id] not read the RLUIPA . . . to stand for the proposition that the corrective action can retroactively erase injuries already incurred as well as the corresponding ability to sue for damages").[17]  For two reasons, the Court finds more convincing the courts that have extended the safe harbor provision to claims for damages.  First, this interpretation is consistent with "congressional policy against federal micromanagement of a locality's land use decisions, as long as the underlying RLUIPA violation has been cured."  *United States v. County of Culpeper*, No. 16-CV-83, 2017 WL 3835601, at *8 (W.D. Va. Sept. 1, 2017).  Second, the Second Circuit has in dicta stated that "RLUIPA encourages [defendants] to accommodate [plaintiff] requests by exempting from liability [defendants] that change challenged policies."  *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018).  This broad phrasing is consistent with extending the safe harbor provision to requests for damages.[18]

Thus, Plaintiffs' claims for damages under RLUIPA are dismissed.

---

[17] Defendant cites a number of cases that take no position on this issue.  (*See* Def.'s Mem. 28.)  For example, the Seventh Circuit in *Civil Liberties* did not consider the issue because it found that the plaintiffs' damages claims were "moot" because the defendant's corrective action "impose[d] similar restrictions on non-religious assembly uses, rather than . . . relax[ing] restrictions on churches."  342 F.3d at 762 n.6.  The court in *Boles v. Neet* likewise did not consider the issue, because it found that relief under RLUIPA "must be limited to injunctive or declaratory relief, or both, against a state governmental entity."  402 F. Supp. 2d 1237, 1241 (D. Colo. 2005), *aff'd*, 486 F.3d 1177 (10th Cir. 2007).  Because the Parties do not brief the issue of whether money damages may be available under RLUIPA, notwithstanding the supplemental authority submitted on this issue, (*see* Dkt. Nos. 78, 79), the Court does not consider it, *cf. Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011) (holding that RLUIPA "does not so clearly and unambiguously waive sovereign immunity to private suits for damages that we can be certain that [a] [s]tate in fact consents to such a suit" (citation and quotation marks omitted)).

[18] Regarding Plaintiffs' argument that the Old Law could recur, (*see* Pls.' Mem. 30), the Court is aware of no reason to hold Defendant to a higher standard on its RLUIPA safe harbor argument than on its constitutional mootness argument.  *See Phillips*, 2015 WL 4727028, at *5 (noting that courts "have interpreted [RLUIPA's safe harbor] under a mootness analysis").

### 5.  Equal Protection (Count 3)

Defendant argues that "Plaintiffs do not allege that the [Old] Law was enacted with a discriminatory purpose."  (Def.'s Mem. 3.)  The Court agrees.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (same).  "To prove an equal protection violation, claimants must prove purposeful discrimination" by a government actor, *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)), directed at a suspect class, *id.* (citing *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457–58 (1988)), such as a racial group, *Pyke v. Cuomo*, 567 F.3d 74, 77 (2d Cir. 2009) (per curiam), or a religion, *see Pedersen v. Office of Personnel Mgmt.*, 881 F. Supp. 2d 294, 309–10 (D. Conn. 2012) ("[C]ourts apply the most searching constitutional scrutiny to those laws that burden a fundamental right or target a suspect class, such as those based on race, national origin, sex or religion." (alteration in original) (citation omitted)); *see also Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977) ("Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").  If the claimants can show purposeful discrimination directed at a suspect class, the government action is "subject to strict judicial scrutiny," and may be upheld only if the government action "further[s] a compelling state interest and [is] narrowly tailored to accomplish the purpose."  *Pyke*, 567 F.3d at 77.  Indicia of discriminatory intent include the following:

> the series of events leading up to a land use decision, the context in which the decision was made, whether the decision or decisionmaking process departed from established norms, statements made by the decisionmaking body and community members, reports issued by the decisionmaking body, whether a discriminatory impact was foreseeable, and whether less discriminatory avenues were available.

*Chabad Lubavitch*, 768 F.3d at 199.[19]

Here, Plaintiffs do not allege these or any other indicia of discriminatory intent.  (*See generally* FAC.)  Nor do they respond to Defendant's argument in their Opposition.  (*See generally* Pls.' Mem.)  Thus, the Court dismisses Plaintiffs' Equal Protection claim.

### 6.  Supplemental Jurisdiction (Count 8)

As the Court has dismissed Plaintiffs' federal causes of action, it declines to exercise supplemental jurisdiction over their New York State Constitution claim.  *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Thomas v. Grunberg 77 LLC*, No. 15-CV-1925, 2017 WL 3263141, at *1 (S.D.N.Y. July 28, 2017) (dismissing state claims where the federal claims had been mooted); *Torres v. City of New York*, 248 F. Supp. 2d 333, 334 (S.D.N.Y. 2003) ("Where the basis for pendent jurisdiction is dismissed, ordinarily so should the state law claims be dismissed.").

### III.  Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is granted.  Because this is the first adjudication of Plaintiff's claims, the FAC is dismissed without prejudice.  Plaintiffs may file an amended complaint within 30 days of the date of this Opinion & Order.

---

[19] While the Second Circuit provided this list of indicia in the context of a RLUIPA nondiscrimination claim, it simultaneously "looked to equal protection principles in analyzing whether a law was discriminatory."  *Chabad Lubavitch*, 768 F.3d at 198.

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 59).

SO ORDERED.

DATED:     March 31, 2021
             White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE