UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORTHODOX JEWISH COALITION OF
CHESTNUT RIDGE, *et al.*,

                                   Plaintiffs,

                    v.

VILLAGE OF CHESTNUT RIDGE, NEW
YORK,

                                   Defendant.

No. 19-CV-443 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

        Before the Court is Plaintiffs' Motion for Reconsideration (the "Motion").  (*See* Pls.' Not.

of Mot. for Recons. ("Not. of Mot.") (Dkt. No. 81).)  Plaintiffs seek reconsideration of the

Court's March 31, 2021 Opinion & Order (the "March Opinion") insofar as it dismissed Count

III and Count VIII of Plaintiffs' First Amended Complaint.  (*Id*.; *see also* Op. & Order ("Op.")

(Dkt. No. 80); First Am. Compl. ("FAC") ¶¶ 158–60, 169–71 (Dkt. No. 29).)  For the following

reasons, the Motion is granted.

## I.  Background

        The Court assumes familiarity with the facts alleged in the First Amended Complaint as

discussed in the March Opinion.  (*See generally* Op.)  In the March Opinion, the Court dismissed

as moot Plaintiffs' claims for prospective relief.  (*Id*. at 11–19.)  This left only Plaintiffs' claims

for damages.  Regarding those claims, the Court dismissed as unripe Plaintiffs' as-applied

challenges and Plaintiffs' facial challenges that it referred to as Category Two claims—that is,

claims regarding "free exercise, free speech, and free association . . . . and RLUIPA substantial

burden and exclusion and limits claims."  (*Id.* at 30 (alterations omitted); *see id*. at 20–34.)

However, it found ripe Plaintiffs' facial Category One challenges—including "equal protection

claims under the federal and New York constitutions and nondiscrimination and equal terms claims under RLUIPA." (*Id*. at 30 (ellipses omitted).)  The Court found that Plaintiffs had adequately alleged injury in fact to establish standing, (*id*. 34–37), but that the Orthodox Jewish Coalition of Chestnut Ridge ("OJCCR") lacked standing, (*id*. 37–39).  Finally, the Court found that RLUIPA's safe harbor provision barred Plaintiffs' nondiscrimination and equal terms claims under RLUIPA.  (*Id*. at 39–41.)

These holdings—which the Motion does not challenge—left three congregations (Congregation Birchas Yitzchok, Congregation Dexter Park, and Congregation Torah U'tfilla; the "Congregations") and two individuals (Abraham Willner and Tzvi Miller; the "Individuals"), each with a claim for damages based on (1) a violation of the Equal Protection Clause of the United States Constitution (Count III; the "Equal Protection" claim), (FAC ¶¶ 158–60), and (2) a violation of Article I § 3 of the New York Constitution (Count VIII; the "State Law" claim), (*id*. ¶¶ 169–71).  The Court dismissed Plaintiffs' Equal Protection claim because "Plaintiffs [did] not allege . . . a discriminatory purpose."  (Op. 42–43.)  And having dismissed all of Plaintiffs' federal claims, the Court declined to exercise supplemental jurisdiction over the State Law claim. (*Id*. at 43.)

In the Motion, Plaintiffs make two arguments.  First, Plaintiffs argue that the Court committed clear error in requiring "additional proof of discriminatory intent" when the First Amended Complaint alleged that Defendant's ordinance was "facially discriminatory."  (Pls.' Mem. in Supp. of Mot. ("Pls.' Mem.") 2 (Dkt. No. 82).)  Defendant contests this argument.  (*See generally* Def.'s Mem. in Opp'n to Pls.' Mot. ("Def.'s Mem.") (Dkt. No. 84).)  Second, Plaintiffs argue that "the Court should treat [the State Law claim] as a 'Category One' claim with respect to any ripeness challenges," and exercise supplemental jurisdiction over it.  (Pls.' Mem. 9.)

Defendant does not contest this argument.  (*See generally* Def.'s Mem.)  As a result, the Motion

hinges on Plaintiffs' argument that they adequately alleged an Equal Protection claim.

## II.  Discussion

### A.  Standard of Review

"Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and

Local Civil Rule 6.3, which are meant to ensure the finality of decisions and to prevent the

practice of a losing party examining a decision and then plugging the gaps of a lost motion with

additional matters."  *Arthur Glick Truck Sales, Inc. v. Stuphen E. Corp*, 965 F. Supp. 2d 402, 404

(S.D.N.Y. 2013) (citation omitted), *aff'd*, 577 F. App'x 11 (2d Cir. 2014).  The standard for such

motions is "strict" and "should not be granted where the moving party seeks solely to relitigate

an issue already decided."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see

also In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543, 2017 WL 3443623, at *1

(S.D.N.Y. Aug. 9, 2017) ("It is well established that the rules permitting motions for

reconsideration must be narrowly construed and strictly applied so as to avoid repetitive

arguments on issues that have been considered fully by the [c]ourt." (citation omitted)).  A

movant may not "rely upon facts, issues, or arguments that were previously available but not

presented to the court."  *Indergit v. Rite Aid Corp.*, 52 F. Supp. 3d 522, 523 (S.D.N.Y. 2014).

Nor is a motion for reconsideration "the proper avenue for the submission of new material."  *Sys.

Mgmt. Arts Inc. v. Avesta Techs., Inc.*, 106 F. Supp. 2d 519, 521 (S.D.N.Y. 2000).  "Rather, to be

entitled to reconsideration, a movant must demonstrate that the [c]ourt overlooked controlling

decisions or factual matters that were put before it on the underlying motion, which, had they

been considered might reasonably have altered the result reached by the court."  *Arthur Glick

Truck Sales*, 965 F. Supp. 2d at 405 (citation omitted); *Shrader*, 70 F.3d at 257 (same).  In other

words, "[a] motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Alvarez v. City of New York*, No. 11-CV-5464, 2017 WL 6033425, at *2 (S.D.N.Y. Dec. 5, 2017) (quotation marks omitted) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)); *see also Indergit*, 52 F. Supp. 3d at 523 (same).

   B.  Analysis

   Plaintiffs argue that "the Court erred in holding that [Plaintiffs] were required to allege that . . . facially discriminatory laws were enacted with a discriminatory purpose." (Pls.' Mem. 1.)  They are correct.  The Second Circuit has "recognized three types of equal protection violations: (1) a facially discriminatory law; (2) a facially neutral statute that was adopted with a discriminatory intent and applied with a discriminatory effect; and (3) a facially neutral law that is enforced in a discriminatory manner." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 945 F.3d 83, 110–11 (2d Cir. 2019) (ellipses omitted), *cert. denied*, 141 S. Ct. 885 (2020); *see also Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 199 (2d Cir. 2014) (same); *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999) (same).  As a result, "a plaintiff who alleges a policy that is discriminatory on its face is not required to make any further allegations of discriminatory intent or animus." *Juarez v. Nw. Mut. Life Ins. Co.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014), *amended*, No. 14-CV-5107, 2014 WL 12772237 (S.D.N.Y. Dec. 30, 2014); *see also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991) ("[T]he absence of a malevolent motive does not convert a facially discriminatory policy into a

neutral policy with a discriminatory effect.").[1]  Defendant argues that Plaintiffs are required to allege intentional discrimination.  (Def.'s Mem. 6–10.)  This is right, but it does not help Defendant because "[s]uch intentional discrimination can be demonstrated . . . [by] a law or policy [that] is discriminatory on its face."  *Hayden*, 180 F.3d at 48; *see also Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (same).  The March Opinion's holding to the contrary was clear error.

Defendant's arguments regarding the standard of review are unpersuasive.  Defendant claims that Plaintiffs should have answered its argument while opposing its motion to dismiss.  (Def.'s Mem. 3.)  Plaintiffs respond that Defendant's statement regarding their Equal Protection claim was "not an argument," because it appeared in the "Summary of Motion" section and not the "Argument" section, and it merely noted as "relevant" the lack of an alleged discriminatory purpose.  (Pls.' Reply Mem. in Supp. of Mot. ("Pls.' Reply") 1 (Dkt. No. 87).)  The Court agrees with Plaintiffs' characterization of the briefing.  Of course, Plaintiffs could have responded, but Defendant's claim was stray and disconnected from the remainder of its argument and did not provide sufficient notice that Plaintiffs' claim could be dismissed on this basis.  (*See* Mem. of Law in Supp. of Mot. To Dismiss Pls.' First Am. Compl. ("Def.'s MTD Mem.") 3 (Dkt. No. 62).)

Defendant's other arguments are equally unavailing.  Plaintiffs are entitled to reconsideration of clearly erroneous decisions, even where they have the option to amend.  (*See*

---

[1] Defendant correctly argues that many of the cases cited in Plaintiffs' brief relate to statutory causes of action.  (*See* Def.'s Mem. 11; *see also* Pls.' Mem. 3.)  However, the relevant standards are the same.  *See Naumovski v. Norris*, 934 F.3d 200, 212–13 (2d Cir. 2019) (holding that "§ 1983 discrimination claims parallel Title VII discrimination claims in many respects," and noting differences that are inapplicable here); *Juarez*, 69 F. Supp. 3d at 370 (holding that "the same pleadings standards apply to § 1981 claims" as to Equal Protection claims).

Def.'s Mem. 3.)  Indeed, the case Defendant cites notes that the plaintiff's failure to "take

advantage of the opportunity to replead" was "not dispositive."  *Murray v. Dutcavich*, No. 17-

CV-9121, 2020 WL 3318212, at *2 (S.D.N.Y. June 18, 2020).  Finally, as discussed, Plaintiffs

identify ample controlling authority showing that the March Opinion's ruling as to Plaintiffs'

Equal Protection claim was clearly erroneous.  (*See* Def.'s Mem. 4.)

Defendant raises a number of substantive arguments.  It argues that Plaintiffs fail to

identify similarly situated comparators.  (*Id*. at 4–6, 8.)  It argues that the challenged ordinance

was facially neutral.  (*Id*. at 14–22.)  And it interposes challenges based on the statute of

limitations, the fact that the challenged law pre-dated Plaintiffs' arrival, and Plaintiffs' standing.

(*Id*. at 8, 14, 22–23.)

The Court rejects these arguments for two alternative reasons.  First, they are

procedurally improper.  Apart from the standing argument, which the Court rejected, Defendant

did not make any of these arguments in its briefing of the motion to dismiss.  (*See generally*

Def.'s MTD Mem.)  "A motion for reconsideration [cannot] be used to introduce new arguments

which could have been brought to this Court's attention in a motion to dismiss."  *Kremer v. N.Y.*

*State Ins. Dep't*, No. 06-CV-9949, 2009 WL 2776637, at *2 (S.D.N.Y. Sept. 1, 2009) (quoting

*Adelphia Recovery Tr. v. Bank of Am., N.A.*, No. 05-CV-9050, 2009 WL 1676077, at *3

(S.D.N.Y. June 16, 2009)).  Several courts have relied on alternative grounds in disposing of

motions for reconsideration.  *See, e.g., Trudeau v. Bockstein*, No. 05-CV-1019, 2008 WL

541158, at *4, *6–8 (N.D.N.Y. Feb. 25, 2008) (maintaining the reconsidered order on the

alternative grounds that the plaintiff made no showing of irreparable harm and was not entitled to

declaratory relief); *Vaughn v. Consumer Home Mortg. Co*., 470 F. Supp. 2d 248, 269 (E.D.N.Y.

2007) (maintaining the reconsidered order on the alternative grounds that the plaintiff could not

establish actual damages), *aff'd*, 297 F. App'x 23 (2d Cir. 2008); *Hamad v. Nassau Cnty. Med. Ctr.*, 191 F. Supp. 2d 286, 305–06 (E.D.N.Y. 2000) (denying a motion for reconsideration on the alternative grounds that the plaintiff had not named the defendant in his EEOC charge), *on reconsideration in part* (Dec. 13, 2000).  However, in each of these cases, the court relied on arguments contained in the parties' underlying motion papers.  *See* Mem. of Law in Opp. to Pls.' Mot. for a Prelim. Inj. and in Supp. of Defs.' Cross Mot. to Dismiss at 4–7, 10–11, *Trudeau*, 2008 WL 541158 (No. 05-CV-1019), 2005 WL 2803105 (briefing the plaintiffs' showing of irreparable harm and entitlement to declaratory relief); Mem. of Law in Supp. of Martin Silver, Esq.'s Mot. for Summ. J. at 10–12, *Vaughn*, 470 F. Supp. 2d 248 (No. 01-CV-7937), 2005 WL 6010803 (briefing the plaintiffs' failure to show actual damages); *Hamad*, 191 F. Supp. 2d at 306 (ruling on alternate grounds with reference to the defendants' motion to dismiss briefing).  Thus, the Court declines to consider Defendant's new arguments.

Second, even if the Court were to consider Defendant's arguments, they lack merit.[2]  The standard for assessing Equal Protection Clause claims hinges on whether the challenged law interferes with fundamental rights or disadvantages a suspect class.  If it does, the law "is reviewed under the strict scrutiny standard."  *Dandamudi v. Tisch*, 686 F.3d 66, 72 (2d Cir. 2012).  If it does not, the challenged law "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012) (quoting *Heller v. Doe*, 509

---

[2] The Court rejects Defendant's arguments that it lacks subject matter jurisdiction on this second basis alone.  *See Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, No. 01-CV-2946, 2002 WL 1159659, at *2 (S.D.N.Y. May 31, 2002) ("[E]ven if the . . . defendants had never raised the issue of subject matter jurisdiction in their original motion to dismiss, they would not now be barred from moving to dismiss for lack of subject matter jurisdiction because such motions may be made at any time.").  (*See* Def.'s Mem. 22–23 (arguing that Plaintiffs lack standing).)

U.S. 312, 320 (1993)).  The Supreme Court has described religion as a suspect class.  *See Burlington N. R.R. Co. v. Ford*, 504 U.S. 648, 651 (1992).  However, courts are divided on whether to apply strict scrutiny or rational basis review where, as here, a law disadvantages religion generally.  *Compare Chabad of Nova, Inc. v. City of Cooper City*, 575 F. Supp. 2d 1280, 1292–94 (S.D. Fla. 2008) (applying strict scrutiny to an ordinance excluding religious uses from business districts); *Love Church v. City of Evanston*, 671 F. Supp. 515, 517–19 (N.D. Ill. 1987) (applying strict scrutiny review to an ordinance that "distinguishe[d] between religious assembly uses and non-religious assembly uses"), *with Immanuel Baptist Church v. City of Chicago*, 283 F. Supp. 3d 670, 682–83 (N.D. Ill. 2017) (applying rational basis review because "strict scrutiny has been reserved for laws that discriminate among religions" (citation and quotation marks omitted)); *Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston*, 250 F. Supp. 2d 961, 978 (N.D. Ill. 2003) (noting that "few other courts have opted to apply strict scrutiny to zoning ordinances in analogous cases").[3]  "This Court need not determine which standard of review is appropriate herein, for [Defendant's] rationale . . . does not even pass rational basis

---

[3] Defendant accurately argues that the Seventh Circuit reversed *Love Church*.  (Def.'s Mem. 4–5.)  However, this reversal was on standing grounds, s*ee Love Church v. City of Evanston*, 896 F.2d 1082, 1086 (7th Cir. 1990) ("Love Church relies on the mere possibility that, absent the Ordinance, it could have more easily acquired rental property in Evanston. Such speculative claims cannot constitute distinct and palpable injury for purposes of standing."), and does not render less persuaisve *Love Church*'s conclusion regarding the applicable legal standard.  And as discussed in the March Opinion, Plaintiffs apart from OJCCR have sufficiently alleged an injury that supports standing.  (Op. 34–37.)

review." *Open Homes Fellowship, Inc. v. Orange County*, 325 F. Supp. 2d 1349, 1364 (M.D. Fla. 2004).[4],[5]

As discussed in the March Opinion, Plaintiffs allege that comparable non-religious uses had less restrictive lot size requirements, were permitted in non-residential zones, and were Conditional Uses rather than requiring a Special Permit.  (Op. 5.)  Defendant points to a number of non-religious uses that were treated less favorably than religious gatherings.  (Def.'s Mem. 16–17.)  For example, cemeteries, hospitals and sanitoriums, stables and riding academies, and schools require a minimum of ten acres, compared to five acres for churches and similar places of worship.  (*See* Dkt. No. 60-6 at 111, 123.)  And nursing homes and convalescent facilities, like churches, require a minimum of five acres.  (*Id.*)  However, Plaintiffs have alleged—and the Court "must accept as true for purposes of this [M]otion," *C.L.U.B. v. City of Chicago*, No. 94-CV-6151, 1996 WL 89241, at *24 (N.D. Ill. Feb. 27, 1996) (denying a motion to dismiss an Equal Protection claim regarding religious land uses)—that churches are similarly situated to "nonreligious assembly and institutional use[s] in the Village," (FAC ¶ 119)—including libraries, museums, art galleries, nursery schools, hotels, motels, funeral chapels, medical and dental clinics, health service complexes, commercial recreation facilities, and outdoor recreation

---

[4] Defendant argues that the courts in *Open Homes Fellowship* and *Vineyard Christian Fellowship* considered as-applied challenges.  (Def.'s Mem. 12–14.)  Defendant does not explain why this fact is significant.  And the court in *Chabad of Nova* ruled only on facial grounds, concluding as a result that the plaintiff's as applied claim was "rendered moot."  575 F. Supp. 2d at 1294 n.12.

[5] The existence of these cases contradicts Defendant's argument that the challenged ordinance "is not even close to laws where [c]ourts have found explicit discrimination on the basis of a suspected class."  (Def.'s Mem. 19.)

facilities—that receive more favorable land use treatment, (Op. 5).[6]  Defendant may after discovery demonstrate that "churches still fare[d] better than many other nonreligious assembly uses" and that their former ordinance "[did] not disfavor churches."  *C.L. for Urb. Believers v. City of Chicago*, 342 F.3d 752, 766–67 (7th Cir. 2003) (affirming summary judgment for the defendant municipality, after the defendant's motion to dismiss was denied in *C.L.U.B.*, 1996 WL 89241).  At this juncture, however, Defendant has proffered no putative rational basis for its disfavoring of religious land uses, nor is the Court aware of any basis to do so from the pleadings.  *See Open Homes*, 325 F. Supp. 2d at 1364 ("[T]he Court finds no rational basis for believing that . . . religious operations pose any greater safety, traffic, and disruption threats . . . than [other nonreligious assembly and institutional uses].").  (*See* Def.'s Mem. 21–22 (describing the rational basis standard).)  Thus, Plaintiffs have adequately alleged that the challenged law's restrictions on religious uses could not have "be[en] constitutionally applied under any circumstance."  *Congregation Kollel, Inc. v. Township of Howell*, No. 16-CV-2457, 2017 WL 637689, at *8 (D.N.J. Feb. 16, 2017).

---

[6] In a separate section of its brief, Defendant relatedly argues that "not every classification involving a place of worship involves a religious-based classification."  (Def.'s Mem. 8.)  To support its claim, Defendant cites *Geduldig v. Aiello*, 417 U.S. 484 (1974), which held that "[w]hile it is true that only women can become pregnant it does not follow that every legislative classification concerning pregnancy is a sex-based classification" because "pregnancy is an objectively identifiable physical condition with unique characteristics" and non-pregnant women received benefits under the law.  *Id*. at 496 n.20; *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271 (1993) (rejecting the view that "since voluntary abortion is an activity engaged in only by women, to disfavor it is ipso facto to discriminate invidiously against women as a class" (footnote and italics omitted)).  These cases stand for the view that a regulation is not subject to heightened scrutiny solely because it affects only members of a protected class.  Here, the Court is not at this juncture applying heightened scrutiny, and this principle is inapplicable in any case because Defendant's former statute explicitly disfavored religious land uses.

Thus, the Court rejects Defendant's argument that its former ordinance was facially neutral.  (*See* Def.'s Mem. 14–22.)  All of the cases cited by Defendant on this point concern ordinances that were found not to disfavor religious uses.  In *Bethel World Outreach Ministries v. Montgomery County Council*, 706 F.3d 548 (4th Cir. 2013), the Fourth Circuit considered a law that "prohibits religious assemblies, along with other institutional uses" on various rural lands, and found that it was "a neutral law of general applicability."  *Id*. at 560–61.  And as discussed, in *Civil Liberties for Urban Believers*, the Seventh Circuit held that, under the challenged ordinance, "churches still fare[d] better than many other nonreligious assembly uses." 342 F.3d at 767; *see also Roman Cath. Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*, 128 F. Supp. 3d 566, 583, 592 (E.D.N.Y. 2015) (finding that the challenged law was "facially neutral" and "treats places of worship better than many other secular institutional uses").  Given the allegations in the First Amended Complaint, the Court can reach neither conclusion at this juncture.[7]

The Court also disagrees that Plaintiffs have failed to allege similarly situated comparators.  (*See* Def.'s Mem. 4–6, 8.)  As discussed, Plaintiffs allege that a variety of nonreligious assembly and institutional uses were treated more favorably than churches.  (*See* Op. 5.)  Defendant cites *Bikur Cholim, Inc. v. Village of Suffern*, 664 F. Supp. 2d 267 (S.D.N.Y. 2009), which rejected a similar cause of action because, absent a claim "in their amended complaint to any nursing homes or dormitories existing within the Village of Suffern[,] [the

---

[7] The Court agrees with Plaintiffs that the cases cited by Defendant for the view that indirect financial effects cannot establish an Equal Protection violation are inapplicable because they concern the First Amendment.  (Pls.' Reply 9; *see* Def.'s Mem. 18–19.)  *See, e.g.*, *Braunfeld v. Brown*, 366 U.S. 599, 605–06 (1961) (holding that financial costs to religious institutions do not by themselves establish a First Amendment violation, because the government can validly regulate religion).

plaintiffs'] facial challenge to the law [was] purely hypothetical." *Id*. at 277.  *Bikur Cholim* is

distinguishable.  There, the plaintiffs were denied a variance in a residential district for their

Shabbos House, which would have provided overnight housing for individuals attending

religious services nearby.  *Id*. at 272–73.  The plaintiffs' complaint alleged that comparable

secular uses—including hospitals and sanitariums, convalescent and nursing homes, and

dormitories accessory to schools—were permitted in these residential districts "by Special

Permit."  First Amended Complaint at ¶ 49, *Bikur Cholim*, 664 F. Supp. 2d 267 (No. 05-CV-

10759), 2006 WL 1444091.[8]  The court appears to have found "purely hypothetical" the

distinction between the plaintiffs' variance application and the alleged comparators' special

permit applications: "[the] plaintiffs, in essence, suggest that, although there are not comparators,

a secular comparator would receive better treatment than private plaintiffs did."  *Bikur Cholim*,

664 F. Supp. 2d at 277–78.[9]  Here, by contrast, Plaintiffs allege that religious uses are disfavored

based on objective criteria such as their minimum lot size and permissibility in non-residential

zones.  (*See* Op. 5.)  To the extent they rely on similar procedural differences, Plaintiffs allege

specific ways that Defendant's procedures disfavored religious uses: some nonreligious buildings

---

[8] One-family detached dwellings and Places of worship were allowed by right.  First
Amended Complaint at ¶ 49, *Bikur Cholim*, 664 F. Supp. 2d 267 (No. 05-CV-10759), 2006 WL
1444091.

[9] Thus, the Court does not read *Bikur Cholim* to suggest that "a zoning provision that
state[s] that 'Catholic churches are permitted, but Unitarian churches are forbidden' in a
particular zoning district would survive an equal protection challenge by a Unitarian church
under 'rational basis review,' so long as no Catholic churches has actually yet located there."
*See* Mem. in Opp'n to Def.'s Mot. to Dismiss and Mot. for Prelim. Inj. at 22 n.23, *Bikur Cholim*,
664 F. Supp. 2d 267 (No. 05-CV-10759), 2006 WL 4809359.  To the extent that it does, the
Court is not persuaded by this approach, which would allow municipalities to maintain facially
illegal ordinances that frustrate the land use goals of protected groups.  *See Tartikov*, 945 F.3d at
110 (holding that "discrimination . . . is an actual and concrete injury sufficient to confer
standing").

were Conditional Uses, and could be approved without review by the Village Board and subject to specific standards rather than the Board's discretion.  (*Id*.)  Thus, Plaintiffs have advanced more than the "bare allegation that other developments were treated differently."  *Mosdos Chofetz Chaim, Inc. v. Village Of Wesley Hills*, 701 F. Supp. 2d 568, 604 (S.D.N.Y. 2010).

The Court rejects Defendant's other arguments.  Defendant waived its statute of limitations defense by not raising it in its motion to dismiss.  (*See* Def.'s Mem. 8; *see generally* Def.'s MTD Mem.)  A statute of limitations defense is waived if it "is not included in a pleading 'at the earliest possible moment.'"  *Santos v. Dist. Council of N.Y.C. & Vicinity of United Brotherhood of Carpenters & Joiners of Am*., 619 F.2d 963, 967 n.5 (2d Cir. 1980) (quoting *Strauss v. Douglas Aircraft Co*., 404 F.2d 1152, 1155 (2d Cir. 1968)).  "[F]ailure to raise the defense in a motion to dismiss, even though technically not a pleading, has been held to be a waiver."  *Santos v. Dist. Council of N.Y. & Vicinity of United Brotherhood of Carpenters*, No. 75-CV-4355, 1978 WL 1631, at *1 (S.D.N.Y. Feb. 23, 1978), *on reargument*, 1978 WL 1632 (S.D.N.Y. May 1, 1978); *see also S.E.C. v. Amerindo Inv. Advisors*, 639 F. App'x 752, 754 (2d Cir. 2016) (summary order) ("[The defendants] waived their statute of limitations defense by not raising it in their motion to dismiss the amended complaint."); *Muia v. Brookview Rehab Funding, LLC*, No. 10-CV-1315, 2012 WL 1014753, at *3 n.4 (N.D.N.Y. Mar. 23, 2012) (holding that a statute of limitations defense was "deemed waived" where the "[d]efendants did not raise it in their initial [m]otion to dismiss").[10]  Regarding Defendant's argument that the

---

[10] In addition, two Courts of Appeals have expressed "serious doubts that a facial challenge under the First Amendment can ever be barred by a statute of limitations" in context of First Amendment challenges under § 1983.  *See EklecCo NewCo LLC v. Town of Clarkstown*, No. 16-CV-6492, 2019 WL 2210798, at *7 (S.D.N.Y. May 21, 2019) (citing *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004) and *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1168 (4th Cir. 1991)).  And at least one court in this district has rejected a statute of limitations defense, holding that "[b]ecause of the ongoing nature of the harm caused by such

13

challenged law pre-dated Plaintiffs' arrival, (Def.'s Mem. 14), the Court addressed it in its March Opinion, and its conclusion is unchanged, (*see* Op. 36–37).  The same is true of Defendant's standing argument.  (*See* Def.'s Mem. 22–23; Op. 34–37.)[11]

### III.  Conclusion

For the foregoing reasons, Plaintiffs' Motion For Reconsideration is granted.  The Congregations' and Individuals' Equal Protection and State Law claims may proceed.  The Court will hold a telephonic status conference on October 5, 2021 at 10:00 A.M.  The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 81).

SO ORDERED.

DATED:      August 13, 2021
                    White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

legislation . . . the statute of limitations for facial challenges to legislation . . . does not accrue until the statute is repealed or otherwise invalidated."  *Id.*

[11] This argument also mistakenly assumes that a facially discriminatory statute does not indicate intentional discrimination.  *See Hayden*, 180 F. 2d at 48 ("[I]ntentional discrimination can be demonstrated . . . [by] a law or policy [that] is discriminatory on its face.").