UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ORTHODOX JEWISH COALITION OF
CHESTNUT RIDGE, an unincorporated
association, CONGREGATION BIRCHAS
YITZCHOK, a New York religious
corporation, CONGREGATION DEXTER
PARK, CONGREGATION TORAH
U'TFILLA, a New York religious corporation,
ABRAHAM WILLNER, and TZVI MILLER,

        7:19-cv-00443-KMK

        Plaintiffs,

    v.

VILLAGE OF CHESTNUT RIDGE, NEW
YORK,

        Defendant.
--------------------------------------------------------X

---

**MEMORANDUM OF LAW IN SUPPORT OF THE
VILLAGE'S MOTION FOR RECONSIDERATION
AND CLARIFICATION**

---

Respectfully submitted,

**FEERICK NUGENT MACCARTNEY, PLLC**
By: Donald J. Feerick, Jr.
    Mary E. Marzolla
    Patrick A. Knowles
96 South Broadway
South Nyack, New York 10960
Tel.: (845) 353-2000

*Attorneys for Defendant Village of Chestnut Ridge,
New York*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

PROCEDURAL HISTORY AND POSTURE .......................................................................... 2

ARGUMENT .......................................................................................................................... 4

I.      THE INDIVIDUAL PLAINTIFFS DID NOT ALLEGE OR ARGUE
        ENTITLEMENT TO RETROSPECTIVE RELIEF ...................................................... 4

II.     THE VILLAGE'S ARGUMENTS IN OPPOSITION TO PLAINTIFFS' MOTION
        FOR RECONSIDERATION WERE NEITHER PROCEDURALLY NOR
        SUBSTANTIVELY IMPROPER ................................................................................. 4

        A.      The Old Law was Facially Neutral. ................................................................. 5

        B.      The Village's Statute of Limitations Defense was not Waived. ........................ 11

        C.      The Village Argued the Old Law Pre-Dated Plaintiffs' Arrival ........................ 14

III.    PLAINTIFFS DID NOT CITE ANY CONTROLLING AUTHORITY FOR THE
        PROPOSITION THEY PRESSED ON RECONSIDERATION .................................... 14

IV.     THE COURT ERRONEOUSLY SHIFTED PLAINTIFFS' BURDEN OF
        PROOF ON THE VILLAGE ......................................................................................... 17

V.      THE COURT COMMITTED CLEAR ERROR BY FAILING TO CLASSIFY
        PLAINTIFFS' REMAINING CLAIMS AS FALLING UNDER *TARTIKOV'*S
        "CATEGORY TWO" CLAIMS, AND BY FAILING TO DISMISS THESE
        CLAIMS BECAUSE PLAINTIFFS NEVER DEMONSTRATED ANY ACTUAL
        COMPENSATORY INJURY CAUSED BY A CONSTITUTIONAL DEPRIVATION
        WHERE OPERATION OF THE LAW WAS NEVER INVOKED OR
        APPLIED ..................................................................................................................... 19

        A.      Plaintiffs' Claims Fall Under *Tartikov* Category Two ...................................... 19

        B.      Plaintiffs' Lack Standing to Pursue Compensatory Damages. ........................... 21

CONCLUSION ....................................................................................................................... 25

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*,
   499 U.S. 187 (1991).............................................................................................. 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................... 8, 9, 20

*Babbitt v. Farm Workers*,
   442 U.S. 289 (1979)........................................................................................... 23

*Bank of New York Mellon, London Branch v. Cart 1, Ltd.*,
   No. 18-CV-6093 (JPO), 2021 WL 2358695 (S.D.N.Y. June 9, 2021) ...................................... 1

*Bikur Cholim, Inc. v. Vill. of Suffern*,
   664 F. Supp. 2d 267 (S.D.N.Y. 2009) ............................................................ 6, 14

*Brown v. City of Oneonta*,
   221 F.3d 329 (2d Cir. 2000) ..........................................................................7-8

*Buchanan v. Warley*,
   245 U.S. 60 (1917) ............................................................................................. 9

*C.L.U.B. v. City of Chicago*
   157 F.Supp. 2d 903 (N.D. Ill 2001),
   *aff'd sub nom*, (342 F.3d 752 (7th Cir. 2003) ............................................... 9, 10

*C.L.U.B. v. City of Chicago*,
   342 F.3d 752 (7th Cir. 2003) ........................................................................... 10

*California v. Texas*,
   141 S. Ct. 2104 (2021)...................................................................................... 23

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
   364 F. Supp. 3d 253 (S.D.N.Y.),
   *aff'd*, 788 F. App'x 85 (2d Cir. 2019).............................................................. 17

*Christian Gospel Church, Inc. v. City & Cty. of San Francisco*,
   896 F.2d 1221 (9th Cir. 1990) .......................................................................... 10

*CMR D.N. Corp. v. City of Philadelphia*,
   703 F.3d 612 (3d Cir. 2013) ....................................................................... 18, 24

ii

*Commonwealth of Massachusetts v. Mellon*,
   262 U.S. 447 (1923) ................................................................. 23

*Congregation Kollel, Inc. v. Twp. of Howell, N.J.*,
   No. CV 16-2457 (FLW), 2017 WL 637689 (D.N.J. Feb. 16, 2017) ....................................... 18

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vil. of Pomona*
   945 F.3d 110 (2d Cir 2019) ................................................... 2, 6, 19-25

*Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Amos*,
   483 U.S. 327 (1987) ................................................................. 11

*DA Mortgage, Inc. v. City of Miami Beach*,
   486 F.3d 1254 (11th Cir. 2007) ................................................. 24

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008) ................................................................ 22

*Doyle v. Amster*,
   79 N.Y.2d 592 (1992) ............................................................. 24

*Employment Division, Department of Human Resources v. Smith*
   494 U.S. 872 (1990) ............................................................. 10-11

*Fortress Bible Church v. Feiner*,
   694 F.3d 208 (2d Cir. 2012) ..................................................... 18

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) .............................................................. 22

*Frooks v. Town of Cortlandt*,
   997 F. Supp 438 (S.D.N.Y. 1998) ............................................... 11

*Grace United Methodist Church v. City Of Cheyenne*,
   451 F.3d 643 (10th Cir. 2006) ................................................... 10

*Hayden v. County of Nassau*
   180 F.3d 42 (2d Cir. 1999) ..................................................... 7-8

*Iacono v. Town Bd. of Town of E. Hampton*,
   No. 05-CV-3616 (JS)(ETB), 2006 WL 8436041 (E.D.N.Y. Sept. 18, 2006) ........................... 11

*Johnson v. Baker*,
   108 F.3d 10 (2d Cir. 1997) ..................................................... 17

*Juarez v. Nw. Mut. Life Ins. Co.*,
  69 F. Supp. 3d 364 (S.D.N.Y. 2014),
  *amended*, No. 14-CV-5107, 2014 WL 12772237 (S.D.N.Y. Dec. 30, 2014).................. 8, 9, 15

*Kittay v. Giuliani*,
  112 F. Supp. 2d 342 (S.D.N.Y. 2000),
  *aff'd*, 252 F.3d 645 (2d Cir. 2001) ........................................................................... 17

*Lewis v. Casey*,
  518 U.S. 343 (1996)..................................................................................................... 22

*Lim-Kim v. Zoning Bd. of Appeals of Vill. of Irvington*,
  185 A.D.2d 346 (2d Dept 1992).................................................................................. 24

*Love Church v. City of Evanston*,
  896 F.2d 1082 (7th Cir. 1990)................................................................................ 14, 21

*Mahone v. Addicks Utility Dist.*,
  836 F.2d 921 (5th Cir. 1988)....................................................................................... 17

*Memphis Cmty. Sch. Dist. v. Stachura*,
  477 U.S. 299 (1986)..................................................................................................... 22

*Mount Elliott Cemetery Ass'n v. City of Troy*,
  171 F.3d 398 (6th Cir. 1999) ....................................................................................... 10

*Muia v. Brookview Rehab Funding*,
  No. 1:10-CV-01315 LEK, 2011 WL 1748190, at *1 (N.D.N.Y. May 5, 2011) ................. 12, 13

*Naumovski v. Norris*,
  934 F.3d 200 (2d Cir. 2019) .................................................................................... 14-15

*Open Homes Fellowship, Inc. v. Orange Cty., Fla.*,
  325 F. Supp. 2d 1349 (M.D. Fla. 2004) ...................................................................... 17

*People ex rel. Fordham Manor Ref. Church v. Walsh*,
  244 N.Y. 280 (1927)..................................................................................................... 24

*Personnel Administrator v. Feeney*,
  442 U.S. 256 (1979)........................................................................................................ 8

*Petra Presbyt. Church v. Vil. of Northbrook*,
  489 F.3d 846 (7th Cir. 2007)........................................................................................ 24

*Progressive Credit Union v. City of New York*,
  889 F.3d 40 (2d Cir. 2018) ........................................................................................... 17

*Rinaldi v. Yeager,*
　384 U.S. 305 (1966)..................................................................................... 10

*Roman Cath. Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury,*
　128 F. Supp. 3d 566 (E.D.N.Y. 2015) ....................................................... 17

*S.E.C. v. Amerindo Inv. Advisors,*
　639 F. App'x 752 (2d Cir. 2016) ...........................................................11, 12

*S.E.C. v. Ashbury Cap. Partners, L.P.,*
　No. 00-CV-7898 (RCC), 2001 WL 604044 (S.D.N.Y. May 31, 2001)...................... 6

*Santos v. Dist. Council of N.Y. & Vicinity of United Brotherhood of Carpenters,*
　No. 75-CV-4355, 1978 WL 1631, (S.D.N.Y. Feb. 23, 1978),
　*on reargument*, 1978 WL 1632 (S.D.N.Y. May 1, 1978)..............................11, 12, 13

*Santos v. Dist. Council of N.Y.C. & Vicinity of United Brotherhood of Carpenters &*
　*Joiners of Am.,*
　619 F.2d 963 (2d Cir. 1980) ..................................................................... 12

*Sequa Corp. v. GBJ Corp.,*
　156 F.3d 136 (2d Cir. 1998) ....................................................................... 6

*St. Bartholomew's Church v. N. Y.,*
　914 F.2d 348 (2d Cir. 1990), *cert. denied*, 499 U.S. 905 (1991) ......................11

*St. John's United Church of Christ v. City of Chicago,*
　502 F.3d 616 (7th Cir. 2007)......................................................................11

*United States v. Philip Morris USA, Inc.,*
　793 F. Supp. 2d 164 (D.D.C. 2011) ........................................................... 1

*U.S. v. Salerno,*
　481 U.S. 739 (1987).................................................................................. 18

*Villas at Parkside Partners v. City of Farmers Branch,*
　No. CIV.A. 306CV2371L, 2007 WL 4322147 (N.D. Tex. Dec. 11, 2007)............... 16

*Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston,*
　250 F. Supp. 2d 961 (N.D. Ill. 2003) ........................................................ 10

*Washington v. Davis,*
　426 U.S. 229 (1971).................................................................................. 15

*White v. Padgett,*
　475 F. 2d 79 (5th Cir. 1973) ..................................................................... 12

**Statutes and Rules**

42 U.S.C. § 1983 ................................................................ 5, 12, 13, 14, 15, 16, 19

Fed.R.Civ. P. 8(c) ........................................................................................ 12

Fed. R. Civ. P. 12(b)(1) .................................................................................. 2

Fed. R. Civ. P. 12(b)(6) .............................................................................. 2, 17

Fed. R. Civ. P. 12(h) .................................................................................... 12

# INTRODUCTION

It goes without saying that no litigant takes pleasure in efforts to inform the Court of a mistake or the means to correct it. We thus tackle this task delicately. As explained below, however, the Court's reconsideration of the March 31, 2021 Opinion & Order (the "March Opinion") was erroneous and overlooked controlling authority. Accordingly, the Village brings this Motion for Reconsideration and Clarification[1] of the August 13, 2021 Order (the "August Order"), which granted Plaintiffs' Motion for Reconsideration of the March Opinion.[2]

The Village moves for the following principal reasons: [1] the Court overlooked that the two individual Plaintiffs (Abraham Willner and Tzvi Miller) neither alleged nor argued for retrospective relief, including compensatory damages, and thus, they should be dismissed from this action; [2] the Court wrongly held that the Village was precluded from raising arguments that the Village either did, in fact, argue in its Motion to Dismiss or only arose by virtue of the arguments Plaintiffs presented in their Motion for Reconsideration; [3] the Court overlooked that for a law to be facially discriminatory, it must *expressly classify persons on the basis of a protected class* (which the Village's Zoning Code does not), and that land use is not a fundamental right; [4] the Court erroneously suggested that the Village waived its statute of limitations defenses; [5] on their Motion for Reconsideration, Plaintiffs did not cite any controlling authority advancing the proposition they argued; [6] the Court erroneously lifted Plaintiffs from their burden to overcome

---

[1] The Village's Motion is procedural proper. *See, e.g.*, *Bank of New York Mellon, London Branch v. Cart 1, Ltd.*, No. 18-CV-6093 (JPO), 2021 WL 2358695 (S.D.N.Y. June 9, 2021) (entertaining motion for clarification and reconsideration of an order that had granted motion for reconsideration). With respect to Clarification, the general purpose "is to explain or clarify something ambiguous or vague, not to alter or amend." *U.S. v. Philip Morris USA, Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011) (citation and internal quotation omitted). Clarification regarding language used in a court order is a permissible ground for such a motion. *Id.* (summarizing cases).

[2] Of course, the Village's instant Motion for Reconsideration also concerns aspects of the March Opinion and the Village's prior Motion to Dismiss, as the August Order reconsidered the March Opinion dismissing Plaintiffs' Equal Protection claim (Count III) and declining to exercise supplemental jurisdiction over Plaintiffs' State Law claim (Count VIII).

the presumption of rationality that applies to legislative acts, such as zoning; and [7] the Court committed clear error by failing to categorize Plaintiffs' remaining claims as under *Tartikov's* "Category Two" and hold that Plaintiffs lacked standing to pursue compensatory damages.

The Village respectfully requests that the Court dismiss Plaintiffs' Equal Protection claim (Count III) and decline to exercise supplemental jurisdiction over Plaintiffs' State Law claim (Count VIII).

## **PROCEDURAL HISTORY AND POSTURE**

Plaintiffs' First Amended Complaint ("FAC") asserted seven Federal Law claims and one State Law claim against the Village. (Pls.' FAC (Dkt. 29).) The FAC [1] alleged as-applied and facial challenges; [2] sought prospective injunctive and declaratory relief; and [3] except for the two individual Plaintiffs, Abraham Willner and Tzvi Miller (the "Individual Plaintiffs"), requested compensatory damages for alleged past harm based on the mere existence of an allegedly unconstitutional portion of the Village's Zoning Code that no longer exists and was not alleged to have been applied.

On April 17, 2020, the Village filed a Motion to Dismiss Plaintiffs' FAC "in its entirety" pursuant to FRCP Rules 12(b)(1) and 12(b)(6). (Def.'s Not. of Mot. to Dismiss 1 (Dkt. No. 59); Def.'s Mem. of Law in Supp. of Mot. to Dismiss. ("Def.'s MTD Mem.") 1, 6, 30 (Dkt. No. 62).)[3]

On March 31, 2021, the Court issued the 44-page March Opinion dismissing Plaintiffs' seven Federal Claims and declining to exercise supplemental jurisdiction over Plaintiffs' State Law claim. (March Opinion (Dkt. No. 80).). More particularly, the Court dismissed Plaintiffs' claims for prospective relief as moot; Plaintiffs' as-applied challenges as unripe; Plaintiffs' facial

---

[3] Previously, pursuant to the Court's June 19, 2019 Motion Scheduling Order (Dkt. No. 23), the Village filed a Motion to Dismiss Plaintiffs' original Complaint on July 16, 2019 (Dkt. Nos. 25-27, 30-32). Plaintiffs filed a pre-motion letter for leave to file their FAC the same day. (Dkt. 24.) The Court granted Plaintiffs' request the next day, on July 17, 2019 (Dkt. No. 28), and the Village's Motion to Dismiss Plaintiffs' FAC followed.

challenges regarding free exercise, free speech, and free association, as well as RLUIPA substantial burden and exclusion and limits, as unripe; and Plaintiffs' nondiscrimination and equal terms claims under RLUIPA as barred by RLUIPA's safe harbor provision. Also, as is particularly relevant here, the March Opinion dismissed Plaintiffs' facial Equal Protection challenge seeking compensatory damages on the basis that [1] Plaintiffs did not allege any indicia of discriminatory intent and [2] Plaintiffs did not respond to the Village's argument in their opposition to the Village's Motion to Dismiss with respect to their pleading failure. (*Id.* at 42-43.) And having dismissed all of Plaintiffs' Federal Law claims, the Court declined to exercise supplemental jurisdiction over Plaintiffs' State Law claim under Article I § 3 of the New York State Constitution. (*Id.* at 43.)

While the March Opinion permitted Plaintiffs to file a second amended complaint within 30 days, (*id.* at 43), Plaintiffs did not do so. Instead, Plaintiffs filed, on April 14, 2021, a Motion for Reconsideration insofar as the March Opinion dismissed Count III (Equal Protection claim) and Count VIII ("Freedom of Worship" claim under New York Constitution, Art I § 3)[4] of Plaintiffs' FAC. (Pls.' Mot. for Recons. (Dkt. Nos. 81-82).)

On August 13, 2021, the Court issued the challenged August Order granting Plaintiffs' Motion for Reconsideration. (August Order (Dkt. No. 88).) The August Order held that the three congregation Plaintiffs (Congregation Birchas Yitzchok, Congregation Dexter Park, and Congregation Torah U'tfilla [the "Congregation Plaintiffs"]) and the Individual Plaintiffs could proceed with their facial challenges for compensatory damages on Count III and Count VIII of their FAC.

---

[4] Plaintiffs characterized their State Law claim as a "Freedom of Worship" claim based on "discrimination", not "burdens on religious exercise". (*Id.* at 13 ("While New York provision protects against both 'discrimination' and 'burdens on religious exercise,' it is the former that is presented in this case.").)

## ARGUMENT

## I.     THE INDIVIDUAL PLAINTIFFS DID NOT ALLEGE OR ARGUE ENTITLEMENT TO RETROSPECTIVE RELIEF.

The Individual Plaintiffs never alleged nor sought retrospective relief.  They never maintained that they suffered compensatory damages; they never alleged retrospective relief in the FAC.  The Village repeatedly argued Plaintiffs' failure in this regard.  (Def.'s MTD Mem. 2 ("The Plaintiff Association ["OJC"] and two Plaintiff Individuals only seek prospective relief."); *id.* at 26 ("[T]he two Plaintiff Individuals and OJC have not alleged a retrospective claim for relief"); Def.'s Letter, filed August 13, 2019 (Dkt. No. 35) 1 ("The Individual Plaintiffs do not allege compensatory damages."); Def.'s Letter, dated July 30, 2019 (Dkt. No. 33) 2 ("[T]he Individual Plaintiffs allege no compensatory damages.").).

Moreover, Plaintiffs did not challenge their failure when opposing the Village's Motion to Dismiss on this issue, which the Village pointed out in Reply.  (Def.'s Reply Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s MTD Reply Mem.") 1 n.1 ("Neither Plaintiff OJC nor the two Plaintiff Individuals alleged or sought retrospective relief or alleged any compensatory damages in the FAC. (See Village Mem. at pp. 1-2 (ECF No. 62)). Plaintiffs' opposition makes no meaningful effort to dispute this fact (See Pl. Opp. Mem. at p. 26) (ECF No. 65)).").)

Accordingly, the Court committed clear error by failing to dismiss the Individual Plaintiffs from this action.

## II.    THE VILLAGE'S ARGUMENTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION WERE NEITHER PROCEDURALLY NOR SUBSTANTIVELY IMPROPER.

The August Order held:

> Defendant raises a number of substantive arguments. It argues that Plaintiffs fail to identify similarly situated comparators.  It argues that the challenged ordinance was facially neutral.  And it interposes

> challenges based on the statute of limitations, the fact that the
> challenged law pre-dated Plaintiffs' arrival, and Plaintiffs' standing.
>
> The Court rejects these arguments for two alternative reasons. First,
> they are procedurally improper. Apart from the standing argument,
> which the Court rejected, Defendant did not make any of these
> arguments in its briefing of the motion to dismiss.

(August Order 6 (citations omitted).)

By this language, the August Order held that the Village did not argue in its underlying Motion to Dismiss that [1] the Old Law was facially neutral; [2] the three-year statute of limitations applicable to § 1983 claims barred Plaintiffs' challenge; [3] the Old Law pre-dated Plaintiffs' arrival and thus Plaintiffs could not facially challenge same;[5] and [4] Plaintiffs failed to identify similarly situated comparators.  The August Order concluded that the Village was procedurally precluded from pressing these arguments in opposition to Plaintiffs' Motion for Reconsideration. This was unwarranted.

### A.  The Old Law was Facially Neutral.

As this Court recognized in both the March Opinion and the August Order, the Village argued that Plaintiffs did not allege that the Old Law was enacted with a discriminatory purpose. In fact, the August Order even said that "[o]f course, Plaintiffs could have responded" (August Order 5) and that a movant cannot "rely upon facts, issues, or arguments that were previously available but not presented to the court[,]" (*id.* at 3).  Nevertheless, the Court accepted Plaintiffs' 20 pages of additional briefing in support of their Motion for Reconsideration and held that "Plaintiffs identify ample controlling authority showing that the March Opinion's ruling as to Plaintiffs' Equal Protection claim was clearly erroneous[,]" (*id.* at 6 (*citing Def.'s Opp. Mem.* 4)).

---

[5] But later, the August Order summarily stated the opposite: "Regarding Defendant's argument that the challenged law pre-dated Plaintiffs' arrival, (Def.'s Mem. 14) the Court addressed it in its March Opinion, and its conclusions is unchanged, (*see* Op. 36-37)."  (August Order 13-14.)

But as explained *infra* (pages 7-11 and Point III), and in the Village's Opposition to Plaintiffs' Motion for Reconsideration, Plaintiffs did not cite any controlling authority that this Court's ruling was clearly erroneous, and the only applicable authority from this District, *Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267, 277-78 (S.D.N.Y. 2009), (*see* Def.'s Opp. Mem. to Pls.' Motion for Reconsideration ("Def.'s Opp. Mem.") 1, 4-6), dismissed the plaintiff's similarly presented facial Equal Protection claim as "purely hypothetical" and simply "not a Fourteenth Amendment claim."[6]

Indeed, here, the Court permitted Plaintiffs, through their Motion for Reconsideration, to engage in the unpermitted practice of "taking a 'second bite at the apple'" and "examining [the March Opinion] and then plugging the gaps of a lost motion with additional matters." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *S.E.C. v. Ashbury Cap. Partners, L.P.*, No. 00-CV-7898 (RCC), 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001).

In its Motion to Dismiss, the Village argued:

> Also relevant is that Plaintiffs do not allege that the Obsolete Local Law was enacted with a discriminatory purpose. It was enacted before RLUIPA and at a time when no Plaintiff owned property in the Village. Plaintiffs cannot buy into an injury-in-fact to establish standing; actual injury is always required. Tartikov, 945 F.3d at 110, 110 n 289. Nor do Plaintiffs allege that any Village Trustee acted with personal religious animus when enacting the Obsolete Local Law. Without any evidence of discriminatory intent, the focus is upon how, if at all, the challenged law affected a formal proposal. But Plaintiff never submitted a formal land use proposal under the Obsolete Local Law.
>
> Under the Equal Protection Clause or RLUIPA's nondiscrimination and equal terms and exclusion provisions, Plaintiffs would be required to rely on the same assertions of discriminatory animus that is lacking.

---

[6] Unless otherwise indicated, case citations omit all internal citations, quotations, footnotes, and alternations.

(Def.'s MTD Mem. 3-4); *see also* Def.'s MTD Reply Mem. 5 ("[T]he three Plaintiff Congregations here challenge a decades-old local law that long pre-dates their existence and was not enacted for the purpose of discriminating against them as a matter of law.").

It is fundamentally unfair to permit Plaintiffs – who did not challenge their failure to allege purposeful discrimination in opposition to the Village's Motion to Dismiss, together with this Court recognizing that "[o]f course, Plaintiffs could have responded" (August Order 5) – to use a Motion for Reconsideration to "plug the gaps" through arguing that the Old Law is facially discriminatory and therefore no allegations of discriminatory intent are required, while at the same time precluding the Village from arguing the contrary position that the Old Law is not facially discriminatory to support the contention that Plaintiffs were required to allege purposeful discrimination through the various indicia required in this Circuit. As explained *infra*, the Court erred in failing to hold that the Village's Zoning Code was facially neutral as a matter of law.

The August Order stated: "Plaintiffs argue that the Court committed clear error in requiring 'additional proof of discriminatory intent' when the [FAC] alleged that Defendant's ordinance was 'facially discriminatory.'" (August Order 2 (*citing* Pls.' Mem 2).). But the FAC did not plausibly allege that the "Defendant's ordinance" was "facially discriminatory." Critically, the FAC does not allege that Village's Zoning Code *expressly classified persons on the basis of a suspect class (i.e., religion)*, which is the *sine qua non* for a law to be *facially discriminatory*.[7]

The August Order also said:

> Defendant argues that Plaintiffs are required to allege intentional discrimination. (Def.'s Mem. 6-10.) This is right, but it does not help Defendant because "[s]uch intentional discrimination can be

---

[7] And as noted in Defendants' Opposition to Plaintiffs' Motion for Reconsideration, Plaintiffs' Motion altered the language of their FAC. For example, while Plaintiffs' FAC alleged: "*In general*, the Challenged Laws treated nonreligious assembly and institutional land uses more favorably than places of worship." (FAC at ¶ 131 (emphasis added)), Plaintiffs' motion for reconsideration removes the "In general" qualification. (See Pls.' Recons. Mem. 4 n.1 (*citing* FAC ¶ 131).)

> demonstrated . . . *[by] a law or policy [that] is discriminatory on its face.*"  *Hayden*, 180 F.3d at 48; *see also Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (same)[8].

(August Order 5 (alternations in original).)

But the *Hayden* Opinion held that "a law or policy is discriminatory on its face *if it expressly classifies persons on the basis of race or gender*."  *Hayden*, 180 F.3d at 48 (emphasis added).  Likewise, *Juarez v. Nw. Mut. Life Ins. Co.*, another case cited in the August Order, similarly held: "One of the ways to plead intentional discrimination is to point to a law or policy *that expressly classifies people on the basis of a protected characteristic*."  69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014), *amended,* No. 14-CV-5107 (KBF), 2014 WL 12772237 (S.D.N.Y. Dec. 30, 2014) (emphasis added).  Moreover, the *Juarez* Court explained: "one of the ways to engage in purposeful discrimination is to *apply* a policy that is discriminatory *on its face.  Facial discrimination is discrimination 'because of' a protected characteristic.*"  *Id.* (second emphasis in original)[9]; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) (explaining that purposeful discrimination requires more than "intent as volition or intent as awareness of consequences"; it involves a decisionmaker's undertaking a course of action "'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group.").  *Personnel Administrator v. Feeney*, 442 U.S. 256 (1979) (holding that the foreseeable impact of a law was not sufficient to make out a case of discriminatory purpose under the Equal Protection clause).

---

[8] *Brown* also requires that the law or policy must "*expressly classif[y] on the basis of race.*"  *Brown*, 221 F.3d at 337 (emphasis added).

[9] The August Order states that "a plaintiff who alleges *a policy* that is discriminatory on its face is not required to make any further allegations of discriminatory intent or animus." (August Order 4 (emphasis added) (*citing Juarez*, 69 F. Supp. 3d at 370; *Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991)).)  But in *Juarez*, the plaintiffs challenged an employment policy that *expressly* discriminated against legal aliens without green cards.  The policy alleged there was "directed at aliens and that only aliens [were] harmed by it."  *Juarez*, 69 F. Supp. 3d at 376.  And there, the policy was actually implemented and applied to discriminate based on alienage.  Likewise, in *Agr. Implement Workers of Am*, another employment case, the policy barred all women, except those whose fertility was medically documented, from certain jobs.

The Village's Opposition to Plaintiffs' Motion for Reconsideration provided a litany of cases where laws were found to be facially discriminatory, and none of the challenged laws in those cases were remotely close to the Village's Zoning Code. (Def.'s Opp. Mem. 19-20.) As but one example cited in the Village's Opposition, *Buchanan v. Warley*, 245 U.S. 60 (1917), a zoning regulation explicitly stated that a racial minority was a "nuisance" to be excluded from an area; clearly such a regulation violates the Equal Protection rights of the zoned-out racial minority.

Plaintiffs were required to "plead sufficient factual matter to show that [the Village] adopted and implemented the [Zoning Code] . . . for the purpose of discriminating on account of race, religion, or national origin." *Ashcroft*, 556 U.S. at 677. Here, the Old Law did not *expressly classify persons on the basis of religion*. It classified based on *uses of land*. And what is more, Plaintiffs do not allege that it was *ever applied to them*, as required under *Juarez*, 69 F. Supp. 3d at 370, and nearly every other case that has been presented with this issue.

Also relevant is *C.L.U.B. v. City of Chicago*, which the August Order relied upon, explained that churches are not considered a suspect class. 157 F. Supp. 2d 903, 910 (N.D. Ill. 2001), *aff'd sub nom.*, 342 F.3d 752 (7th Cir. 2003) ("While individuals of a particular religious faith may constitute a suspect class requiring heightened scrutiny, there is no proof churches as an entity qualify as a suspect class here. In the context of the Zoning Ordinance, owners of 'churches' are operators of the physical structure in which people gather to celebrate and are not a suspect class."). The *C.L.U.B.* Court explained that "[w]hile this conclusion is a narrow distinction, it is an important distinction, because a classification based upon the religious preferences of an individual may trigger heightened scrutiny but a classification that merely touches upon religion in general is subject to the standard rational basis equal protection review." *Id.*

*C.L.U.B.* is by no means an outlier.[10] S*ee also Christian Gospel Church, Inc. v. City & Cty. of San Francisco*, 896 F.2d 1221, 1225 (9th Cir. 1990) (holding that the zoning scheme did not implicate a suspect class or a fundamental right where church brought equal protection claim on the basis that zoning provision required conditional use permit for churches in residential area) (*citing Rinaldi v. Yeager,* 384 U.S. 305, 308-09 (1966)); *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006) (affirming failure of the plaintiff church to state a cognizable equal protection claim where church was not a member of a suspect class nor was denied a fundamental right); *Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 405 (6th Cir. 1999) (upholding refusal to rezone single-family area for religious cemetery, noting locational restriction was a neutral law of general applicability).

On appeal, the Seventh Circuit in *C.L.U.B. v. City of Chicago*, eloquently explained:

> Whatever the obstacles that the CZO might present to a church's ability to locate on a specific plot of Chicago land, they in no way regulate the right, let alone interfere with the ability, of an individual to adhere to the central tenets of his religious beliefs. As the district court adroitly noted, the CZO's limitations on church location are "not the regulation of belief, any more than regulating the location of the *Chicago Tribune* building is the regulation of the newspaper's [F]irst [A]mendment-protected product." *Civil Liberties for Urban Believers,* 157 F.Supp.2d at 908.

342 F.3d 752, 766 (7th Cir. 2003)

In *St. Bartholomew's Church v. N. Y.,* 914 F.2d 348 (2d Cir. 1990), cert. denied, 499 U.S. 905 (1991), the Second Circuit applied an *Employment Division, Department of Human Resources v. Smith* analysis and concluded that the New York Landmark Law was a neutral law of general application.  Indeed, although the law substantially limited the church's options for using its real

---

[10] Indeed, the August Order recognized, in citing to *Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston*, 250 F. Supp. 2d 961, 978 (N.D. Ill. 2003), that the application of strict scrutiny to zoning ordinance cases in similar cases is rare.  (August Order 8.)

estate holdings to raise revenue, the Second Circuit held that such did not prevent the church from carrying out its religious and charitable missions in its current building.

Also, even if a "church" is a suspect class, "strict scrutiny has been reserved for laws that 'discriminat[e] *among* religions." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007) (emphasis added; alteration in original) (*citing Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Amos,* 483 U.S. 327, 339, (1987).

Plaintiffs do not and cannot allege infringement of a fundamental right because land use rights are not fundamental under the Equal Protection clause. (Def.'s Opp. Mem. 22); *Iacono v. Town Bd. of Town of E. Hampton*, No. 05-CV-3616 (JS)(ETB), 2006 WL 8436041, at *3 (E.D.N.Y. Sept. 18, 2006) ("Plaintiffs do not have a fundamental right to develop their property."); *Frooks v. Town of Cortlandt*, 997 F. Supp 438, 453 (S.D.N.Y. 1998) (stating that land use rights are not fundamental under Equal Protection).

It appears that the Court may have inadvertently applied RLUIPA's standards to Plaintiffs' Equal Protection clause claim here. But the Religious Freedom Restoration Act, and subsequently RLUIPA, was enacted in response to the perceived weakening of the regarding land use regulation where religious exercise is involved under the Constitution. Reconsideration is warranted.

### B. The Village's Statute of Limitations Defense was not Waived.

Regarding the statute of limitations, the August Order held that the Village "waived its statute of limitation defense by not raising it in its motion to dismiss." (August Order 13.) For this proposition, the Court cited to *Santos v. Dist. Council of N.Y.C. & Vicinity of United Brotherhood of Carpenters & Joiners of Am.*, 619 F.2d 963, 967 n.5 (2d Cir. 1980); *Santos v. Dist. Council of N.Y. & Vicinity of United Brotherhood of Carpenters*, No. 75-CV-4355, 1978 WL 1631, at *1 (S.D.N.Y. Feb. 23, 1978), *on reargument*, 1978 WL 1632 (S.D.N.Y. May 1, 1978); S.*E.C. v.*

*Amerindo Inv. Advisors*, 639 F. App'x 752, 754 (2d Cir. 2016) (summary order); *Muia v. Brookview*

*Rehab Funding*, LLC, No. 10-CV-1315, 2012 WL 1014753, at *3 n.4 (N.D.N.Y. Mar. 23, 2012).

But the Village did raise the statute of limitations defense in its Motion to Dismiss. (Def.'s

MTD Mem. 4 n.5 ("Plaintiffs cannot challenge the enactment of the Obsolete Local Law, as

RLUIPA's four-year and § 1983's three-year limitations periods ran long ago.")). Moreover, to the

extent that August Order suggests that the Village waived its statute of limitations defense for all

purposes,[11] the Court's cited authorities (listed above) stand for the opposite proposition.

The Second Circuit in *Santos* expressly held:

> The statute of limitations defense *need not be raised in a pre-answer*
> *motion*. Rather, under Fed.R.Civ.P. 8(c), the statute of limitations
> constitutes an affirmative defense, to be asserted in a responsive
> pleading.
>
> *The assertion of the limitations defense in the defendant union's*
> *answer, rather than in its prior motion for dismissal and summary*
> *judgment, was both timely and sufficient as a matter of pleading.*

*Santos*, 619 F.2d 963 at 967 (2d Cir. 1980) (emphasis added).

Plus, the Southern District's February 23, 1978 Opinion in *Santos*, 1978 WL 1631, *1, cited

by this Court, was soon thereafter reversed on reargument. On reargument, the *Santos* Court held:

> The court held in its opinion of February 23, 1978, that defendant
> had waived the defense of the statute of limitations by failing to
> assert such defense in its original motion to dismiss. In reaching that
> decision the court failed to take two factors into consideration. The
> first was that the cases relied upon by the court in reaching that
> decision were decided prior to the 1966 amendment of Fed. R. Civ.
> P. 12(h). The second was that a Rule 12 motion based upon the
> defense of a statute of limitations is considered a motion to dismiss
> for failure to state a claim upon which relief can be granted, *White*
> *v. Padgett,* 475 F. 2d 79 (5th Cir. 1973), and thus not waivable even
> if not included in a Rule 12 motion. Fed. R. Civ. P. 12(h)(2).
>
> The court, after consideration of these two factors, concludes that

---

[11] The Village respectfully requests clarification concerning the scope of the August Order's holding that the Village waived their statute of limitation defense.

> defendant in fact did not waive the defense of the statute of limitations and that it was proper and timely for the defendant to include that affirmative defense in its answer.

*Santos*, 1978 WL 1632, at *1.

In *S.E.C. v. Amerindo Inv. Advisors*, the defendants did not raise the statute of limitations defense under 28 U.S.C. § 2462 (*which is non jurisdictional*) in either their answer (Dkt. No. 125) or their post-answer motion to dismiss (Dkt. Nos. 252-254). Thus, their non-jurisdictional statute of limitations defense was waived on appeal.

In the Northern District case of *Muia*, the Court first denied the defendant's first motion to dismiss without prejudice to renew and granted plaintiff leave to amend her complaint. *Muia*, 2011 WL 1748190, at *1. No statute of limitations defense was asserted in defendant's first, fully decided motion to dismiss. *Id.*; *id. at* *3 n.4. Then, upon a second motion, the *Mulia* Court held that defendant waived its ability to move to dismiss plaintiff's amended complaint based on a statute of limitations defense. *Id. Mulia* is neither controlling nor analogous. At no point did the *Mulia* Court hold that the defendant was precluded from asserting a statute of limitations defense in its answer.

Finally, the August Order states that the Ninth and Fourth Circuits "have expressed 'serious doubts that a facial challenge under the First Amendment can ever be barred by a statute of limitations' in the context of First Amendment challenged under § 1983." (August Order 13 n.10). Yet, earlier in the August Order, the Court states: "The Court agrees with Plaintiffs that the cases cited by Defendant for the view that indirect financial effects cannot establish an Equal Protection violation are inapplicable because they concern the First Amendment." (August Order n.7.) The Court, thus, takes conflicting stances on cases concerning the applicability of First Amendment holdings to Plaintiffs' Equal Protection clause claim. The Village respectfully requests

clarification on this point, too, and if the Court is so inclined, further briefing on these issues, which if the Village is successful, terminate this matter. Important rights are at stake.

### C. The Village Argued the Old Law Pre-Dated Plaintiffs' Arrival.

Plaintiffs could not facially challenge the Old Law because the law pre-dated their arrival. This argument was meaningfully advanced and addressed in the March Opinion and was reiterated on reconsideration. (See August Order 13-14.) This issue went to a central issue of the Village's Motion to Dismiss, and, on Reconsideration, the Court overlooked its critical importance. (See Point V, *infra*.)

### III. PLAINTIFFS DID NOT CITE ANY CONTROLLING AUTHORITY FOR THE PROPOSITION THEY PRESSED ON RECONSIDERATION.

While the August Order held that Plaintiffs cited "ample controlling authority", in fact, Plaintiffs did not cite to any controlling authority showing that the March Opinion was clearly erroneous. Plaintiffs relied upon a few stray District Court cases, all outside the Second Circuit, (one of which, *Love Church*, was reversed on appeal and bolsters the Village's argument that Plaintiffs lack standing), and the only case from the Southern District that is remotely similar to here is *Bikur Cholim, Inc. v. Vill. of Suffern*, where this Court outright rejected the same argument Plaintiffs pressed on Reconsideration as "purely hypothetical" and not constituting a claim under the Equal Protection clause.

The August Order erroneously held that the same standard under various statutory schemes, such as Title VII, applies to Equal Protection claims. (August Order 5 n.1.) In this regard, the August Order held:

> Defendant correctly argues that many of the cases cited in Plaintiffs' brief relate to statutory causes of action. (*See* Def.'s Mem. 11; *see also* Pls.' Mem 3.) However, the relevant standards are the same. *See Naumovski v. Norris*, 934 F.3d 200, 212-13 (2d Cir. 2019) (holding that "[*such*] § 1983 discrimination claims parallel Title VII

> discrimination claims in many respects," and noting differences that
> are inapplicable here); *Juarez*, 69 F. Supp. 3d at 370 (holding that
> "the same pleadings standards apply to § 1981 claims" as to Equal
> Protection claims).

(August Order 5 n.1. ("such" in original).)  But the standards are not the same, and certainly not

in the context Plaintiffs present here.

Indeed, the *Naumovski* Court held that "*such* § 1983 discrimination claims" (i.*e.,* sex

discrimination claims in public employment based on "disparate treatment" on account of sex and

"hostile work environment" on account of sex) "parallel Title VII discrimination claims".

*Naumovski*, 934 F.3d at 212.  In this regard, the *Naumovski* Court explained:

> The basic elements of *such* claims, whether pursued under Title VII
> or § 1983, are similar: (1) a plaintiff claiming disparate treatment
> under either statute must plausibly allege that she suffered an
> "adverse employment action" taken "because of" her sex, and (2) a
> plaintiff claiming a hostile environment must plausibly allege
> offensive conduct based on sex that was "sufficiently severe or
> pervasive to alter the conditions of the victim's employment and
> create an abusive working environment.'

*Id.* (emphasis added).  But these limited similarities have nothing to do with a facial Equal

Protection claim based on a municipalities Zoning Code and whether a Zoning Code is "facially

discriminatory" when it regulates land use.

What is more, even in the employment context, the burden to establish a § 1983 is more

difficult than for a Title VII claim in numerous respects.  *Id.* at 212-13.  In *Washington v. Davis*,

426 U.S. 229 (1971), the Supreme Court announced important distinctions between Equal

Protection and Title VII standards and expressly criticized prior opinions that had found Equal

Protection violations based on discriminatory impact evidence alone.  *Id.* at 238.  The Supreme

Court, in reversing the D.C. Circuit, explained that the Court of Appeals had confused the § 1983

and Title VII claims.  *Id.* at 238.  The Supreme Court held that unlike under Title VII, a law or

other official act would not be unconstitutional under § 1983 *solely* on a finding of racially discriminatory impact. *Id.* at 241-42. Discriminatory purpose was required for constitutional claims, but not Title VII claims. *Id.* And the Supreme Court explained a Title VII disparate impact analysis "involves more probing judicial review of, and less deference to, the seemingly reasonable acts of administrators and executives than is appropriate under the Constitution where special racial impact, without discriminatory purpose, is claimed." *Id.* at 247-48.

There is simply no controlling authority standing for the proposition that Plaintiffs press. The stray out-of-circuit district court cases are not analogues or controlling, and the August Order expressly recognized that the application of strict scrutiny to zoning ordinance cases in similar cases is rare. (August Order 8.) As explained in the Village's Motion to Dismiss, Plaintiffs cannot cite to a single case where compensatory damages were awarded to a plaintiff asserting *only a facial attack* to a law where operation of the challenged law was never invoked or applied. *See also*, *Villas at Parkside Partners v. City of Farmers Branch*, No. CIV.A. 306CV2371L, 2007 WL 4322147, at *3 (N.D. Tex. Dec. 11, 2007) (holding an unapplied ordinance cannot give rise to compensatory damages). Plaintiffs' claims for damages are not directly or proximately linked to any acts of the Village. They are indirect and conjectural.

Here, all Plaintiffs have is a facial attack to a portion of the Village's Zoning Code that no longer exists, and despite that Plaintiffs practiced their religion uninhibited while the now removed portion existed.

## IV. THE COURT ERRONEOUSLY SHIFTED PLAINTIFFS' BURDEN OF PROOF ON THE VILLAGE.

Relying on a Middle District of Florida case from 2004, the Court erroneously shifted the burden of proof on the Village, stating that "[the Village] has proffered no putative rational basis for its disfavoring religious land use, nor is the Court aware of any basis to do so from the

pleadings." (August Order 10. (*citing Open Homes Fellowship, Inc. v. Orange Cty., Fla.*, 325 F. Supp. 2d 1349, 1363 (M.D. Fla. 2004)).) But as the Village has previously explained in Opposition to Plaintiffs' newly raised argument on their Motion for Reconsideration (Def.'s Opp. Mem. 21-22), zoning is a legislative act, presumed to be constitutional. Thus, to withstand a motion to dismiss, Plaintiffs had the burden of overcoming the presumption of rationality that applies to such government classifications (see *Id.*).

> To withstand a motion to dismiss such a claim, a plaintiff must plead sufficient facts that, treated as true, overcome the presumption of rationality that applies to government classifications. A court is not confined to the particular rational or irrational purposes that may have been raised in the pleadings. *Johnson v. Baker*, 108 F.3d 10, 11-12 (2d Cir. 1997) (noting that equal protection rational basis review is appropriate in a motion to dismiss at the pleadings stage and that the court may hypothesize a legitimate, rational governmental purpose); *see also Mahone v. Addicks Utility Dist.*, 836 F.2d 921, 936 (5th Cir. 1988) ("Going outside the complaint to hypothesize a purpose will not conflict with the requirement that, when reviewing a complaint dismissed under Rule 12(b)(6), we accept as true all well-pleaded facts.").

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 49–50 (2d Cir. 2018); *see also Kittay v. Giuliani*, 112 F. Supp. 2d 342, 354 (S.D.N.Y. 2000), *aff'd*, 252 F.3d 645 (2d Cir. 2001).

"It is well-established that States and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city." *Roman Cath. Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*, 128 F. Supp. 3d 566, 584 (E.D.N.Y. 2015) (collecting cases). In *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 280 (S.D.N.Y.), *aff'd*, 788 F. App'x 85 (2d Cir. 2019) (cleaned up), this Court recently explained:

> The government need not actually articulate at any time the purpose or rationale behind the distinctions set out in its policy. Instead, the policy must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a

rational basis for the distinctions. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.

Finally, because Plaintiffs only have a facial challenge, they were required to show that "no set of circumstances exists under which the [Village's Zoning Law] would be valid." *U.S. v. Salerno*, 481 U.S. 739, 745 (1987); *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 623 (3d Cir. 2013) (applying "no set of circumstances" requirement to Equal Protection claim and explaining that the Supreme Court's repeated admonitions that facial challenges are disfavored and should be considered sparingly); (*see* Def.'s Opp. Mem. 15-16).

Simply put, like in *Congregation Kollel, Inc. v. Twp. of Howell, N.J.*, No. CV 16-2457 (FLW), 2017 WL 637689, at *8 (D.N.J. Feb. 16, 2017), which the Court cites in both Orders (August Order 10; March Opinion 31 n.14), "no allegation in the [FAC] explains why the ordinance cannot be constitutionally applied under any circumstance . . . ." Plaintiffs did not allege that the Old Law could not have "be[en] constitutionally applied under any circumstance[,]" as the August Order states, (August Order 10), nor could they because "it was within Defendant's power to grant Plaintiffs an area variance." (March Opinion 25 n.12). And as the Second Circuit recognized in *Fortress Bible Church v. Feiner*, 694 F.3d 208, 220 (2d Cir. 2012) (cleaned up):

> Though some scattered district court decisions have held that zoning laws by their nature involve individualized assessments and trigger strict scrutiny, the majority of circuits that have addressed this question have concluded that zoning laws with the opportunity for individualized variances are neutral laws of general applicability.

To be sure, Plaintiffs challenge merely a portion of the Village's Old Zoning Code that governed land use requirements for "churches"; Plaintiffs did not even cite the Local Law that enacted that portion of the Zoning Code Plaintiffs challenge.

The essence of Plaintiffs' argument is that the only a particular portion of Village's Zoning

Code should be looked at through a pinhole, and the remainder – which could give them exactly what they purportedly desired in silence – should be ignored.

In sum, the Village's Zoning Code was not discriminatory on its face; Plaintiffs were required to alleged additional indicia of discriminatory intent; as a legislative act, the Village's Zoning Code is presumed constitutional; and Plaintiffs were required to allege "no set of circumstances" under which the Village's Zoning would be valid, which they did not do. (Def.'s Opp. Mem. 19-22.)

**V. THE COURT COMMITTED CLEAR ERROR BY FAILING TO CLASSIFY PLAINTIFFS' REMAINING CLAIMS AS FALLING UNDER *TARTIKOV'S* "CATEGORY TWO" CLAIMS, AND BY FAILING TO DISMISS THESE CLAIMS BECAUSE PLAINTIFFS NEVER DEMONSTRATED ANY ACTUAL COMPENSATORY INJURY CAUSED BY A CONSTITUTIONAL DEPRIVATION WHERE OPERATION OF THE LAW WAS NEVER INVOKED OR APPLIED.**

The March Opinion and August Order committed clear error by failing to dismiss all of Plaintiffs' claims, including their Equal Protection claim, and Plaintiffs' request for compensatory damages, for their lack of standing. Plaintiffs do not have standing to pursue their remaining claims and only remaining form of relief, compensatory damages, based on the mere prior presence of a portion of the Village's land use regulations that was [1] adopted before Plaintiffs' existence, [2] not applied to or enforced against Plaintiffs, and [3] repealed after Plaintiffs' request. Because the August Order simply held the Court's "conclusion" in the March Opinion regarding the Village's standing arguments "is unchanged, (*see* Op. 36-37)" (August Order 14), reference to the March Opinion is required.

**A. Plaintiffs' Claims Fall Under *Tartikov* "Category Two."**

The March Opinion, when focusing on Plaintiffs' standing in the context of ripeness under *Williams County* and *Murphy* (March Opinion 20-34), categorized Plaintiffs' Equal Protection claim, and other various claims, as under *Tartikov* "Category One" because "Plaintiffs allege that

the Old Laws were discriminatory on their face" (*id.* at 31).  In so holding, the Court committed clear error.

The Second Circuit in *Tartikov* distinguished the plaintiffs' claims as falling into two groups.  *Tartikov*, 945 F.3d 109-10.  The first group alleged "that the Village [of Pomona] adopted the four challenged laws at least in part *for the purpose of discriminating against Tartikov on the basis of religion* and that those laws stigmatized the plaintiffs."  *Id.* at 110 (emphasis added).  Thus, this first group alleged that the challenged local laws were enacted *because of the plaintiffs and for the purpose of discriminating against them*, which gave rise to standing.  *Id.*

But the Second Circuit separated this first group ("Category One") alleging purposeful discrimination action directed at the plaintiff, from "Category Two" claims that rested on "infringement of the free exercise of its religion by regulation of the use of its property"; *i.e.*, those allegations "that the four challenged laws prevent it from building and operating a rabbinical college on the property and thus interfere with its religious freedom."  *Id.*[12]

Under both groups, interference with religious freedom was involved.  The critical distinction was that "Category One" concerned allegations of discriminatory conduct expressly taken to discriminate against the plaintiffs on the basis of their religion, while "Category Two" concerned plaintiff's inability to build and operate a rabbinical college, thereby interfering with the plaintiffs' religious freedom.  The latter group is without a Constitutional deprivation absent enforcement or application of the law to them.

Here, all of Plaintiffs' claims fall into "Category Two."  Plaintiffs make no allegation that the Village enacted the Old Law *for the purpose of discriminating against Plaintiffs*.  Certainly,

---

[12] This separation aligns with the requirement that purposeful discrimination requires more than "intent as volition or intent as awareness of consequences"; it involves a decisionmaker's undertaking a course of action "'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group."  *Ashcroft*, 556 U.S. at 676-77.

Plaintiffs' Motion for Reconsideration made clear that their Equal Protection claim does not concern any discriminatory purpose directed at them. Nor could Plaintiffs make such an allegation or argument because Plaintiffs did not exist, or were not present, when the Old Law was adopted. Nor did Plaintiffs allege that the Old Law was applied to them.

Under "Category Two," Plaintiffs, like the plaintiffs in *Tartikov*, lack standing because they never invoked the operation of the challenged portion of the Village's Zoning Code, including taking advantage of the available variance procedure (see Def.'s MTD Mem. 13-14; March Opinion 25). Unlike in *Tartikov*, Plaintiffs never maintained that the Village took any action after learning of Plaintiffs' plans or for the express purpose of discriminating against them.

Rather, Plaintiffs' Equal Protection claim – like all of Plaintiffs' other dismissed claims – alleged that the mere presence of the unenforced "land use regulations . . . *effectively prevented* members of the Orthodox Jewish Community living in the Village . . . , including the Plaintiffs, from operating and attending synagogues ('shuls') in order to engage in religious exercise within the Village" (FAC at ¶¶ 2-3) (emphasis added). The gravamen of Plaintiffs' FAC concerned Plaintiffs' supposed inability to locate sufficiently large land to build and operate a *shul* interfered with their religious freedom.[13] This is precisely *Tartikov* "Category Two" -- "But Tartikov's second group of claims is different. It alleges that the four challenged laws prevent it from building and operating a rabbinical college on the property and thus interfere with its religious freedom." *Tartikov*, 945 F.3d at 110.

### B. Plaintiffs' Lack Standing to Pursue Compensatory Damages.

In any event, whether Plaintiffs' Equal Protection claim is categorized under "Category

---

[13] Plaintiffs admitted to their unencumbered religious practice within the Village (Def.'s MTD Mem. 6-8, 14-15, 26-27; Def.'s Reply MTD Mem. 1-2, 10; Marzolla MTD Decl.), and that there is a "legally permitted shul in [the Village] that "does not meet requirements of the Zoning Law" (FAC at ¶ 56).

One" or "Two," Plaintiffs' FAC must still be dismissed because Plaintiffs lack standing to pursue compensatory relief based on a facial of an unenforced, repealed portion of the Village's Zoning Code. *Tartikov* supports such a ruling, as does the Seventh Circuit's Opinion in *Love Church v. City of Evanston*, 896 F.2d 1082, 1086 (7th Cir. 1990), where the Court dismissed the plaintiff church's complaint on the basis that the church lacked standing because, *inter alia*, the mere possibility that, absent the challenged law, plaintiff could have more easily acquired rental property was speculative and could not constitute a distinct and palpable injury for purposes of standing.

Indeed, it is well-established that "[a] plaintiff must demonstrate standing for each claim he seeks to press and *for each form of relief* that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (emphasis added); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (standing must be demonstrated for "each form of relief"); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("Standing is not dispensed in gross."). And the purpose of damages under § 1983 is to compensate injuries caused by a constitutional deprivation, *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986); damages based upon the abstract or subject "value" or "importance" of a constitutional right are impermissible, *id.* at 309-10. (See also Def.'s MTD Mem. 25 n.21.)

Plaintiffs did not allege that the Old law was enforced against them, and they did not come forward with any legal authority that recognizes standing to pursue compensatory damages based on the mere existence of an unenforced land use regulation. Accordingly, the Village argued on its Motion to Dismiss that Plaintiffs lacked standing to recover compensatory damages for a facial challenge on the theory that the mere presence – not enforcement or "substantial" threat of enforcement – of a repealed portion of the Village's Zoning Code alone is insufficient. (Def.'s

MTD Mem. 2-4, 13-14, 24-25; Def.'s Reply MTD Mem. 3-5.)[14]

The March Opinion addressed whether Plaintiffs could seek damages based on a facial challenge alone but, as noted above, did so in the ripeness context under the *Williamson County* and *Murphy* final decision requirement. (March Opinion 26-34.) The Court did not examine the Village's argument that Plaintiffs suffered no compensable injury-in-fact traceable to the mere presence of the Old Law. The March Opinion acknowledged that "[i]n nearly every case cited by Plaintiff regarding their ability to seek damages based on a facial challenge (*see* Pls.' Mem. 22, 25), "the plaintiff had actually applied for and was denied a permit [or a waiver] under the [challenged] ordinance[.]" (March Opinion 27.)[15] The March Opinion also held that *Tartikov*'s statement that "buying into an injury in fact does not suffice for Article III standing . . . is *dicta*, and is not binding." (*Id.* at 36.) The Court said that *Tartikov* cites no authority to support its statement, and the Court is not aware of any." (*Id.*) The Court further explained that it had generalized concerns over challenges under RLUIPA: "A municipality insulated from challenges brought by prospective purchasers of land could bar all religious land uses (exempting current religious uses) and avoid liability, contravening RLUIPA's requirement that it be 'construed in favor of a broad protection of religious exercise.' 42 U.S.C. § 2000cc-3(g)." (*Id.* at 37.)

First, *Tartikov*'s statement aligns with New York law, which holds that any economic injury

---

[14] The Court's rulings ignore controlling Supreme Court authority that requires an injury resulting from a challenged law's "operation or enforcement" or a "substantial" likelihood of future enforcement to establish standing, both of which Plaintiffs' FAC failed to satisfy. The Court did not address that "[t]he party who invokes the power [of Article III Courts] must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining *some direct injury as the result of its enforcement*, and not merely that he suffers in some indefinite way in common with people generally." *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) (emphasis added); *see also Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's *operation or enforcement*.") (emphasis added). And "[i]n the absence of contemporary enforcement . . . a plaintiff claiming standing must show that the likelihood of future enforcement is 'substantial.'" *California v. Texas*, 141 S. Ct. 2104, 2114 (2021).

[15] The March Opinion recognized the Village's power to grant an area variance. (March Opinion 25.)

caused by a zoning restriction is self-imposed and unrecoverable where a plaintiff acquires property when the zoning restriction was in effect. *See, e.g.*, *Doyle v. Amster*, 79 N.Y.2d 592, 597 (1992) ("[I]nasmuch as the applicable zoning restrictions were in effect when [plaintiff] purchased the property, any claimed economic hardship is self-imposed"); *Lim-Kim v. Zoning Bd. of Appeals of Vill. of Irvington*, 185 A.D.2d 346, 347 (2d Dept 1992) ("Hardship is self-created, for zoning purposes, where the applicant for a variance acquired the property subject to the restrictions from which he or she seeks relief."); *People ex rel. Fordham Manor Ref. Church v. Walsh*, 244 N.Y. 280, 288 (1927) (explaining that the purchaser is confronted by "no element of the unexpected or incalculable to aggravate his plight."). The foregoing is consistent with *Tartikov*'s statement that "buying into an injury in fact does not suffice for Article III standing."

Second, as other Circuits have held, the mere presence of an alleged unconstitutional law is insufficient for standing. It does not result in a compensable injury-in-fact, especially where the alleged unconstitutional law existed decades before the plaintiff's existence and there was a variance procedure available. (Def.'s MTD Mem. 13-14.) *See, e.g., Petra Presbyt. Church v. Vil. of Northbrook*, 489 F.3d 846, 850 (7th Cir. 2007) ("Mere knowledge of the existence of an invalid law that might be applied to one is not an injury . . . ."); *CMR D.N. Corp.*, 703 F.3d at 627 ("In keeping with our obligations to not entertain speculative claims . . . we hold that compensatory damages are not available to a plaintiff challenging a zoning ordinance under the theory that mere enactment of an ordinance harmed such plaintiff, unless the plaintiff applies for and is denied a permit under the offending statute."); *DA Mortgage, Inc. v. City of Miami Beach*, 486 F.3d 1254 (11th Cir. 2007) (holding that challenges to ordinances did not give rise to compensatory damages if the ordinance was not enforced, nothing that the plaintiff there "did not allege any facts that would connect its damage claim to a City enforcement proceeding . . . ."). Indeed, permitting a

litigant to recover compensatory damages under a facial challenge theory based on the mere existence of an alleged unconstitutional law would frustrate the well-established law that "conjectural or hypothetical" injuries do not suffice under Article III, authority from Sister Circuits, and *Tartikov*'s holding that the plaintiff lacked standing because it "never submitted a formal proposal for the building project, applied for a permit, or engaged in any other conduct that would implicate or invoke the operation of the challenged zoning laws." *Tartikov*, 945 F.3d at 110.

Finally, and respectfully, the Court RLUIPA concerns are easily addressable. A municipality barring all religious uses would not be "insulated" from challenges by prospective purchasers. A prospective purchaser could seek *prospective* declaratory and injunctive relief, and if the challenged law/policy is enforced or applied in a manner that causes concrete compensatory injury, damages. Where, however, like here, [1] a litigant moves into a municipality (or comes into existence as a corporation) under an existing zoning code, [2] the litigant brings to the municipality's attention criticism regarding certain provisions of the existing zoning code (and tells the municipality that it will defend the against actions challenged the new zoning code), and [3] the municipality changes its zoning code to the litigant's liking, the litigant lacks standing to pursue compensatory relief based on the mere existence of certain provisions of the unenforced old zoning code that existed for decades before the litigant's arrival. Simply put, the litigant should not be allowed to complain of economic harm when it enters a municipality under an existing zoning code based on the mere prior presence of the zoning code. Holding otherwise would open the floodgates to litigation based on hypotheticals involving no true case or controversy.

## **CONCLUSION**

For the foregoing, the Village respectfully requests that the Court grant its Motion, and dismisses the remainder of Plaintiffs' FAC.

Dated: August 27, 2021
     South Nyack, New York

**FEERICK NUGENT MACCARTNEY, PLLC**

By: /s/ Donald J. Feerick        
     Donald J. Feerick, Jr.
     Mary E. Marzolla
     Patrick A. Knowles

*Attorneys for Defendant Village of Chestnut*
  *Ridge, New York*