UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ORTHODOX JEWISH COALITION OF
CHESTNUT RIDGE, *et al.*,

                                        Plaintiffs,

            v.

VILLAGE OF CHESTNUT RIDGE, NEW
YORK,

                                        Defendant.

No. 19-CV-443 (KMK)

ORDER

---

KENNETH M. KARAS, United States District Judge:

Before the Court are Defendant's Motions for Reconsideration and Clarification (the "Reconsideration Motion"), (*see* Def.'s Not. of Mot. for Recons. & Clarification ("Not. of Mot.") (Dkt. No. 93)), and to Request Certification for Interlocutory Appeal (the "Request to Certify Appeal"), (*see* Def.'s Mot. Requesting Certification of Orders for Interlocutory Appeal ("Request to Certify Appeal") (Dkt. No. 91)).[1] Defendant seeks reconsideration and clarification of the Court's August 13, 2021 Order ("August Order"), (*see* Order ("Aug. Order") (Dkt. No. 88)), and March 31, 2021 Opinion & Order ("March Opinion"), (*see* Op. & Order ("March Op.") (Dkt. No. 80)), insofar as the August Order allowed Plaintiffs' previously-dismissed Equal Protection and State Law claims (Counts III and VIII of Plaintiffs' First Amended Complaint ("FAC"), (*see* First Am. Compl. ("FAC") ¶¶ 158–60, 169–71 (Dkt. No. 29))) to proceed, (*see* Not. of Mot.). Defendant also requests in the alternative that the Court certify the August Order

---

[1] Together, the "Motions."

and March Opinion for interlocutory appeal.  (*See* Request to Certify Appeal.)  For the foregoing

reasons, both Motions are denied.

## I.  Background

The Court assumes familiarity with the facts alleged in the FAC as discussed in the

March Opinion.  (*See* March Op. 2–6.)  Given the instant disputes, however, the Court

reemphasizes the most pertinent allegations.

Plaintiffs—who, after the March Opinion, consist of three Orthodox Jewish

congregations (the "Congregations") and two individuals (the "Individual Plaintiffs"), each of

whom is a member of one of the plaintiff Congregations, (*see* FAC ¶¶ 8–12, 97–98; *see also*

March Op. 37–39 (dismissing claims brought by Orthodox Jewish Coalition of Chestnut Ridge,

an association of seven Orthodox Jewish congregations))—allege that Defendant's former land

use regulations (the "Old Law") discriminated against them on the basis of their religion, (*see*

*generally* FAC).  Specifically, Plaintiffs allege that the Old Law "created onerous zoning

requirements to be able to use property for religious purposes, including a five-acre minimum lot

area requirement and subjecting such uses to the legislative discretion of the Village's Board of

Trustees, and treated religious assembly and institutional land uses differently and worse than

myriad nonreligious assembly and institutional uses in the Village."  (FAC ¶ 1; *see also id.*

¶¶ 117 ("[T]he [Old Law] contained various onerous and discriminatory land use regulations

that . . . discriminated against the religious land use."); 119 ("The [Old Law] treated Churches on

less than equal terms as practically every other nonreligious assembly and institutional use in the

Village."); 131 ("In general, the [Old Law] treated nonreligious assembly and institutional land

uses more favorably than places of worship.").)  As a result of these restrictions, Plaintiffs allege

that they suffered injuries, both in the form of burdens on their religious practice, (*see id.* ¶¶ 64–

66, 70, 78–81, 88–91), and in the form of economic damages, (*see id.* ¶¶ 67–69, 71–72, 82–84, 92–96). Plaintiffs specifically allege that the Congregations have "lost members and membership dues because the rented facilities"—that the Congregations were forced to use in lieu of permanent facilities because of the Old Law—"are not centrally located," have "incurred fines from the Village and ha[ve] had to defend [themselves] against violations regarding [their] temporary synagogue locations," and have "experienced economic losses of donations from potential donors that were wary of supporting a temporary shul location, but would otherwise have supported a permanent place of worship." (*Id.* ¶¶ 67–68, 72, 82–84, 92–93, 96 (emphasis in original).) Plaintiffs further allege that "[m]embers" of the Congregations—which would include the Individual Plaintiffs—have "incurred expenses because they were forced to rent social halls for special occasions." (*Id.* ¶¶ 71, 83, 95.)

In the FAC, Plaintiffs brought claims under the First and Fourteenth Amendments of the United States Constitution, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), and the New York State Constitution, and sought declaratory and injunctive relief in addition to damages. (*See id.* ¶¶ 153–171 & at 27–28.) In the March Opinion—as relevant to the instant Motions—the Court dismissed as moot Plaintiffs' claims for prospective relief, leaving only Plaintiffs' claims for damages. (*See* March Op. 11–19.) The Court dismissed as unripe all of Plaintiffs' as-applied challenges and Plaintiffs' facial challenges via their First Amendment free speech, First Amendment free exercise, RLUIPA substantial burden, and RLUIPA exclusions and limits claims based on the Second Circuit's opinion in *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 945 F.3d 83 (2019) ("*Tartikov*"). (*See* March Op. 20–34.) However, the Court found Plaintiffs' facial challenges via their Fourteenth Amendment equal protection, RLUIPA nondiscrimination, RLUIPA equal terms, and

3

New York state constitutional claims to be ripe, though the Court ultimately dismissed Plaintiffs'

RLUIPA claims, finding that RLUIPA's safe harbor provision applied.  (*See id.* at 31, 39–41.)

This set of holdings left only Plaintiffs' claim for damages based on their facial challenge

to the Old Law under the Fourteenth Amendment's Equal Protection Clause (Count III; the

"Equal Protection" claim, (FAC ¶¶ 158–60)) and under Article I § 3 of the New York State

Constitution (Count VIII; the "State Law" claim, (*id.* ¶¶ 169–71)).  In the March Opinion, the

Court dismissed Plaintiffs' Equal Protection claim because the Court found that Plaintiffs failed

to allege a discriminatory purpose, and having dismissed all of Plaintiffs' federal claims,

declined to exercise supplemental jurisdiction over the State Law claim.  (*See* March Op. 42–43.)

On April 14, 2021, Plaintiffs filed a Motion for Reconsideration, seeking reconsideration

of the March Opinion insofar as it dismissed Counts III and VIII of the FAC.  (*See* Pls.' Not. of

Mot. for Recons. (Dkt. No. 81); Pls.' Mem. of Law in Supp. of Pls.' Mot. for Recons. (Dkt.

No. 82).)  In the August Order, the Court granted Plaintiffs' Motion for Reconsideration, finding

that the Court had committed clear error in holding that Plaintiffs were required to allege that the

Old Law was enacted with a discriminatory purpose, since Plaintiffs had alleged that the Old

Law was facially discriminatory.  (*See* Aug. Order 4–5; *see also id.* at 4 ("[A] plaintiff who

alleges a policy that is discriminatory on its face is not required to make any further allegations

of discriminatory intent or animus." (quoting *Juarez v. Nw. Mut. Life Ins. Co.*, 69 F. Supp. 3d

364, 370 (S.D.N.Y. 2014))).)  In so doing, the Court rejected a series of additional arguments

that Defendant had made in opposing Plaintiffs' Motion for Reconsideration, including various

arguments concerning the standard of review applicable to a motion for reconsideration;

substantive arguments concerning Plaintiffs' alleged failure to identify similarly situated

comparators and the Old Law's alleged facial neutrality; and challenges based on the statute of

limitations, the fact that the Old Law pre-dated Plaintiffs' arrival, and Plaintiffs' standing. (*See id.* at 5–14.) As a result, the Court allowed Plaintiffs' Equal Protection and State Law claims to proceed. (*See id.* at 14.)

In the instant Reconsideration Motion, Defendant makes a number of arguments, many of which are restatements of those advanced in Defendant's Opposition to Plaintiffs' Motion for Reconsideration. (*See* Def.'s Mem. of Law in Supp. of Def.'s Mot. for Recons. & Clarification ("Def.'s Mem.") (Dkt. No. 94); *see also* Def.'s Mem. of Law in Opp'n to Pls.' Mot. for Recons. (Dkt. No. 84).) Defendant argues that: (1) the Court committed clear error by failing to dismiss the claims brought by the Individual Plaintiffs, because the Individual Plaintiffs never alleged that they suffered retrospective damages, (*see* Def.'s Mem 4; Def.'s Mem. of Law in Further Supp. of Mot. for Recons. & Clarification ("Def.'s Reply Mem.") 1–2 (Dkt. No. 110)); (2) the Court improperly allowed Plaintiffs to take a "second bite of the apple" by granting Plaintiffs' Motion for Reconsideration when Plaintiffs failed to cite any controlling authority demonstrating that the March Opinion was clearly erroneous, (*see* Def.'s Mem. 4–7, 14–16); (3) the Court erred in finding that Plaintiffs had plausibly alleged that the Old Law was discriminatory on its face, and thus, that Plaintiffs were required to allege that the Old Law was enacted with discriminatory intent, which Plaintiffs failed to do, (*see id.* at 7–11; Def.'s Reply Mem. 2–5); (4) the Court erred in finding that Defendant had waived its statute of limitations defense by failing to raise it in its Motion To Dismiss, (*see* Def.'s Mem. 11–14; Def.'s Reply Mem. 5–7); (5) the Court "overlooked" the "critical importance" of Defendant's argument that Plaintiffs lacked standing to facially challenge the Old Law since the law pre-dated Plaintiffs' arrival in Chestnut Ridge, (*see* Def.'s Mem. 14; Def.'s Reply Mem. 7–9); (6) the Court erroneously shifted Plaintiffs' burden of proof onto Defendant, (*see* Def.'s Mem. 16–19; Def.'s Reply Mem. 10); and (7) the Court

committed clear error when it failed to dismiss Plaintiffs' Equal Protection claim under *Tartikov*, (*see* Def.'s Mem. 19–25; Def.'s Reply Mem. 9–10).

In the Request to Certify Appeal, Defendant identifies what Defendant describes as four controlling questions of law:  (1) "Whether a plaintiff has standing to pursue an Equal Protection facial challenge to a repealed local law where the plaintiff does not allege that they ever invoked the operation of the local law or that the local law was ever applied to them?"; (2) "Whether a plaintiff may recover compensatory damages based on an Equal Protection facial challenge to a repealed local law due to the mere prior existence of the local law?"; (3) "Whether a plaintiff has standing to pursue an Equal Protection facial challenge to a local law that pre-dated plaintiff's existence and/or presence, when the local law was never applied to plaintiff?"; and (4) "Whether the three-year statute of limitations application to § 1983 claims bars a plaintiff from pursuing an Equal Protection facial challenge to a portion of a local law enacted decades earlier?"  (Request to Certify Appeal 2.)  Defendant argues that there is a substantial ground for difference of opinion on each of these questions, the resolution of which would materially advance the ultimate termination of the case.  (*Id.* at 3–6.)

The Court assesses each of Defendant's Motions in turn.

## II.  Reconsideration Motion

### A.  Standard of Review

As this Court explained in the August Order, "[m]otions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."  (Aug. Order 3 (quoting *Arthur Glick Truck Sales, Inc. v. Stuphen E. Corp.*, 965 F. Supp. 2d 402, 404 (S.D.N.Y. 2013), *aff'd*, 577

F. App'x 11 (2d Cir. 2014)).)  The standard for such motions is "strict" and "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257–58 (2d Cir. 1995); *see also In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2017 WL 3443623, at *1 (S.D.N.Y. Aug. 9, 2017) ("It is well established that the rules permitting motions for reconsideration must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [c]ourt." (citation omitted)); *Leith v. Emerson*, No. 05-CV-7867, 2007 WL 9818914, at *2 (S.D.N.Y. Nov. 20, 2007) ("Rule 6.3 is narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly [considered] by the court." (quotation marks omitted)).  A movant may not "rely on facts, issues, or arguments that were previously available but not presented to the court." *Indergit v. Rite Aid Corp.*, 52 F. Supp. 3d 522, 523 (S.D.N.Y. 2014).  Nor is a motion for reconsideration "the proper avenue for the submission of new material." *Sys. Mgmt. Arts Inc. v. Avesta Techs., Inc.*, 106 F. Supp. 2d 519, 521 (S.D.N.Y. 2000).  "Rather, to be entitled to reconsideration, a movant must demonstrate that the [c]ourt overlooked controlling decisions or factual matters that were put before it on the underlying motion, which, had they been considered might reasonably have altered the result reached by the court." *Arthur Glick*, 965 F. Supp. 2d at 405 (citation omitted); *Shrader*, 70 F.3d at 257 (same).  In other words, "[a] motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Alvarez v. City of New York*, No. 11-CV-5464, 2017 WL 6033425, at *2 (S.D.N.Y. Dec. 5, 2017) (quotation marks omitted) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)); *see also Intergit*, 52 F. Supp. 3d at 523 (same).

B.  Analysis

At the outset, the Court reminds the Parties (particularly Defendant) that despite the age

of this Action and this specific dispute, this case is still in a motion to dismiss posture, and thus,

the standards governing motions to dismiss, not motions for summary judgment, govern the

disposition of this dispute.  Accordingly, Plaintiffs' burden was to allege "only enough facts to

state a claim to relief that is plausible on its face," "nudg[ing] [their] claims across the line from

conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  (*See also*

March Op. 9–11.)  As such, Defendant's repeated citation to cases in summary judgment or other

post-pleading postures to argue that Plaintiffs have failed to meet their burden is, at best,

unhelpful.[2]  *See, e.g.*, *Linares v. McLaughlin*, 423 F. App'x 84, 85 (2d Cir. 2011) (summary

order) ("[D]ifferent standards apply to Rule 12(b)(6) motions to dismiss and Rule 56 motions for

summary judgment.  On a motion to dismiss, a district court must accept all allegations in the

complaint as true and draw all inferences in the non-moving party's favor. . . . Even after

denying a motion to dismiss, a district court may still grant a summary judgment motion if, based

on the evidence presented, there was no genuine dispute as to any material fact and the moving

party was entitled to judgment as a matter of law." (quotation marks omitted)); *see also Bikur*

*Cholim, Inc. v. Village of Suffern*, 664 F. Supp. 2d 267, 273 (S.D.N.Y. 2009) ("The function of a

---

[2] *See, e.g.*, Def.'s Mem. 9–10 (arguing that Plaintiffs failed to plead sufficient facts to allege that Defendant adopted the Old Law for the purpose of discriminating on the basis of religion and citing *C.L.U.B. v. City of Chicago*, 157 F. Supp. 2d 903 (N.D. Ill. 2001) (summary judgment), *Christian Gospel Church, Inc. v. City & County of San Francisco*, 896 F.2d 1221 (9th Cir. 1990) (appeal from grant of summary judgment), *Grace Union Methodist Church v. City of Cheyenne*, 451 F.3d 643 (10th Cir. 2006) (petition for rehearing of appeal from grant of summary judgment), *Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398 (6th Cir. 1999) (appeal from grant of summary judgment), and *Rector, Wardens, & Members of Vestry of St. Bartholomew's Church v. New York*, 914 F.2d 348 (2d Cir. 1990) (appeal from bench trial verdict)).

motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" (quoting *Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984))).

The Court also reminds Defendant that while Defendant is challenging the Court's August Order on Plaintiffs' Motion for Reconsideration, the motion currently before the Court is Defendant's Reconsideration Motion, and thus, the "'heavy burden' required to satisfy the 'very strict' standard on a motion for reconsideration," (Def.'s Mem. of Law in Opp'n to Pls.' Mot. for Recons. 1), is now on Defendant.  And, as Defendant observed in opposing Plaintiffs' Motion for Reconsideration and as the Court explained in more detail above, "[a] motion for reconsideration is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources,'" which may only be granted to "correct an obvious and glaring mistake."  (*Id.* at 1–2 (quoting *Leith*, 2007 WL 9818914, at *2).)

With these considerations in mind, the Court addresses each of Defendant's arguments separately to the extent necessary.

### 1.  Plaintiffs' Satisfaction of Their Burden on Reconsideration

Defendant raises several arguments concerning Plaintiffs' alleged failure to satisfy their burden in moving for reconsideration of the Court's March Opinion.  None is persuasive.  First, Defendant argues that it was "fundamentally unfair" for the Court to permit Plaintiffs to argue in their Motion for Reconsideration that the FAC alleged that the Old Law was facially neutral. (Def.'s Mem. 5–7.)  In so doing, Defendant repeats its argument advanced in opposing Plaintiffs' Motion for Reconsideration, (Def.'s Mem. of Law in Opp'n to Pls.' Mot. for Recons. 3): that Plaintiffs' failure to respond to Defendant's argument in its Motion To Dismiss that "Plaintiffs do not allege that the [Old Law] was enacted with a discriminatory purpose," (Def.'s Mem. of

Law in Supp. of Mot. To Dismiss 3 (Dkt. No. 62)), precluded Plaintiffs from seeking reconsideration of the March Opinion, (Def.'s Mem. 6–7).  But in arguing that the Court, by granting Plaintiffs' Motion for Reconsideration, "engage[d] in the unpermitted practice of 'taking a second bite at the apple,'" (*id.* at 6 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1988)), Defendant urges the Court to allow *Defendant* to "relitigate an issue already decided," *Shrader*, 70 F.3d at 257.  The Court has already considered Defendant's argument that Plaintiffs should have responded to its argument while opposing Defendant's Motion To Dismiss, and the Court rejected it.  (*See* Aug. Order 5.)  Defendant fails to "identif[y] an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *Alvarez*, 2017 WL 6033425, at *2 (quotation marks omitted), and thus, the Court rejects this argument for the same reasons the Court rejected this argument in the August Order.

Next, Defendant argues that "Plaintiffs did not cite any controlling authority that [the March Opinion] was clearly erroneous," and therefore failed to meet their burden on reconsideration, and that "the only applicable authority from this District, *Bikur Cholim* . . . dismissed the plaintiff's similarly presented facial Equal Protection claim."  (Def.'s Mem. 6; *see also id.* at 14–16.)  However, as the Court explained in the August Order, Plaintiffs identified "ample controlling authority showing that the March Opinion's ruling as to Plaintiffs' Equal Protection claim was clearly erroneous," (Aug. Order 6), including the very first case cited by both Plaintiffs in their Motion for Reconsideration and the Court in the August Order: *Tartikov*.  (*See* Pls.' Mem. of Law in Supp. of Pls.' Mot. for Recons. 2 (Dkt. No. 82); Aug. Order 4.)  *Tartikov*—a 2019 decision from the Second Circuit, and thus, clearly "controlling"—states that "[the Second Circuit] has generally recognized three types of equal protection violations:

(1) a facially discriminatory law; (2) a facially neutral statute that was adopted with a discriminatory intent and applied with a discriminatory effect; and (3) a facially neutral law that is enforced in a discriminatory manner." *Tartikov*, 945 F.3d at 110–111 (ellipsis omitted). Plaintiffs and the Court also cited to *Hayden v. County of Nassau*—a 1999 decision from the Second Circuit, and thus, also "controlling"—which states that "intentional discrimination can be demonstrated . . . [by] a law or policy [that] is discriminatory on its face." 180 F.3d 42, 48 (2d Cir. 1999). (*See* Pls.' Mem. of Law in Supp. of Pls.' Mot. for Recons. 2; Aug. Order 4, 5.) It was on this basis that the Court properly granted Plaintiffs' Motion for Reconsideration.[3]

## 2.  Claims Brought by the Individual Plaintiffs

Defendant's argument that the claims brought by the Individual Plaintiffs must be dismissed because the Individual Plaintiffs never alleged that they suffered retrospective injury nor sought retrospective damages is also unavailing. (*See* Def.'s Mem. 4; Def.'s Reply Mem. 1–2.)  The FAC clearly alleges, inter alia, that "[Individual] Plaintiff Abraham Willner is . . . affiliated with Congregation Birchas Yitzchok," and "[m]embers of Congregation Birchas Yitzchok ha[ve] incurred expenses because they were forced to rent social halls for special occasions" due to the Old Law, and that "[Individual] Plaintiff Tzvi Miller is . . . affiliated with Congregation Dexter Park," and "[m]embers of Congregation Dexter Park have incurred expenses because they were forced to rent social halls for special occasions" due to the Old Law. (FAC ¶¶ 83, 95, 97, 98.)  Further, the FAC seeks relief in the form of "[a]n award of

---

[3] Defendant has repeatedly urged the Court that *Bikur Cholim* is analogous to the instant Action and mandates dismissal.  (*See* Def.'s Mem. 6, 14; Def.'s Reply Mem. 7–8; Def.'s Mem. of Law in Opp'n to Pls.' Mot. for Recons. 5–6.)  However, this Court has already explained that *Bikur Cholim* is inapposite.  (*See* Aug. Order 11–13.)  Defendant cannot use its Reconsideration Motion to "mak[e] repetitive arguments on issues that have already been thoroughly [considered] by the [C]ourt."  *Leith*, 2007 WL 9818914, at *2.

compensatory damages against Defendant in favor of the Plaintiffs," making no distinction between the Congregations and the Individual Plaintiffs.  (*Id.* at 27–28.)  Thus, Defendant's assertion that the Individual Plaintiffs never alleged that they suffered retrospective injury nor sought retrospective damages is plainly inaccurate.

When Plaintiffs directed Defendant to these allegations in the FAC in opposing the Reconsideration Motion, (*see* Pls.' Mem. of Law in Opp'n to Def.'s Mot. for Recons. & Clarification ("Pls.' Mem.") 1–2 (Dkt. No. 109)), Defendant's only response was to argue that "[t]he allegations in the FAC are conclusory and insufficient" because "[t]here is no allegation that [the Individual Plaintiffs] or any particular individual congregation member has been forced to rent social halls for special occasions" since "[n]o date(s) of occurrence(s) are supplied," (Def.'s Reply Mem. 2).  The Court is unaware of any authority requiring a plaintiff to provide the specific dates on which damages were accrued in a complaint in order to avoid dismissal, nor has Defendant provided any.  To the contrary, the Supreme Court has instructed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" which "need only give the defendant fair notice of what the claim is and the grounds upon which it rests," and thus, that "[s]pecific facts are not necessary." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotation marks and ellipsis omitted)); *cf. Cummings v. Brookhaven Sci. Assocs., LLC*, No. 11-CV-1299, 2011 WL 6371753, at *9 (E.D.N.Y. Dec. 20, 2011) (explaining, in Title VII context, that a "complaint should not be dismissed for failure to plead the dates of the alleged discrimination" (quotation marks omitted) (collecting cases)); *ADL, LLC v. Tirakin*, No. 06-CV-5076, 2010 WL 3926135, at *4 (E.D.N.Y.

Sept. 29, 2010) (explaining, in case assessing an accountant's duty to a non-contractual party, that "[s]pecific dates [and] times . . . are not required at the pleading stage").[4]

### 3.  Plaintiffs' Equal Protection Claim

Defendant also raises a series of substantive arguments, each of which ultimately urge the Court to dismiss Plaintiffs' Equal Protection claim.  While not necessarily stated as such, Defendant argues that: (1) Plaintiffs failed to allege that the Old Law was either facially discriminatory or enacted with discriminatory purpose and thus, failed to state an equal protection claim; (2) Plaintiffs lack standing to challenge the Old Law because the Old Law was enacted before Plaintiffs arrived in Chestnut Ridge, thus Plaintiffs "bought into" their injury-in-fact; (3) Plaintiffs' Equal Protection claim is unripe (or, alternatively, Plaintiffs lack standing to bring it), because it does not fall into the exception to the finality requirement as explained by the Second Circuit in *Tartikov*; (4) Plaintiffs lack standing to challenge the Old Law because Plaintiffs' alleged damages are based on the "mere presence" of the Old Law, which is insufficient to establish actual injury as required for Article III standing; and (5) Plaintiffs' claims are subject to only rational basis review and fail under this standard.  (*See generally* Def.'s Mem; Def.'s Reply Mem.)

First, the Court reaffirms its ruling that Plaintiffs have adequately alleged that the Old Law was facially discriminatory.  (*See* Aug. Order 11–13.)  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of*

---

[4] Tellingly, Defendant failed to cite to any authority whatsoever to support this argument in its Reconsideration Motion.  (*See* Def.'s Mem. 4.)

*Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam) (citation omitted).  Here, Plaintiffs have

alleged, inter alia, that: (1) "the [Old Law] contained various onerous and discriminatory land

use regulations that . . . discriminated against the religious land use," (2) "[v]arious other

assembly and institutional uses are permitted in the Village and are subject to less onerous Bulk

Regulations," (3) "[f]or each type of bulk regulation, the Challenged Laws treated various

nonreligious assembly and institutional land uses better than 'Churches,'" (4) "[i]n general, the

[Old Law] treated nonreligious assembly and institutional land uses more favorably than places

of worship," and (5) "[n]onreligious institutional and assembly land uses permitted in the Village

that are permitted by right or as a Conditional Use were treated on better terms than Churches."

(FAC ¶¶ 117, 123, 130, 131, 145; *see also* Pls.' Mem. 17–18.)  Tellingly, Defendant fails to

meaningfully engage with these allegations in either the Reconsideration Motion itself or in

Defendant's Reply, instead simply repeating the standard for facial discrimination, (*see* Def.'s

Mem. 8), and otherwise focusing on why Plaintiffs have failed to allege that the Old Law was

enacted with discriminatory intent, (*see, e.g., id.* at 9–11; Def.'s Reply Mem. 3–5).[5]  The entirety

of Defendant's argument on this point appears to be that "[Defendant]'s Opposition to Plaintiffs'

Motion for Reconsideration provided a litany of cases where laws were found to be facially

discriminatory, and none of the challenged laws in those cases were remotely close to the [Old

Law]."  (Def.'s Mem. 9.)  But given that Defendant provided this "litany" of cases in its

---

[5] The Court reminds Defendant that the Court ruled that Plaintiffs had failed to allege
discriminatory purpose in the March Opinion, (*see* March Op. 42–43), and this portion of the
March Opinion was unchallenged by Plaintiffs and undisturbed by the August Order.  Rather, the
August Order explained that the Court had erred in holding that Plaintiffs were required to allege
that the Old Law was enacted with a discriminatory purpose, since Plaintiffs alleged that the Old
Law was facially discriminatory.  (Aug. Order 4–5.)  Thus, Defendant, Plaintiffs, and the Court
all agree that Plaintiffs have not alleged that the Old Law was enacted with discriminatory
purpose, but this is not the theory on which Plaintiffs are proceeding.

Opposition to Plaintiffs' Motion for Reconsideration, this Court has already considered these cases; again, Defendant cannot use its Reconsideration Motion to "mak[e] repetitive arguments on issues that have already been thoroughly [considered] by the [C]ourt." *Leith*, 2007 WL 9818914, at *2.

Second, Defendant has failed to meet its burden to attain reconsideration of the Court's Order that Plaintiffs may facially challenge the Old Law despite the fact that the Old Law was enacted prior to Plaintiffs' arrival in Chestnut Ridge. Defendant's main argument on this point is that "[t]his argument was meaningfully advanced and addressed in the March Opinion and was reiterated on reconsideration" and "on [r]econsideration, the Court overlooked its critical importance." (Def.'s Mem. 14.) Clearly, Defendant has failed to "identif[y] an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *Alvarez*, 2017 WL 6033425, at *2 (quotation marks omitted), and the Court declines to grant reconsideration.[6]

Third, the Court did not commit clear error in categorizing Plaintiffs' Equal Protection claim as "Category One" under *Tartikov*. Defendant argues that the "critical distinction" between what this Court termed "Category One" claims (for which the Second Circuit explained finality was not required, since discrimination constitutes an actual and concrete injury, (*see*

---

[6] Defendant also incorporates this point into later portions of its brief, in which it argues (1) that Plaintiffs cannot allege that the Old Law was enacted for the purpose of discriminating against Plaintiffs since "Plaintiffs did not exist, or were not present, when the Old Law was adopted," and (2) that "Plaintiffs suffered no compensable injury-in-fact traceable to the mere presence of the Old Law" and Plaintiffs cannot "buy into an injury-in-fact." (Def.'s Mem. 20–23.) Defendant, again, misses the point. First, Plaintiffs are proceeding on the theory that the Old Law was facially discriminatory, and thus do not need to allege discriminatory intent. *See supra* n.5. Second, Plaintiffs' claimed injuries do not stem from the "mere presence" of the Old Law, *see infra*, and, in any event, and Defendant fails to offer any authority on which to base this request for reconsideration, instead simply arguing in a conclusory fashion that "[t]he Court did not examine" this argument, (*but see* March Op. 36–37).

March Op. 29–30)) and "Category Two" claims (for which the Second Circuit explained finality

was required, (*see id.* at 30)) is that "'Category One' concerned allegations of discriminatory

conduct expressly taken to discriminate against the [*Tartikov*] plaintiffs on the basis of their

religion, while 'Category' Two' concerned [the *Tartikov*] plaintiff[s'] inability to build and

operate a rabbinical college, thereby interfering with the [*Tartikov*] plaintiffs' religious

freedom," (Def.'s Mem. 20).  Defendant then argues that "all of Plaintiffs' claims fall into

'Category Two[]' [since] Plaintiffs make no allegation that the Village enacted the Old Law *for

the purpose of discriminating against Plaintiffs*."  (*Id.* (emphasis in original).)  The Court agrees

with Plaintiffs that Defendant "fails to comprehend the nature of Plaintiffs' claim," (Pls.' Mem.

15), and adds that Defendant reads the Second Circuit's decision in *Tartikov* too literally.

Claims that fall into "Category One" are those involving allegations of intentional

discrimination, which, in *Tartikov*, were claims based on allegations that the zoning ordinances

in question were enacted with the intent to discriminate against the *Tartikov* plaintiffs.  *See

Tartikov*, 945 F.3d at 110–11.  However, as this Court has explained, "'intentional discrimination

can [also] be demonstrated . . . [by] a law or policy [that] is discriminatory on its face.'"  (Aug.

Order 5 (quoting *Hayden*, 180 F.3d at 48).)  As such, by alleging that the Old Law was facially

discriminatory, Plaintiffs have successfully alleged "Category One" claims, and need not satisfy

finality; Plaintiffs' Equal Protection claim is ripe, and Plaintiffs have standing to raise it.  (*See id.*

at 4–5; *see also* March Op. 30–31.)

Fourth, the Court disagrees that Plaintiffs seek "damages based upon the abstract or

subject[ive] 'value' or 'importance' of a constitutional right," and thus lack Article III standing

for want of a concrete injury.  (Def.'s Mem. 22.)  As this Court explained in the March Opinion,

Plaintiffs have alleged that the Old Law "cost the Congregations members and membership dues,

16

as well as donations, and have forced them to rent social halls for communal gatherings," which are "economic costs [that] create standing." (March Op. 35 (FAC citations omitted) (citing *Dhinsa v. Krueger*, 917 F.3d 70, 78 (2d Cir. 2019) (noting that "monetary loss is a quintessential injury in fact, and even a small financial loss suffices to establish standing" (quotation marks omitted))).) Moreover, because Plaintiffs' Equal Protection claim properly falls within *Tartikov*'s "Category One," Plaintiffs' claimed "discrimination . . . is an actual and concrete injury sufficient to confer standing." *Tartikov*, 945 F.3d at 110. (*See also* March Op. 35.)[7]

Fifth and finally, the Court continues to decline to determine which standard of review is appropriate herein, and declines to dismiss Plaintiffs' Equal Protection claim for failure to surmount rational basis review. (Aug. Order 7–10.) Defendant argues that the Old Law must be "presumed to be constitutional," and argues that Plaintiffs have failed to overcome that presumption, mandating dismissal. (Def.'s Mem. 17.) However, in support of this argument, Defendant quotes from *Progressive Credit Union v. City of New York*, which specifically concerned what is "often referred to as a 'class of one' equal protection claim." 889 F.3d 40, 49 (2d Cir. 2018). Unlike equal protection claims based on membership in a protected class or infringement of a fundamental right, plaintiffs alleging "class of one" equal protection claims face an incredibly high bar to relief, because when "attacking the rationality of the legislative

---

[7] Defendant has also repeatedly claimed that the Seventh Circuit's decision in *Love Church v. City of Evanston*, 896 F.2d 1082 (7th Cir. 1990)—which vacated the Northern District of Illinois' order denying the defendant's motion to dismiss—is analogous to the instant Action and mandates dismissal for lack of standing. (*See* Def.'s Mem. 14, 22; Def.'s Reply Mem. 7, 8; Def.'s Mem. of Law in Opp'n to Pls.' Mot. for Recons. 4–5, 6 n.5, 12, 19, 23.) However, this Court has already explained that *Love Church* does not govern, because "[a]s discussed in the March Opinion, Plaintiffs . . . have sufficiently alleged an injury that supports standing." (Aug. Order 8 n.3 (citing March Op. 34–37).) Again, Defendant cannot use its Reconsideration Motion to "mak[e] repetitive arguments on issues that have already been thoroughly [considered] by the [C]ourt." *Leith*, 2007 WL 9818914, at *2.

classification," they "have the burden to negative every conceivable basis which might support it." *Id.* (quotation marks omitted).  However, Plaintiffs here are not raising a "class of one" equal protection claim; rather, Plaintiffs allege that the Old Law facially discriminates on the basis of religion, a suspect class.  *See supra*.  And, as this Court explained in the August Order, "courts are divided on whether to apply strict scrutiny or rational basis review where, as here, a law disadvantages religion generally."  (Aug. Order 8 (collecting cases).)  By simply asserting that "even if a 'church' is a suspect class, 'strict scrutiny has been reserved for laws that discriminate *among* religions,'" (Def.'s Mem. 11 (alteration omitted) (quoting *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 637 (7th Cir. 2007)); *see also* Def.'s Reply Mem. 3 n.2 (same)), Defendant has failed to "identif[y] an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *Alvarez*, 2017 WL 6033425, at *2 (quotation marks omitted), sufficient to convince the Court at this time that rational basis review is appropriate.  Particularly because the case on which Defendant relies, *St. John's United Church of Christ*, has already been considered by this Court because Defendant cited to it in its Opposition to Plaintiffs' Motion for Reconsideration. (*See* Def.'s Mem. of Law in Opp'n to Pls.' Mot. for Recons. 22.)

Moreover, even if the Court determined that rational basis review were appropriate, it would still be inappropriate to dismiss Plaintiffs' Equal Protection claim at this time.  "The Second Circuit has noted that 'rationality review' is appropriate in reviewing a motion to dismiss on the pleadings where 'it takes but a momentary reflection to arrive at a governmental purpose that is both legitimate beyond dispute and rationally related to the state's classification.'"  *Smith v. Defendant A*, No. 08-CV-[ ], 2009 WL 1514590, at *5 (S.D.N.Y. May 29, 2009) (quoting *Johnson v. Baker*, 108 F.3d 10, 11–12 (2d Cir. 1997)); *accord Mahone v. Addicks Utility Dist.*,

836 F.2d 921, 936 (5th Cir. 1988) (same). And as the Court explained in the August Order, "at this juncture . . . Defendant has proffered no putative rational basis for its disfavoring of religious land uses, nor is the Court aware of any basis to do so from the pleadings." (Aug. Order 10; *see also id.* at 9–10 (summarizing allegations in the FAC that other institutions received more favorable land use treatment).)

### 4.  Defendant's Statute of Limitations Defense

Defendant argues it has not waived its statute of limitations defense by failing to meaningfully raise it in its Motion To Dismiss, since a defendant may wait to raise a statute of limitations defense in an answer. (Def.'s Mem. 11–12; Def.'s Reply Mem. 5.) Plaintiffs do not seem to dispute this contention. (*See* Pls.' Mem. 8 ("The unpled question of statute of limitations should not be decided at this stage in the litigation.").) The Court clarifies that Defendant has not waived its statute of limitations defense, and may raise it in a future answer. *See, e.g.*, *Santos v. Dist. Council of N.Y.C. & Vicinity of United Brotherhood of Carpenters & Joiners*, 619 F.2d 963, 967 (2d Cir. 1980) ("[T]he statute of limitations constitutes an affirmative defense, to be asserted in a responsive pleading."); *accord Xerox State & Local Sols., Inc. v. Xchanging Sols. (USA), Inc.*, 216 F. Supp. 3d 355, 366 (S.D.N.Y. 2016) (same). Because Defendant did not interpose this argument in its Motion To Dismiss, the Court need not rule on the merits of Defendant's this argument at this time.

Defendant's Reconsideration Motion is denied, and Plaintiffs' Equal Protection and State Law claims shall be permitted to proceed.

III.  Request to Certify Appeal

A.  Standard of Review

Section 1292(b) provides that a district court may certify an immediate appeal of an interlocutory order if the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground of difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  "The party seeking interlocutory appeal has the burden to establish all three [§] 1292(b) factors."  *United States ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 273 (E.D.N.Y. 2021).  But, "even when the elements of [§] 1292 are satisfied, the district court retains unfettered discretion to deny certification," *Belya v. Kapral*, No. 20-CV-6597, 2021 WL 2809604, at *1 (S.D.N.Y. July 6, 2021) (quoting *Garber v. Off. of the Comm'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014)), since "interlocutory appeals are presumptively disfavored," *Quartararo*, 521 F. Supp. 3d at 265 (quoting *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 399 (S.D.N.Y. 2018)); *see also Koehler v. Bank of Bermuda*, 101 F.3d 863, 865 (2d Cir. 1996) ("[A]lthough [§ 1292] was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals."); *Lanzillotta v. GEICO Emps. Ins. Co.*, No. 19-CV-1465, 2021 WL 2381905, at *2 (E.D.N.Y. June 10, 2021) ("Certification for interlocutory appeal is not intended as a vehicle to provide early review of difficult rulings in hard cases." (quotation marks omitted)).  Moreover, even when a district court certifies an order for interlocutory appeal pursuant to [§] 1292(b), "the Court of Appeals may either accept or reject the interlocutory appeal at its own discretion."  *Leacock v. Nassau Health Care Corp.*,

No. 08-CV-2401, 2016 WL 11491343, at *1 (E.D.N.Y. Mar. 3, 2016) (citing 28 U.S.C.

§ 1292(b)).

    B.  Analysis

    While the Court agrees that the questions Defendant has presented are "controlling"—as,

it would appear, do Plaintiffs, (*see generally* Opp'n to Request to Certify Appeal (Dkt.

No. 106))—the Court disagrees both that there is substantial ground for difference of opinion and

that an immediate appeal would materially advance the ultimate termination of the case.

    Defendant has presented four controlling questions of law, but the Court agrees with

Plaintiffs that, at bottom, Defendant has only presented three—the third of which, concerning

Defendant's statute of limitations defense, is not relevant in light of the Court's Order on the

Reconsideration Motion.  *See supra*.  (*See* Opp'n to Request to Certify Appeal at unnumbered 3.)

The two remaining questions are: (1) whether a plaintiff has standing to pursue a facial challenge

to a local law that preexisted the plaintiff's arrival in the jurisdiction and has been repealed, and

(2) whether a plaintiff may recover compensatory damages via an Equal Protection facial

challenge.

    To demonstrate that there is a "substantial ground for difference of opinion," per

§ 1292(b), Defendant must identify "more than simple disagreement on the issue"; "[r]ather, the

Court looks for conflicting authority on the issue and considers whether the issue is particularly

difficult and of first impression for the Second Circuit."  *Danaher Corp. v. Travels Indem. Co.*,

No. 10-CV-121, 2020 WL 6712193, at *1 (S.D.N.Y. Nov. 16, 2020) (quotation marks omitted);

*see also In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) ("[T]he mere presence of a disputed issue

that is a question of first impression, standing alone, is insufficient to demonstrate a substantial

ground for difference of opinion."); *In re Kumtor Gold Co. CJSC*, No. 21-CV-6578, 2021 WL

4926014, at *4 (S.D.N.Y. Oct. 20, 2021) ("[S]ubstantial grounds for difference of opinion must arise out of a genuine doubt as to the correct legal standard that was relied upon in the order [and] . . . must involve more than strong disagreement between the adversary parties." (quotation marks omitted)).  The Court finds that Defendant here has failed to meet this burden on either question, predominately because Defendant has failed to identify any conflicting authority on the questions Defendant has identified.  While Defendant provides citations to a number of cases which purportedly support the *Tartikov* court's statement in dicta that "buying into an injury in fact does not suffice for Article III standing," *Tartikov*, 945 F.3d at 124 n.289, Plaintiffs are correct that "[n]one of the cases cited by Defendant involved a facially discriminatory statute," as Plaintiffs allege here, and the cases "stand for completely different propositions of law, namely, the 'hardship' prong of zoning variance analysis or whether a claimant had a reasonable, investment-backed expectation under Takings law."  (Opp'n to Request to Certify Appeal at unnumbered 3.)  Defendant has similarly failed to identify conflicting authority with respect to Defendant's claim that compensatory damages are unavailable on a facial challenge, since none of the cases identified by Defendant presented factual circumstances where the plaintiff had suffered out-of-pocket damages, as Plaintiffs allege they have here.  *See supra*.  (*See also* Opp'n to Request to Certify Appeal at unnumbered 4–5 (distinguishing the cases cited by Defendant).) It remains to be determined whether Plaintiffs can ultimately recover damages on their facial challenge, but Defendant has presented no conflicting authority sufficient to convince the Court that there are substantial grounds for difference of opinion as to whether compensatory damages are available on a facial challenge as a matter of law.

Moreover, the Court does not agree with Defendant's assertion that an immediate appeal here would materially advance the ultimate termination of the case.  "'Inherent in the

requirements of [§] 1292(b) is that the issue' in the certified order 'be ripe for judicial determination,' because the 'purpose of [§] 1292(b) is not to offer advisory opinions rendered on hypotheses which []evaporate[] in the light of full factual development.'" *Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491, 508 (2d Cir. 2020) (quoting *Oneida Indian Nation of N.Y. State v. County of Oneida*, 622 F.2d 624, 628 (2d Cir. 1980)). Here, many of the concerns raised by Defendant may ultimately be resolved in Defendant's favor on summary judgment, which, given that this is not a fact-intensive case, is not likely to be delayed by a prolonged discovery period. *See Linares*, 423 F. App'x at 85 ("Even after denying a motion to dismiss, a district court may still grant a summary judgment motion if, based on the evidence presented, there was no genuine dispute as to any material fact and the moving party was entitled to judgment as a matter of law."); *see also Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) ("[T]he doctrine [of law of the case] would not preclude a district court from granting summary judgment based on evidence after denying a motion to dismiss based only on the plaintiff's allegations."). And, if Defendant's concerns are resolved in Plaintiffs' favor, the Second Circuit would be better positioned to decide Defendant's appeal with further development of the factual record.

IV.  Conclusion

For the foregoing reasons, Defendant's Reconsideration Motion and Request to Certify

Appeal are both denied.  The Court will hold a telephonic status conference on January 24, 2022

at 10:30AM.  The Clerk of Court is respectfully directed to terminate the pending motion, (Dkt.

No. 93).

SO ORDERED.

 Dated:    December 28, 2021
           White Plains, New York

_____
                    KENNETH M. KARAS
                    United States District Judge

24